FILED

2012 SEP 27  PM 3:31

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1  Gretchen M. Nelson (112566)
   gnelson@kreindler.com
2  KREINDLER & KREINDLER LLP
   707 Wilshire Boulevard, Suite 4100
3  Los Angeles, CA 90017-3613
   Telephone:  213-622-6469
4  Telecopier:  213-622-6019

5  Edward Wallace [eaw@wexlerwallace.com]
   Amy Keller  [aek@wexlerwallace.com]
6  Dawn Goullet [dmg@wexlerwallace.com]
   WEXLER WALLACE LLP
7  55 West Monroe Street, Suite 3300
   Chicago, Illinois 60603
8  Telephone: (312) 346-2222
   Telecopier: (312) 346-0022

9  Erin Dickinson  [erin@hrdc-law.com]
10 Charles Crueger [charles@hrdc-law.com]
   HANSEN REYNOLDS DICKINSON
11 CRUEGER LLC
   316 North Milwaukee Street, Suite 200
12 Milwaukee, Wisconsin 53202
   Telephone:  (414) 455-7676
13 Telecopier: (414) 273-8476

14 Gregory Coleman [greg@gregcolemanlaw.com]
   Mark Silvey [mark@gregcolemanlaw.com]
15 GREG COLEMAN LAW PC
   Bank of America Center
16 550 Main Avenue, Suite 600
   Knoxville, Tennessee 37902
17 Telephone:  (865) 247-0080
   Telecopier: (865) 522-0049

18 *Attorneys for Plaintiffs and the Classes*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ROBERTS and NICOLE HORTON on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>ELECTROLUX HOME PRODUCTS, INC.<br>               Defendants. | Case No. SACV12-1644-CAS (VBK)<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

-1-

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Shawn Roberts ("Roberts") and Nicole Horton ("Horton") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Electrolux Home Products, Inc. ("Electrolux"). The following allegations are based upon personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## NATURE OF THE ACTION

1. From at least the mid-1990s, Electrolux designed, marketed and sold millions of clothes dryers (the "Dryers") under various brand names such as Electrolux, Kenmore and Frigidaire having a uniform and dangerous defect ("the Defect") that causes these Dryers to start on fire, fail, char clothes, damage property and creates an immediate and substantial safety risk to consumers and the public.

2. The Defect renders the Dryers unsafe for use in consumers' homes.

3. At all times relevant, Electrolux knew, or should have known, of the Defect which rendered its Dryers unsafe and of the substantial safety risk its Dryers posed to consumers and the public. For example, from at least 2000, Electrolux processed *thousands* of claims of dryer fires from 2002-2007, conducted an internal investigation of the Defect and hired outside engineers to investigate the Defect, and litigated hundreds of cases involving the Defect throughout the United States.

4. Nevertheless, Electrolux chose to sell millions of these dangerous and defective Dryers to consumers, all the while doing nothing to warn consumers of the serious safety risk its products posed.

5. Instead, Electrolux hid its knowledge of the Defect and the Dryers' substantial safety risk from the public, and did nothing to remove its defective and dangerous Dryers from households across the country, thereby putting consumers throughout the country at a serious risk of household fires, personal injury and property loss.

6. In short, Electrolux sold Dryers to consumers that it knew, or at the very least should have known, were defective and unsafe, and it concealed

-2-

1    information about the Defect from consumers and the public in order to facilitate

2    sales and reap significant financial benefits.

3         7.    As a direct and proximate result of Electrolux's concealment of the

4    Defect, its failure to warn its customers of the Defect and the safety risks posed by

5    the Dryers, and its failure to remove the defective Dryers from consumer's homes

6    or otherwise remedy the Defect, Plaintiffs purchased one of Electrolux's defective

7    and unsafe Dryers.

8         8.    In July 2012, and as a result of the Defect, Roberts and Horton's

9    Electrolux Dryer caught on fire in the middle of the night, causing property damage

10   and placing Plaintiffs at a serious risk of injury.

11        9.    Class members' Dryers contain the same Defect that poses the same

12   substantial risk to the safety of consumers and the public.

13        10.   Had Plaintiffs and class members known of this serious safety risk,

14   they would not have purchased the Dryers.

15        11.   Because of Electrolux's concealment of the Defect, Plaintiffs and class

16   members paid for a product that could not be used for its intended purpose of safely

17   drying clothes and posed a serious safety risk to consumers and the public.

18        12.   Because of Electrolux's concealment of the Defect, Plaintiffs and the

19   proposed Property Damage Class members incurred property damage.

20                                    **PARTIES**

21        13.   Plaintiffs are citizens of California and reside in Huntington Beach,

22   California.

23        14.   Defendant Electrolux is a Delaware corporation with its principal place

24   of business at 10200 David Taylor Dr., Charlotte, North Carolina 28262.

25        15.   Upon information and belief, at all times relevant, Electrolux was

26   engaged in the business of designing, manufacturing, and distributing the Dryers

27   throughout the United States, including in this jurisdiction.  Electrolux does

28

-3-

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    substantial business in California with a significant portion of the proposed national

2    class located in California.

3         16.    At all times relevant hereto, Electrolux was in the business of

4    distributing, marketing, promoting, and selling the Dryers described herein.

5         17.    At all times relevant hereto, Electrolux designed, promoted, and

6    marketed the Dryers described herein.

7         18.    Defendant Electrolux engages in a continuous course of business in

8    California, including selling the Dryers described herein in California; distributing

9    products, including the Dryers, in California; selling and advertising products,

10   including the Dryers, on the Internet and through other media in California; and

11   servicing their products, including the Dryers, in California.

12        19.    Defendant has substantial and continuing contacts with California,

13   expects that its products, including the Dryers, will be purchased in California, and

14   committed tortious acts in California.

15        20.    A significant portion of the proposed National Classes, and all of the

16   proposed California Class is located in California or purchased their Dryer in

17   California.

18                        **JURISDICTION AND VENUE**

19        21.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §

20   1332(d)(2) as the amount in controversy exceeds $5,000,0000, exclusive of interest

21   and costs, and at least one member of the class is a citizen of a State different from

22   Electrolux.

23        22.    This Court also has jurisdiction under 28 U.S.C. § 1332(a) as Plaintiffs

24   and Defendant Electrolux are citizens of different States and the amount in

25   controversy exceeds $75,000.

26        23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as

27   Electrolux does substantial business in District, including selling the products at

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   issue, and Plaintiffs' claims arise from damages sustained in California and this
2   District as a result of Defendant's defective design.

3                          **FACTUAL ALLEGATIONS**

4          24.    Upon information and belief, Electrolux is engaged in the business of
5   designing, manufacturing, warranting, marketing, advertising and selling the Dryers
6   labeled under a variety of brand names, including Electrolux, Kenmore, and
7   Frigidaire.

8          25.    All Dryers sold under the various brand names and model numbers
9   prior to at least 2010 have the same uniform Defect.

10         26.    In or around 2007, Plaintiffs purchased one of the Dryers designed,
11   manufactured and sold into the stream of commerce by Electrolux under the brand
12   name Frigidaire.

13         27.    Like all class members, Plaintiffs purchased their Dryer believing that
14   it was properly designed, manufactured, and safe to use in the home.

15         28.    Plaintiffs used this Dryer for its intended purpose of safely drying
16   laundry in a manner reasonably foreseeable by Electrolux and did so on the evening
17   of June 16, 2012.

18         29.    On the evening of June 16, 2012, Plaintiffs' Dryer caught fire while
19   Plaintiffs slept.  A passerby alerted the Huntington Beach Fire Department, who
20   arrived and were able to safely evacuate Plaintiffs out of their home.

21         30.    Plaintiffs' Dryer caught on fire as a direct and proximate result of the
22   Defect known to and concealed by Electrolux that is described in this Complaint.

23         31.    The fire caused by the Defect not only rendered Plaintiffs' Dryer
24   unusable but caused extensive property damage.

25         32.    All class members' Dryers possess the same dangerous Defect which
26   necessitates replacement of the Dryers.

27         33.    Members of the Property Damage Classes also suffered property
28   damage as a result of the Defect.

-5-

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

34.    By the time Plaintiffs purchased their Dryer, and at the time the Plaintiffs' Dryer caught fire in their home, Electrolux knew, or should have known, of the Defect and the serious safety risk its Dryers posed to the public for over a decade, but it opted to remain silent and conceal evidence of the Defect, and its knowledge of the Defect, from the public and consumers who had either purchased or were considering purchasing the Dryers.

35.    Like Plaintiffs, class members also purchased the Dryers designed, manufactured, and sold into the stream of commerce by Electrolux, and used the Dryers for their intended purpose of safely drying laundry in a manner reasonably foreseeable by Electrolux.

36.    Like Plaintiffs, class members' Dryers had the same dangerous Defect that posed a substantial safety risk during normal use.

37.    Electrolux knew, or should have known, of the Defect and hid from the public the serious safety risk posed by its Dryers, all the while selling millions of Dryers for use in the homes of consumers.

### The Defect

38.    The Dryers that Plaintiffs and class members purchased have a common Defect in their design and manufacture.

39.    Specifically, Electrolux designed and manufactured the Dryers purchased by Plaintiffs and class members with front drums that fail to seal the drum from the surrounding cabinet, thereby allowing the accumulation of lint behind the drum and in the heater pan, areas that are not visible to, or serviceable by, the user.

40.    The accumulation of lint behind the drum and in the heater pan represents a known and unreasonable fire hazard, as it is reasonably foreseeable that the clothes dryer's heat source will ignite the lint during normal use and when the Dryer is being used in the manner that it was intended to be used.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

41.     The Dryers also contain a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, both of which accumulate lint during normal use, and both of which are not visible to or serviceable by the user.

42.     Particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum to ignite lint that has accumulated in the dyer drum and/or within the combustible plastic air duct and blower housing.

43.     The Defect is particularly dangerous because it cannot be detected by the consumers during normal use as it exists in an area of the Dryer not visible to consumers.  As a consequence, at least some Class members likely have experienced one or more small fires in their Dryers that have gone undetected because it did not result in a larger fire.

44.     Indeed, Plaintiffs and class members not only lack any ability to see lint accumulating behind the drum and in the heater pan, or within the combustible plastic air duct and blower housing, but they are unable to remove any accumulated lint in these areas of the Dryer without first dismantling the Dryer.

45.     The Defect exists because Electrolux failed to adequately design, manufacture and test the Dryers to ensure they were free from the Defect at the time of sale and failed to remove the dangerously defective Dryers from Plaintiffs and Class members' homes despite knowing of the Defect and the significant risk it posed to consumers and the public.

46.     This Defect, which is undetectable to the consumer, is manifest in the Dryers when they leave Electrolux's possession and creates an immediate safety risk to consumers.

47.     This common Defect causes a serious safety risk that requires replacement to remedy.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

48.     This common Defect also causes the Dryers to function improperly during the expected useful life of the Dryers, resulting in fires like the one experienced by Plaintiffs as well as failures, repairs, and a significant risk of property damage, personal injury and/or death.

49.     Upon information and belief, Electrolux changed the design of its dryers in or around 2010 ("the Design Change"), but left Dryers containing the Defect in the homes of consumers and issued no warnings to consumers who already owned the Dryers that contained the Defect.

**Electrolux Conceals The Defect From The Public To Facilitate Dryer Sales.**

50.     As early as the 1990's, Electrolux was confronted with evidence of the Defect and the serious safety risk that the Defect posed to consumers.  For example, Electrolux discovered charred lint in the heater pans in its test dryers as early as 1995.

51.     After 2000, evidence of the common Defect in the design and manufacture of the Electrolux Dryers, and the safety risk to the public, became undeniable.  Indeed, documents hidden by Electrolux, and uncovered for the first time in recent litigation, revealed that (i) from 2002-2007 Electrolux received *thousands* of warranty claims for fires for its Dryers within a five year period; (ii) in 2005, an Electrolux product engineer acknowledged during an investigation by the Japanese government that lint could travel out of the back of the drum into the heater plan in the Dryers; (iii) in 2002 Electrolux commissioned an outside engineering study to examine this serious safety problem; and (iv) Electrolux conducted an internal investigation regarding the Defect between 2002-2005.

52.     Instead of taking action to redesign and replace the Dryers to remedy the Defect, or to remove the defective Dryers it had already sold from consumers' homes and warn consumers and the public of the Defect and considerable safety risk the Dryers posed, Electrolux hid evidence of the Defect from the public, denied the existence of the Defect in court filings across the country, denied any liability

-8-

1  for claims for replacement of the Dryers or for property damage that resulted from
2  fires caused by the Defect, created ways to hide the evidence of the rates of fires,
3  and manufactured strategies to blame consumers for the damage caused by the
4  Defect to avoid liability.

5       53.    Indeed, the scope of Electrolux's strategy to abuse the discovery
6  process and withhold relevant documents is evidenced by various decisions and
7  orders issued from Federal courts around the country concluding that Electrolux's
8  conduct was "reprehensible," deprived litigants of a full and fair opportunity to
9  litigate the cases, and was sanctionable. *See Charter Oak Fire Ins. Co. v.*
10 *Electrolux Home Products, Inc.*, 2012 WL 3217565 at *6 (E.D. N.Y., July 30,
11 2012) ("plaintiff did not have a full and fair opportunity to litigate the *Newcomb*
12 action" as a result of Electrolux's improper withholding of documents directly
13 responsive to discovery requests showing Electrolux's knowledge of the defects in
14 its Dryers); *Id.* (Dkt No. 60-2) at 11 ("[Electrolux's] conduct in this case is
15 reprehensible. I don't use that word very often….[C]learly [Electrolux] is
16 stonewalling this case, refusing to give discovery, cancelling depositions at the last
17 minute…if I see any violation of your discovery obligations again, any violation of
18 discovery obligations, I'm immediately recommending Judge Bianco enters a
19 default judgment against [Electrolux]") (Transcript of hearing on Motion for
20 Sanctions before Magistrate Judge William D. Wall); *Automobile Insurance*
21 *Company of Hartford a/s/o Russell Silver v. Electrolux Home Products, Inc.*, Case
22 no. 1:08-cv-3237 (E.D.N.Y. 2008) (Electrolux sanctioned on two separate
23 occasions on discovery issues and Magistrate Judge Reyes ordered that if
24 Electrolux failed to produce additional responsive documents he would recommend
25 monetary sanctions and judgment be entered against Electrolux stating, "three
26 strikes and you are out").

27      54.    In fact, the United States District Court for the Eastern District of New
28 York concluded that a consumer who sued Electrolux over the defective Dryer

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    "was deprived of a full and fair opportunity to litigate its claim because (1) crucial

2    evidence supporting plaintiff's claim was not produced by defendant [Electrolux] in

3    the *Newcomb* case even though it was responsive to plaintiff's discovery requests;

4    (2) plaintiff did not learn of the failure to produce the information until after the

5    *Newcomb* trial; and (3) the evidence, if it had been produced by the defendant

6    [Electrolux] in the *Newcomb* case, could have altered the outcome of that trial."

7    *Charter*, 2012 WL 3217565 at *2.   The Court further concluded that "Electrolux's

8    victory in the *Newcomb* case may have been the product of its failure to produce

9    crucial information that was directly responsive to plaintiff's discovery demands in

10   that case." *Id.*

11        55.    Amazingly, even after Electrolux was forced to produce documents

12   evidencing the existence of the Defect and Electrolux's knowledge of the Defect,

13   (*see e.g., Charter*, 2012 WL 3217565), Electrolux has continued to deny knowledge

14   of the Defect in court proceedings and has never warned consumers of the Defect or

15   attempted to replace or remove the Dryers from consumers' homes.

16        56.    Electrolux argued as recently as December, 2011 to the United States

17   District Court for the Eastern District of New York that the plaintiff in that case

18   should be *collaterally estopped* from even bringing an action for this known Defect

19   in the Electrolux Dryers, and it argued in a similar case pending in the United States

20   District Court for the Eastern District of Arkansas that the Court should dismiss

21   Plaintiff's claims for failure to state a claim on which relief can be granted. *See*

22   *Charter,* 2012 WL 3217565; *Humphrey v. Electrolux Home Products, Inc.,* 4:12-

23   cv-00157-DPM (May 11, 2012) (Dkt. No. 16-17).

24        57.    Not only has Electrolux concealed evidence and its knowledge of the

25   Defect from the public and denied the Defect exists or poses any safety risk, but it

26   conceived and executed a strategy to purportedly place "warnings" in its user

27   guides that have no engineering basis and exist solely to provide a means to blame

28

-10-

consumers in any litigation for fires or other malfunctions in its Dryers that result from the Defect.

58.    For example, Electrolux inserted a statement in its user guides that "Every 18 months an authorized servicer should clean the dryer cabinet interior and exhaust duct." Electrolux has been unable in prior depositions to provide any engineering basis for this statement or an explanation for why Electrolux inserted the foregoing statement in its user guide. Moreover, Electrolux's own documents show that 80% of the fire warranty claims related to lint occurred within the first 18 months of use, thus demonstrating how having the Dryer serviced every 18 months did not eliminate or materially reduce the safety risk or remedy the Defect.

59.    Nonetheless, as recently as May 11, 2012, Electrolux expressly relied on this statement to argue that it had no liability for the Defect, and asked a court to dismiss plaintiff's complaint, because "[p]laintiff's allegation shows, at most, that she failed to heed the warnings and instructions in her Use & Care Guide" to have the Dryer serviced every 18 months. *Humphrey v. Electrolux,* 4:12-cv-00157 (E.D. Ark.) (Dkt. No. 17 at 8 n.3). Electrolux made this argument even though it knew, or at the very least should have known, that the 18 month period has no engineering basis and is nothing more than part of its strategy to conceal the Defect from consumers and avoid liability for damages caused by the Defect.

60.    Electrolux had a duty to protect consumers by, at the very least, warning them that the Dryers had a serious Defect that posed a substantial risk to personal safety.

61.    Nonetheless, even though Electrolux knew, or should have known, of the Defect in its Dryers and of the substantial safety risk posed by its Dryers, Electrolux opted to conceal the Defect and evidence of the Defect from the public so it could realize the substantial financial benefits of selling the Dryers to the public, who had no knowledge of the Defect or the risk the Defect posed to their personal safety.

62.     Electrolux knew, or should have known, that reasonable consumers like Plaintiffs and class members were unaware of the Defect and could not discover the Defect.

63.     Electrolux knew, or should have known, that reasonable consumers like Plaintiffs and class members expected the Dryers to safely dry clothes without putting consumers' lives and property at risk and expected that the Dryers were safe to use in the home.

64.     Electrolux knew, or should have known, that reasonable consumers expected Electrolux to disclose any defects that would prevent the Dryers from performing their function before the end of their useful lives or that would seriously threaten the Class members' safety, and that such decision would impact any reasonable customer's decision as to whether to purchase the Dryers.

65.     To this day, as result of Electrolux's conduct, many members of the putative classes defined herein remain unaware of the Defect in the Dryers and the serious safety risk as well as the risk of failure, injury, loss and fire due to the Defect.

66.     To this day, as a result of Electrolux's conduct, at least some members of the putative classes defined herein have likely had small fires in their Dryers as a result of the Defect, but they continue to use the Dryers because the fires went undetected as they occurred in areas not visible to the user and did not result in larger fires.

67.     Indeed, Plaintiffs were unaware of the Defect at the time their Dryer caught on fire causing severe property damage and a serious risk to personal safety.

68.     Had Plaintiffs and class members been made aware of the serious safety problem with the Dryers, they would not have purchased their Dryers.

69.     Electrolux's reprehensible conduct has harmed Plaintiffs and Class members and has left millions of consumers with a serious safety risk in their homes.

-12-

## The Defects Present An Immediate And Continuing Safety Risk

70.     The Electrolux Dryers purchased by Plaintiffs and class members should have been usable for their intended purpose of safely drying clothes during their expected useful lives and should not have been sold containing a known safety risk to consumers.

71.     The National Association of Home Builders ("NAHB") found in a 2007 study that it conducted with Bank of America Home Equity that the useful expected life of a dryer is 13 years.

72.     The Electrolux Dryers pose a substantial and immediate safety risk to consumers and the public upon purchase and continue to pose a substantial safety risk to consumers and the public during their useful lives.

73.     The Defect in the design and manufacture of Electrolux Dryers have also caused and will cause Plaintiffs' and Class members' Dryers to fail and/or catch fire during their expected useful lives.

74.     Thus, the Defect rendered the Electrolux Dryers unfit for the ordinary and intended purpose (safely drying clothes) for which they were marketed and sold to Plaintiffs and Class members at the time of sale.

75.     Had the Dryers been free from the Defect, Plaintiffs and class members would not have suffered the damages complained of herein.

76.     Had Electrolux complied with its duty not to place an unsafe product onto the market, to disclose the Defect it knew of, or should have known of, to consumers and the public, or to remedy a Defect it knew, or should have known posed, a substantial safety risk to consumers, Plaintiffs and class members would not have suffered the damages complained of herein.

## CLASS ACTION ALLEGATIONS

77.     Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) against Electrolux on their

-13-

1    own behalf and on behalf of the National classes and California classes

2    (collectively "the classes") defined below.

3        78.    The National Replacement Class consists of:  During the fullest period

4    allowed by law, all persons in the United States who purchased or otherwise

5    acquired an Electrolux designed and/or manufactured clothes dryer, manufactured

6    prior to the Design Change in 2010, primarily for personal, family, or household

7    purposes, and not for resale.

8        79.    The National Property Damage Subclass consists of:  During the

9    fullest period allowed by law, all persons in the United States who purchased or

10   otherwise acquired an Electrolux designed and/or manufactured clothes dryer,

11   manufactured prior to the Design Change in 2010, primarily for personal, family, or

12   household purposes, and not for resale and who have incurred Property damage as a

13   result of the Defect.

14       80.    The California Replacement Class consists of:  During the fullest

15   period allowed by law, all persons who purchased or otherwise acquired in the State

16   of California an Electrolux designed and/or manufactured clothes dryer,

17   manufactured prior to the Design Change in 2010, primarily for personal, family, or

18   household purposes, and not for resale.

19       81.    The California Property Damage Subclass consists of:  During the

20   fullest period allowed by law, all persons in the United States who purchased or

21   otherwise acquired in the State of California an Electrolux designed and/or

22   manufactured clothes dryer, manufactured prior to the Design Change in 2010,

23   primarily for personal, family, or household purposes, and not for resale, and who

24   have incurred Property damage as a result of the Defect.

25       82.    The classes are limited to the time period beginning on the date

26   established by the Court's determination of any applicable statute of limitation,

27   after consideration of any tolling and accrual issues, and ending on the date of entry

28   of judgment.

-14-

83.   Excluded from the classes are (a) any Judge or Magistrate presiding over this action and members of their families; (b) Electrolux and any entity in which Electrolux has a controlling interest or which has a controlling interest in Electrolux; (c) the officer, directors or employees of Electrolux; and (d) Electrolux's legal representatives, assigns and successors and (e) all persons who properly execute and file a timely request for exclusion from the class or subclasses.

84.   Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the classes.

85.   Numerosity: While the exact number of members cannot be determined yet, each class consists at a minimum of thousands of people dispersed throughout the United States and, in the case of the California classes consists at a minimum of thousands of people dispersed throughout the State of California. The exact number of class members can readily be determined by review of information maintained by Electrolux.

86.   The members of the classes are therefore so numerous that joinder of all members is impracticable.

87.   Commonality: Common questions of law and fact exist as to all class members.  Among the questions of law and fact common to the classes are:

        a.   Whether the Dryers designed, manufactured and sold by Electrolux pose a safety risk to consumers;

        b.   Whether Electrolux knew, or should have known, that the product it sold into the stream of commerce posed an unreasonable safety risk to consumers;

        c.   Whether Electrolux concealed the safety risk its Dryers posed to consumers;

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

d.   Whether the safety risk the Dryers pose to consumers is a material fact reasonable purchasers would have considered in deciding whether to purchase a clothes dryer;

e.   Whether the Dryers designed, manufactured and sold by Electrolux possess a material defect;

f.   Whether the Defect in the Dryers represent an unreasonable risk of fire;

g.   Whether Electrolux knew, or should have known, that the Dryers possessed the Defect when it placed the Dryers into the stream of commerce;

h.   Whether Electrolux concealed the Defect from consumers;

i.   Whether the existence of the Defect is a material fact reasonable purchasers would have considered in deciding whether to purchase a clothes dryer;

j.   Whether the Dryers are of merchantable quality;

k.   Whether the Dryers are likely to pose a serious safety risk to consumers before the end of the Dryers' reasonable expected lifetime;

l.   Whether the Dryers are likely to start on fire or fail before the end of their reasonable expected lifetime;

m.   Whether the Dryers' Defect resulted from Electrolux's negligence;

n.   Whether Electrolux breached express warranties relating to the Dryers by failing to recall, replace, repair and/or correct the Defect in the Dryers;

o.   Whether Electrolux breached implied warranties of merchantability and/or fitness for a particular purpose relating to the Dryers;

-16-

p.    Whether Electrolux misrepresented the characteristics, qualities and capabilities of the Dryers;

q.    Whether Electrolux either knew, or should have known, of the Defect prior to marketing and selling Dryers to Plaintiffs and class members;

r.    Whether Electrolux omitted, concealed from and/or failed to disclose in its communications and disclosures to Plaintiffs and class members material information regarding the Dryers' Defect;

s.    Whether Electrolux omitted, concealed from and/or failed to disclose in its communications and disclosures to Plaintiffs and class members material information regarding the Dryers' safety issues;

t.    Whether Electrolux failed to warn consumers of the Defect;

u.    Whether Electrolux failed to warn consumers that its Dryers' pose a serious safety issues;

v.    Whether Electrolux made fraudulent, false, deceptive and/or misleading statements in connection with the sale of the Dryers;

w.    Whether Electrolux was unjustly enriched by selling the Dryers;

x.    Whether Electrolux should be ordered to disgorge all or part of the profits it received from the sale of the defective Dryers;

y.    Whether Plaintiffs and Class members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

z.    Whether Plaintiffs and Class members are entitled to replacement of their defective Dryers;

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

aa.    Whether Plaintiffs and Class members are entitled to equitable relief, including an injunction requiring that Electrolux engage in a corrective notice campaign and/or a recall; and

bb.    Whether Plaintiffs and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and costs.

88.    Typicality:  Plaintiffs have substantially the same interest in this matter as all other members of the National Class, National SubClass and California Class and California Subclass, and Plaintiffs' claims arise out of the same set of facts and conduct as all other members of the classes.  Plaintiffs and all class members own or owned a clothes dryer designed and/or manufactured by Electrolux with a uniform Defect that make them immediately dangerous upon purchase and that cause the Dryers to fail within their expected useful lives and catch on fire.  All of the claims of Plaintiffs and class members arise out of Electrolux's placement into the marketplace of a product it knew was defective and caused a safety risk to consumers, and from Electrolux's failure to disclose this known safety risk and Defect.  Also common to Plaintiffs' and class members claims are Electrolux's conduct in designing, manufacturing, marketing, advertising, warranting and/or selling the defective Dryers, Electrolux's conduct in concealing the defects in the clothes dryers, and Plaintiffs and Class members' purchase of the defective Dryers.

89.    Adequacy of Representation:  Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in products liability, deceptive trade practices, and class action litigation.  Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the classes.  Plaintiffs' claims are coincident with, and not antagonistic to, those of the other class members they seek to represent.  Plaintiffs have no disabling conflicts with the members of the classes and will fairly and adequately represent the interests of the class members.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

90.     The elements for class certification under Rule 23(b)(2) are met. Electrolux will continue to commit the violations alleged, and the members of the classes and the general public will continue to remain at an unreasonable and serious safety risk of fire from the defective Dryers.  Electrolux has acted and refused to act on grounds that apply generally to the Class members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the classes as a whole.

91.     The elements of Rule 23(b)(3) are met.  Here, the common questions of law and fact enumerated above predominate over the questions affecting only individual members of the classes, and a class action is the superior method for the fair and efficient adjudication of the controversy.  The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.  There will be many other pending cases against Electrolux.  Serial adjudications in numerous venues are not efficient, timely or proper.  Judicial resources throughout California and the United States will be unnecessarily depleted by resolution of individual claims.  Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible.  Individualized rulings and judgments have and will result in inconsistent relief for similarly situated Plaintiffs.   Plaintiffs' counsel, highly experienced in class action litigation, foresee little difficulty in the management of this case as a class action.  Indeed, the only way to ensure that the serious conduct and safety risks alleged herein are remedied is through a collective action on behalf of consumers.

92.     To the extent a National Class is sought on Plaintiffs' claims, *see e.g.* common law fraud and negligence claims, Plaintiffs claims are materially the same under the law of California as in all states in the United States.  In the event that California law does not apply on a nationwide basis to any of Plaintiffs' claims,

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    Plaintiffs will seek to apply the laws of the various States and the District Columbia

2    as will be addressed in Plaintiffs' brief in support of class certification.

3    <u>**Tolling and Estoppel of Statutes of Limitation**</u>

4    93.    The claims alleged herein accrued upon discovery of the defective

5    nature of the Dryers and the dryer drums contained therein.  Because the Defect

6    alleged herein is hidden, and because Electrolux took steps to actively misrepresent

7    and conceal the true character, nature and quality of the Dryers, among other

8    reasons, Plaintiffs and class members did not discover and could not have

9    discovered the Defect alleged herein through reasonable and diligent investigation.

10   94.    Any applicable statutes of limitations have been tolled by Electrolux's

11   knowledge and actual misrepresentation, concealment and denial of the facts as

12   alleged herein, concealment which is ongoing and continues to this day.  Plaintiffs

13   and class members could not have reasonably discovered the true, defective nature

14   of the Dryers.  As a result of Electrolux's active concealment of the Defect and/or

15   failure to inform Plaintiffs and class members of the Defect, any and all statutes of

16   limitations otherwise applicable to the allegations herein have been tolled.

17   95.    Alternatively, the facts alleged above give rise to an estoppel.

18   Electrolux knew of the Defect and the serious safety risk it posed to consumers and

19   has actively concealed it.  Electrolux was and is under a continuous duty to disclose

20   to Plaintiffs and the classes the true character, quality and nature of the Dryers,

21   particularly that they posed a serious risk to public safety, fire hazard and risk of

22   failure.  At all relevant times, and continuing to this day, Electrolux knowingly,

23   affirmatively and actively misrepresented and concealed the true character, quality

24   and nature of the Dryers and sold those Dryers into the stream of commerce as if

25   they were safe for use.  Given Electrolux's failure to disclose this non-public

26   information about the defective nature of the Dryers and safety risk to the public —

27   information over which Electrolux had exclusive control— and because Plaintiffs

28   and Class members could not reasonably have known that the Dryers were thereby

-20-

defective, Plaintiffs and the class members reasonably relied on Electrolux's knowing affirmative and/or ongoing concealment. Had Plaintiffs and class members known that the Dryers posed a safety risk to the public they would not have purchased the Electrolux Dryers. Based on the foregoing, Electrolux is estopped from prevailing on any statute of limitations defense in this action.

96.    Additionally, Electrolux is estopped from raising any defense of laches due to their own unclean hands as alleged herein.

## CLAIMS FOR RELIEF

## COUNT I

### Declaratory Relief

**(Plaintiffs Individually and on Behalf of All Classes and Subclasses)**

97.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

98.    There is an actual controversy between Electrolux and class members concerning the existence of defects in the Dryers.

99.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

100.   Accordingly, Plaintiffs and class members seek a declaration that the Dryers have a common Defect in their design and/or manufacture.

101.   Additionally, Plaintiffs and class members seek a declaration that this common Defect found in the Dryers poses a serious safety risk to consumers and the public.

## COUNT II

### Negligence

**(Plaintiffs, Individually and on Behalf of all Classes and Subclasses)**

102.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

103.   Electrolux owed a duty to Plaintiffs and class members to design, manufacture, produce, test, inspect, market, distribute, and sell dryers with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiffs and class members from foreseeable and unreasonable risk of harm.

104.   Electrolux breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting and distributing the Dryers.

105.   As set forth more fully above, Electrolux knew or should have known that the Dryers they designed, manufactured, produced, tested, inspected, marketed, distributed, and sold, in ordinary and foreseeable use, created an unreasonable safety risk and would fail to perform as intended.

106.   Electrolux knew or should have known that the Dryers created an unreasonable safety risk as the Dryers had a Defect causing them to start on fire.

107.   Electrolux knew or should have known that the Dryers had a Defect that could cause catastrophic property damage, personal injury, and/or death.

108.   Based on this knowledge, Electrolux had a duty to disclose to the Plaintiffs and class members the serious safety risks posed by the Dryers and a duty to disclose the defective nature of the Dryers.

109.   Electrolux had a further duty not to put the defective Dryers on the market and has a continuing duty to replace its unsafe Dryers, remove its unsafe Dryers from the market and recall the Dryers from consumers.

110.   Electrolux failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Dryers by, among other things, failing to design and manufacture the Dryers in a manner to ensure that, under normal intended usage, a serious safety risk such as the one posed by the Dryers did not occur.

111.   Electrolux failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, users of the uniform Defect in the Dryers.

-22-

112.   Electrolux failed to exercise reasonable care when it knew of the safety risks the Dryers posed and actively concealed those risks from Plaintiffs and class members.

113.   Electrolux failed to exercise reasonable care when it knew of the safety risks the Dryers posed and failed to replace, repair or recall Dryers it knew or should have known were unsafe and defective.

114.   As a direct and proximate result of Electrolux's negligence, Plaintiffs and class members bought the Dryers without knowledge of the Defect or of their serious safety risks.

115.   As a direct and proximate result of Electrolux's negligence, Plaintiffs and class members purchased unsafe products that could not be used for their intended use.

116.   As a direct and proximate result of Electrolux's negligence, Plaintiffs and class members have suffered damages.

117.   Electrolux was unjustly enriched by keeping the profits from the sales of the unsafe Dryers while never having to incur the cost of repair, replacement, or a recall.

118.   Electrolux's negligence was a substantial factor in causing harm to Plaintiffs and class members and unjust enrichment to Electrolux.

## COUNT III

### Breach of Implied Warranty of Merchantability

### (Plaintiffs, Individually and on Behalf of All Classes and Subclasses)

119.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

120.   The Dryers owned by Plaintiffs and Class members were defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

121.   The Dryers left Electrolux's facilities and control with a Defect caused by defective design incorporated into the manufacture of the Dryer.

122.   The Defect places the consumers at a serious safety risk upon using the Dryer in his/her home.

123.   At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the ordinary purposes for which such products are used, and that the product be acceptable in trade for the product description.  This implied warranty of merchantability is part of the basis for the bargain between Electrolux, on the one hand, and Plaintiffs and class members, on the other.

124.   Notwithstanding the aforementioned duty, at the time of delivery, Electrolux breached the implied warranty of merchantability in that the Dryers were defective and posed a serious safety risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used, and failed to conform to the standard performance of like products used in the trade.

125.   Electrolux knew, or should have known, that the Dryers posed a safety risk and were defective and knew, or should have known, of these breaches of implied warranties prior to sale of the Dryers to Plaintiff and Class members.

126.   As a direct and proximate result of Electrolux's breaches of its implied warranties, Plaintiffs and class members bought the Dryers without knowledge of the Defect or their serious safety risks.

127.   As a direct and proximate result of Electrolux's breach of its implied warranties Plaintiffs and class members purchased unsafe products which could not be used for their intended use.

128.   As a direct and proximate result of Electrolux's breach of its implied warranties, Plaintiffs and Class members have suffered damages and Electrolux.

129.   Electrolux was unjustly enriched by keeping the profits for its unsafe products while never having to incur the cost of repair, replacement or a recall.

-24-

## COUNT IV

**Breach of Implied Warranty Of Fitness For a Particular Purpose**

**(Plaintiffs, Individually and on Behalf of all Classes and Subclasses)**

130.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

131.   The Dryers owned by Plaintiffs and Class members were defectively designed and manufactured and posed a serious safety risk to consumers when sold.

132.   The Dryers left Electrolux's facilities and control with a Defect caused by defective design incorporated into the manufacture of the Dryer.

133.   The Defect is substantially certain to result in malfunction during the useful life of the product and did malfunction in the useful life of Plaintiffs' Dryer.

134.   The Defect puts the consumers at a safety risk upon using the Dryer in his/her home.

135.   At the time Plaintiffs and Class members purchased the Dryers, they intended to use the goods for the particular purpose of safely drying clothes in a residential setting for personal, family, or household purposes.

136.   At the time of purchase of the Dryers, Electrolux had reason to know of this particular purpose and this implied warranty of fitness for a particular purpose was part of the basis of the bargain between Electrolux, on the one hand, and Plaintiffs and class members, on the other hand.  Indeed, Electrolux sold the Dryers for home use.

137.   Plaintiffs and class members relied on Electrolux's skill and judgment to design and manufacture clothes dryers suitable for this particular purpose.

138.   At the time of purchase, Electrolux had reason to know that Plaintiffs and class members relied on its skill and judgment.

139.   The Dryers, however, when sold to Plaintiffs and class members, and at all times thereafter, were not fit for their particular purpose of safely drying clothes.  Specifically, the Dryers owned by Plaintiffs and class members were

-25-

1    defectively designed and manufactured and left Electrolux's facilities and control

2    with a Defect incorporated into the manufacture of the Dryer and posed a serious

3    risk to safety immediately upon purchase.

4          140.   Accordingly, Electrolux breached the implied warranty of fitness for a

5    particular purpose in that the Dryers are defective and not fit for their intended

6    purpose of safely drying clothes.

7          141.   As fully set forth above, Electrolux knew, or should have known, that

8    the Dryers posed a safety risk and were defective and knew, or should have known,

9    of these breaches of implied warranties prior to sale of the Dryers to Plaintiffs and

10   class members.

11         142.   As a direct and proximate result of Electrolux's breaches of its implied

12   warranties, Plaintiffs and class members bought the Dryers without knowledge of

13   the Defect or their serious safety risks.

14         143.   As a direct and proximate result of Electrolux's breach of its implied

15   warranties, Plaintiffs and class members purchased unsafe Dryers which could not

16   be used for their intended use.

17         144.   As a direct and proximate result of Electrolux's breach of its implied

18   warranties, Plaintiffs and Class members have suffered damages.

19         145.   Electrolux has been unjustly enriched by keeping the profits from the

20   sale of its unsafe Dryers while never having to incur the cost of replacement or a

21   recall.

22                                   **Count V**

23                         **Negligent Failure to Recall**

24   **(Plaintiffs Individually and on Behalf of the California Replacement Class and**

25                   **California Property Damage Subclass)**

26         146.   Plaintiffs re-allege and incorporate paragraphs 1-96 as if fully set forth

27   herein.

28

-26-

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

147.   At all times relevant, Electrolux designed, manufactured, distributed, advertised, marketed, promoted and sold the Dryers at issue herein.

148.   At all times herein, Electrolux had a continuing duty to remove the unsafe and defective Dryers from households across the United States and to recall the Dryers from consumers.

149.   As set forth more fully above, at all times relevant, Electrolux knew, or reasonably should have known, of the Defect and that the Dryers were dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.  Indeed, Electrolux was aware of a Defect in its Dryers causing a serious safety risk to all consumers who owned the Dryers, and Electrolux put those consumers at a significant risk of household fires, property damage and injury.

150.   Electrolux became aware of the defective nature of the Dryers before they were sold and yet placed these defective and unsafe Dryers into the market and continued to place these defective and unsafe Dryers into the market for years.

151.   Moreover, Electrolux was aware of the Defect in its Dryers, which posed a serious safety risk to consumers and the public and yet continued to leave millions of the defective and unsafe Dryers in consumers' homes across the United States.

152.   Electrolux knew of the defective nature of the Dryers after it sold the Dryers but it left these unsafe products in millions of consumers' homes across the United States, creating a serious safety risk to consumers and the public

153.   Electrolux has made no effort to remove this serious safety risk from consumers' homes even today, and in fact, made efforts to conceal the Defect and the safety risk its Dryers pose from consumers and the public.

154.   Despite its knowledge of the Defect and the serious safety risks its Dryers pose to consumers and the public, Electrolux failed to recall or retrofit the Dryers or warn of the dangers of the Dryers despite a duty to do so.

-27-

155.   In failing to recall or retrofit the Dryers, or even warn of the serious safety risk its Dryers pose to consumers, Electrolux failed to act as a reasonable manufacturer, distributor or seller would under the same or similar circumstances and failed to exercise reasonable care.

156.   As a result, Plaintiffs and class members have suffered actual damage or injury; the Defect has rendered the Dryers unsafe and unfit for normal use and has caused injury and damage to property.

157.   Electrolux's failure to recall the Dryers is a substantial factor in causing harm to Plaintiffs and class members.

**COUNT VI**

**Violations of Cal. Civ. Code § 1750, *et seq.***

**(Plaintiffs Individually and on Behalf of the California Replacement Class and California Property Damage Subclass)**

158.   Plaintiffs re-allege and incorporate Paragraphs 1-96 and 146-157 as if fully set forth herein.

159.   The California Consumers Legal Remedies Act, Cal. Civil Code § 1750 *et seq.* ("CLRA") prohibits "unfair or deceptive acts or practices."

160.   The CLRA applies to Electrolux's actions and conduct described herein because it extends to the sale of goods or services for personal, family or household use.

161.   At all relevant times, Plaintiffs and members of the California Replacement Class and Property Damage Subclass were "consumers" as defined in Civil Code § 1761(d).

162.   The transactions from which this action arise include transactions involving the sale or lease of goods or services for personal, family or household purposes within the meaning of Civil Code § 1761.

163.   Electrolux developed, manufactured, marketed and sold the defective Dryers containing the Defect as alleged herein.

-28-

164.   Electrolux developed, manufactured, marketed and sold the Dryers despite knowledge of the Defect and that the Dryers posed a serious safety risk to consumers like Plaintiff and class members.

165.   Electrolux's sale of its Dryers as safe for home use despite knowing that the Dryers posed a serious safety risk to consumers, failing to disclose the Defect and safety risks known to Electrolux but hidden from the consumer, and knowing concealment of the unreasonable safety risks associated with the defective Dryers, are misrepresentations, omissions and concealments of material fact that constitute unfair and/or deceptive practices in violation of the CLRA.

166.   Electrolux violated the CLRA not only when it sold the Dryers representing the Dryers to be safe to be used in consumers' homes, but when it failed to disclose to Plaintiffs and the California lass members that the Dryers had a Defect that posed a serious safety risk to consumers and the public despite the knowledge that the Dryers posed a serious safety risk to Plaintiffs and California class members.

167.   Electrolux engaged in deceptive trade practices, in violation of the CLRA, including selling a product for home use that was unsafe to use in the home, holding out to the public that its Dryers could be used safely in the home, and failing to warn consumers that the Dryers contained a Defect that posed a serious safety risk to consumers and the public.

168.   Electrolux's deceptive trade practices were designed to induce Plaintiffs and the California class members to purchase the Dryers containing the Defect and to avoid the cost of replacing the defective Dryers already in use in thousands of homes throughout California and the United States.

169.   Electrolux's violations of the CLRA were designed to conceal, and Electrolux failed to disclose, material facts about the Defect and unreasonable safety risks in the Dryers in order to induce Plaintiffs and the California class

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

members to purchase the Dryers and in order to avoid the enormous business cost of replacing the Dryers.

170.   By engaging in the unfair and deceptive conduct described herein and more fully above, Electrolux actively concealed and failed to disclose material facts about the defective Dryers.

171.   The omissions set forth above regarding the Dryers are material facts that a reasonable person would have considered important in deciding whether or not to purchase a dryer.  Indeed, no reasonable consumer would have knowingly bought a Dryer for use in the home (or anywhere for that matter) if that consumer had known that the product has a serious Defect and safety risk and that the Defect could caused the product to start on fire in the home.

172.   Electrolux's acts were intended to be deceptive and/or fraudulent, namely to market, distribute and sell the Dryers and to avoid the expense of correcting the Defect and replacing thousands of Dryers throughout California across the United States.

173.   Plaintiffs and the California class members suffered injury in-fact as a direct result of Electrolux's violations of the CLRA in that they have paid for a Dryer that poses an immediate safety risk and will have to be replaced.

174.   Had Electrolux disclosed the true quality, nature and defects of the Dryers, Plaintiffs and class members would not have purchased the Dryers.

175.   Plaintiffs and class members have also been denied the use of their Dryers, expended money on replacements, repairs, and extended warranties, and suffered unreasonable diminution in value of their Electrolux Dryers as a result of Electrolux's conduct.

176.   To this day, Electrolux continues to violate the CLRA by concealing the defective nature of the Dryers in failing to notify customers, failing to issue a recall, and in collecting the profits from costly repairs and replacements.

177.   For their violations of the CLRA, Plaintiffs seeks injunctive relief on behalf of themselves and the California Replacement Class and Property Damage Subclass.  Plaintiffs have given notice of the defect to Electrolux and upon expiration of the period described in Cal. Civ. Code §1782(d), Plaintiffs will seek to amend this Complaint to state a claim for damages under the CLRA.  A copy of the notice sent to Electrolux is attached hereto as Exhibit A.

**COUNT VI**

**Violations of Cal. Bus. & Prof. Code § 17200, *et seq*.**

**(Plaintiffs Individually and on Behalf of the California Replacement Class and California Property Damage Subclass)**

178.   Plaintiffs re-allege and incorporate Paragraphs 1-96 and 146 through 177 as if fully set forth herein.

179.   Electrolux has engaged in unfair competition within the meaning of the California Business & Professional Code § 17200, *et seq*. ("the California UCL") because Electrolux's conduct is unlawful, misleading and unfair, as herein alleged.

180.   Electrolux's business practices are unlawful because they violate the California Civ. Code, including at least § 1572, 1710, 1770(a)(5), 1770(a)(7) and/or 1770(a)(9), 1770(a)(19) and other laws.

181.   Electrolux violated the California UCL, when it concealed and/or failed to disclose the serious safety risk to consumers that its Dryers posed, and concealed and/or failed to disclose fact that the Dryers were defective as described herein when it had a duty to disclose the safety risks and the Defect, and instead sold the Dryers as if they were fit for ordinary purposes and did not pose an unreasonable safety risk.

182.   Electrolux violated the California UCL when it failed to disclose the fact that the Dryers posed a serious safety risk and were defective as described herein when it had a duty to disclose the safety risk to consumers and to disclose

-31-

1    the Defect and instead falsely represented that the Dryers were safe for consumer

2    use and sold the Dryers as if they were safe for consumer use.

3        183.   Electrolux developed, manufactured, marketed and sold the Dryers.

4        184.   As more fully set forth above, Electrolux had knowledge of the serious

5    safety risks posed by the Dryers to consumers and had knowledge of the Defect

6    prior to their sale to Plaintiffs and class members.

7        185.   Electrolux failed to disclose to Plaintiffs and class members the

8    material fact that the Dryers posed a serious safety risk upon sale, were defective

9    and would prematurely fail and posed a serious fire hazard and Electrolux was in

10   exclusive possession of this knowledge.

11       186.   Plaintiffs and the California class members did not and could not have

12   knowledge of the safety risk posed by the Dryers or the Defect at the time of

13   purchase of their Dryers.  Plaintiffs and the members of the California classes lost

14   money or property as a result of their purchases and thus Plaintiffs have standing to

15   represent the classes in this action.

16       187.   Despite its knowledge of the serious safety risk the Dryers posed to

17   consumers and the public, Electrolux failed to issue a warning or recall and replace

18   the Dryers and instead concealed Defect and the safety issues with the Dryers for

19   years.

20       188.   Electrolux's business acts are both unlawful and fraudulent within the

21   meaning of the California UCL.

22       189.   As an entity with exclusive knowledge regarding the safety risk and

23   Defect in the Dryers, Electrolux had a duty to disclose the Defect, particularly in

24   light of the fact that the Dryers posed a serious safety risk to Plaintiffs and the

25   California class members.

26       190.   Plaintiffs and the California class members reasonably expected that

27   Electrolux would disclose the existence of the Defect and the serious safety risk the

28   Dryers posed to consumers and the public and reasonably expected that Electrolux

would not sell a product for home use that was unsafe to use in the home and would start on fire, information which is and was material to Plaintiffs and class members.

191.   Electrolux, at all times relevant, knew or should have known that Plaintiffs and the California class members did not know of, or could not have reasonably discovered, the safety risk or the Defect.

192.   By concealing the serious safety risk posed by its Dryers and the existence of the Defect, Electrolux engaged in actionable, fraudulent conduct within the meaning of the California UCL.

193.   Had Plaintiffs and class members known of the serious safety risk and/or the Defect in the Dryers, they would not have purchased the Dryers.

194.   Electrolux's business acts and practices alleged herein are unfair within the meaning of the California UCL.  Specifically, by failing to disclose and concealing the existence of a defect in the Dryers, Electrolux has engaged in unfair conduct within the meaning of the California UCL.

195.   Electrolux's misconduct is unfair within the meaning of the California UCL as it offends established policy and/or is immoral, unethical, unscrupulous, and substantially injurious to consumers.

196.   Plaintiffs and California class members have lost money and/or property as a result of Defendant's misconduct.

197.   Electrolux's unlawful, unfair and fraudulent business acts and practices continue through the date of this Complaint's filing.

198.   Under the California UCL, Plaintiffs and class members request that this court enjoin Electrolux from engaging in business practices that constitute a violation of the California UCL.  Plaintiffs and California class members further request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair practices, as provided for in Bus. & Prof. Code § 17203 and for such other relief as set forth herein.

## COUNT VII

### Strict Product Liability

### (Plaintiffs, Individually and on Behalf of the National Property Damage Subclass and the California Property Damage Subclass)

199.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

200.   Electrolux is engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling appliances, including dryers, throughout the United States.

201.   Electrolux designed, manufactured, distributed, advertised, marketed, promoted and sold the Dryers at issue herein.

202.   The Dryers were expected to, and did, reach Plaintiffs and class members without substantial change in the condition in which the Dryers were manufactured, sold and distributed.

203.   The Dryers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control in that under normal conditions, usage and applications, the Dryers could not withstand the use for which they were intended and failed, causing damage and fire as well as threatening the consumers' personal safety and in some cases causing personal injuries.

204.   Plaintiffs and class members used the Dryers in a manner reasonably intended by Electrolux.

205.   The Dryers were defective for the following reasons: (1) they were not reasonably safe for ordinary and intended use of safely drying clothes; (2) Electrolux failed to provide Plaintiffs and class members with adequate and sufficient warning regarding the known or foreseeable safety risks and dangers inherent in the Dryers; (3) the design, methods of manufacture, and testing of the Dryers was inadequate and produced a defective product.

206.   As a direct and proximate result of the defective condition of the Dryers, Plaintiffs and Class members purchased Dryers that do not serve the purpose for which they are intended, have suffered property damages and other incidental and consequential damages, and have put their personal safety and the safety of others at serious risk.

## COUNT VIII

### Strict Product Liability for Failure to Warn

### (Plaintiffs, Individually and on Behalf of the National Property Damage Subclass and the California Property Damage Subclass)

207.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

208.   Electrolux is engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling appliances, including dryers.

209.   Electrolux designed, manufactured, distributed, advertised, marketed, promoted and sold the Dryers at issue herein without substantial change in the condition in which they were manufactured, sold and distributed.

210.   The Dryers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control in that under normal conditions, usage and applications, the Dryers could not withstand the use for which they were intended and resulted in failure, damage, and fire causing damage to the dryer as well as threatening the consumers' personal safety and, upon information and belief, in some instances, causing personal injury.

211.   The defects in the Dryers described herein were known or knowable prior to their sale by Electrolux.

212.   Electrolux had no reason to believe that consumers who purchased the Dryers would be aware of the foreseeable harm associated with the use of the Dryers.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

213.   Prior to and before distributing the Dryers sold to Plaintiffs and Class members, Electrolux had a legal duty to warn Plaintiffs and class members about the Defect in the Dryers and the dangers the Defect posed.

214.   As a direct and proximate result of the defective condition of the Dryers, Plaintiffs and Class members purchased Dryers that do not serve the purpose for which they are intended, have suffered property damages and other incidental and consequential damages, and have put their personal safety, and the safety of others, at serious risk.

## COUNT V

### Injunctive Relief

**(Plaintiffs Individually and on Behalf of All Classes and Subclasses)**

215.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

216.   Electrolux designed, manufactured, produced, tested, inspected, marketed, distributed, and sold Dryers that contain a material and dangerous Defect as described above.

217.   Based upon information and belief, Electrolux continues to market, distribute, and sell Dryers that contain the material and dangerous Defect and have done nothing to remove the Dryers containing the Defect described herein from the market and from the households of consumers.

218.   The Defect described herein poses an imminent threat to the safety of consumers and the public.

219.   Upon information and belief, Electrolux has taken no corrective action concerning the defects described herein, and has not issued any warnings or notices concerning the dangerous Defect, replaced the dangerous Dryers or implemented a product recall.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

220.   Plaintiffs and class members have suffered actual damage or injury or are in immediate risk of suffering actual damage or injury due to the Dryers' Defects.

221.   Electrolux should be required to take corrective action to avoid the serious and immediate safety risk its Dryers pose, including: issuing a nationwide recall and replacement of the Dryers; issuing warnings and/or notices to consumer and the class members concerning the Dryers Defect and safety risks the Dryers pose; and, if Electrolux has not already done so, immediately discontinue the manufacture, production, marketing, distribution, and sale of the Dryers

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following judgment:

A.   An Order certifying this action as a class action;

B.   An Order appointing Plaintiffs as class representatives and appointing counsel undersigned to represent the classes;

C.   A Declaration that the Dryers are defective;

D.   A Declaration that the Defect poses a serious safety risk to consumers and the public;

E.   An Order awarding injunctive relief by requiring Electrolux to issue corrective actions including notification, recall, and replacement of the Dryers;

F.   Payment to the classes of all damages associated with the replacement of the defective products, in an amount to be proven at trial;

G.   Payment to the classes of all damages associated with property damage as a result of the defective products, in an amount to be proven at trial;

H.   Restitution as authorized by law;

I.   An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class;

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

J.    Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

K.    Such other and further relief as this Court may deem just, equitable, or proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all claims for which a jury trial is authorized.

Dated: September 27, 2012

By: _Gretchen Nelson_

Gretchen Nelson

**KREINDLER & KREINDLER LLP**
GRETCHEN NELSON
gnelsen@kreindler.com
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

**WEXLER WALLACE LLP**
EDWARD A. WALLACE
AMY E. KELLER
DAWN M. GOULET
eaw@wexlerwallace.com
aek@wexlerwallace.com
dmg@wexlerwallace.com
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**HANSEN REYNOLDS DICKINSON CRUEGER LLC**
ERIN DICKINSON
CHARLES CRUEGER
erin@hrdc-law.com
charles@hrdc-law.com
316 North Milwaukee Street, Suite 200
Milwaukee, Wisconsin 53202
Telephone: (414) 455-7676
Facsimile: (414) 273-8476

**GREG COLEMAN LAW PC**
GREGORY F. COLEMAN
MARK E. SILVEY
greg@gregcolemanlaw.com
mark@gregcolemanlaw.com
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, Tennessee 37902
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

*Attorneys for the Plaintiffs and the Classes*

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# EXHIBIT A

**WEXLER WALLACE** LLP

Chicago + Sacramento

Amy E. Keller          312.589.6283 Direct
                       aek@wexlerwallace.com

September 26, 2012

*VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED*

Electrolux Home Products, Inc.
c/o Jack G. Truong
Chief Executive Officer
4720 Piedmont Row Drive, Suite 400
Augusta, Georgia 30907

Electrolux Home Products, Inc.
c/o Cecilia Vieweg
General Counsel, Senior Vice President
4720 Piedmont Row Drive, Suite 400
Augusta, Georgia 30907

Electrolux Home Products, Inc.
c/o CT Corporation System
Registered Agent for Service of Process
818 W. Seventh Street
Los Angeles, California 90017

> RE:   **NOTICE of Violations of the California Consumer Legal Remedies Act and Duty to Preserve Evidence**

Dear Sir or Madame:

PLEASE TAKE NOTICE that this letter constitutes notice under the California Consumer Legal Remedies Act (the "CLRA"), California Civil Code Section 1750, *et seq.*, and specifically Section 1782 of the CLRA, notifying ELECTROLUX HOME PRODUCTS, INC. ("Electrolux") of violations of the CLRA and of our demand that Electrolux remedy such violations within thirty (30) days from your receipt of this letter.

This firm represents Shawn Roberts and Nicole Horton, who purchased a dryer manufactured by Electrolux, and sold under the brand name Frigidaire, manufactured in July 2007 (the "Dryer") in California. Mr. Roberts and Ms. Horton purchased the Dryer based on, among other things, representations as to the quality and reliability of the product and based on their belief that the product was safe for its intended use. Unknown to Mr. Roberts or Ms. Horton, the Dryer had a serious safety defect that has been known to Electrolux for some time.

**WEXLER WALLACE** LLP

Chicago + Sacramento

September 26, 2012
Page 2

In July 2012, the Dryer caught fire as a result of the defect causing serious property damage to Mr. Roberts and Ms. Horton's apartment and personal property. Mr. Roberts and Ms. Horton have suffered in jury in fact as a result of their purchase of the defective Dryer.

The defect in the Dryer is the design which incorporates a front drum that fails to seal the drum from the surrounding cabinet, thereby allowing the accumulation of lint behind the drum and in the heater pan, areas that are not visible to, or serviceable by, the user. The Dryer also contained a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, both of which accumulated lint during normal use, and both of which are not visible to or serviceable by the user. The Defect is particularly dangerous because it cannot be detected by the consumers during normal use as it exists in an area of the Dryer that was not visible to Mr. Roberts or Ms. Horton or any other consumer.

Electrolux sold the Dryer representing that it was free of defects and knowing full well that it had a serious safety defect which could result in a fire that posed not only the risk of property damage but of personal injuries and/or death.

Any reasonable consumer, such as Mr. Roberts and Ms. Horton, would have relied on representations made by Electrolux and/or those entities selling products manufactured by Electrolux under another brand name, such as Frigidaire, as to the alleged quality of the products. Through the exercise of reasonable diligence any reasonable consumer would not have discovered the violations alleged herein because Electrolux actively and purposefully concealed the truth regarding the products.

In conclusion, the material misrepresentations made as to the quality and safety of the Dryer was intended to deceive customers, such as Mr. Roberts and Ms. Horton, into purchasing Dryers manufactured by Electrolux.

Please be advised that the alleged unfair methods of competition or unfair, or deceptive acts or practices in violation of the CLRA engaged in by Electrolux include, but are not necessarily limited to, the following:

Section 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

Section 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

Section 1770(a)(9): advertising goods with intent not to sell them as advertised; and/or

Section 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

# WEXLER WALLACE LLP

Chicago + Sacramento

September 26, 2012
Page 3

Electrolux has failed to honor its consumer protection obligations.  Based upon the above, demand is hereby made that Electrolux: (1) identify all consumers who have purchased a defective dryer (or, that Electrolux has made a reasonable effort to identify all such consumers); (2) notify all such consumers that Electrolux will provide them with an appropriate remedy, including, but not limited to, full reimbursement for the Dryers, along with compensation for out-of-pocket losses; (3) conduct a corrective advertising campaign and destroy all misleading and deceptive advertising materials and products; and (4) recall all products and inform all purchasers of the defective dryers of the defect and that the dryers defect may cause the dryers to catch fire and cause property damage or personal injuries or death.

Please be advised that your failure to comply with this request within thirty (30) days may subject you to the following remedies, available for violations of the CLRA, which will be requested in the first amended class action complaint on behalf of our clients and all other similarly-situated California residents.

> (1) The actual damages suffered;
> (2) An order enjoining you from such methods, acts or practices;
> (3) Restitution of property (where applicable);
> (4) Punitive Damages;
> (5) Any other relief which the court deems proper; and
> (6) Court costs and attorneys' fees.

Additionally, we remind you of your legal duty to preserve all records relevant to such litigation. *See, e.g., Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 175 (S.D.N.Y. 2004); *Computer Ass'n Int'l v. American Fundware, Inc.*, 133 F.R.D. 166, 168-69 (D. Colo. 1990). This firm anticipates that all electronic documents, letters, reports, internal corporate instant messages, and other records that relate to the design, manufacture, marketing and sales of the dryers will be sought in the forthcoming discovery process. You there must inform any employees, contractors, and third-party agents (including but not limited to consultants and advertising agencies handling your accounts) preserve all such relevant documentation and information.

We look forward to your taking corrective action.

Very truly yours,

Amy E. Keller

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## SACV12- 1644 CAS  (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Gretchen M. Nelson (112566)
gnelson@kreindler.com
KREINDLER & KREINDLER LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, CA 90017   (213) 622-6469

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ROBERTS and NICOLE HORTON on behalf of themselves and all others similarly situated,<br><br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC.<br><br><br>PLAINTIFF(S)<br><br><br>DEFENDANT(S). | CASE NUMBER<br><br>SACV12-1644-CAS (VBKx)<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Gretchen M. Nelson_____, whose address is _Kreindler & Kreindler LLP, 707 Wilshire Blvd., Suite 4100, Los Angeles, CA 90017_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: Sept. _27_ , 2012

By: _____

MARILYN DAVIS

Deputy Clerk

_(Seal of the Court)_

_[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)]._

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Shawn Roberts and Nicole Horton

**DEFENDANTS**
Electrolux Home Products, Inc.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Gretchen M. Nelson; gnelson@kreindler.com          (213) 622-6469
KREINDLER & KREINDLER LLP
707 Wilshire Blvd., Suite 4100, Los Angeles, CA 90017          (see attached list)

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No          ☒ **MONEY DEMANDED IN COMPLAINT: $** According to Proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Class Action for Damages and Injunctive Relief re Sale of Dryers          28 U.S.C. §1332(d)(2)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☒ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

---

**FOR OFFICE USE ONLY:**   Case Number:   SACV12-1644

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                    **CIVIL COVER SHEET**                    Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District: | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Roberts - Orange County<br>Horton - Orange County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Electrolux Home Products, Inc. - North Carolina |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date  9/27/12

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

Attachment to I. (b)  - additional attorneys for plaintiffs

Edward Wallace [eaw@wexlerwallace.com]
Amy Keller  [aek@wexlerwallace.com]
Dawn Goullet [dmg@wexlerwallace.com]
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Telecopier: (312) 346-0022

Erin Dickinson  [erin@hrdc-law.com]
Charles Crueger [charles@hrdc-law.com]
HANSEN REYNOLDS DICKINSON CRUEGER LLC
316 North Milwaukee Street, Suite 200
Milwaukee, Wisconsin 53202
Telephone: (414) 455-7676
Telecopier: (414) 273-8476

Gregory Coleman [greg@gregcolemanlaw.com]
Mark Silvey [mark@gregcolemanlaw.com]
GREG COLEMAN LAW PC
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, Tennessee 37902
Telephone:  (865) 247-0080
Telecopier: (865) 522-0049