EDWARD A. WALLACE (*pro hac vice*)
AMY E. KELLER (*pro hac vice*)
DAWN M. GOULET (*pro hac vice*)
**WEXLER  WALLACE LLP**
eaw@wexlerwallace.com
aek@wexlerwallace.com
dmg@wexlerwallace.com
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

(*Additional Counsel Appear
on Signature Page*)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SHAWN ROBERTS, et al.;<br><br>     Plaintiffs,<br><br>  vs.<br><br>ELECTROLUX HOME PRODUCTS, INC.,<br><br>     Defendants. | Master File No. SACV12-1644-CAS(VBKx)<br><br>CLASS ACTION<br><br>**CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND FOR SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Action Filed: September 27, 2012<br><br>The Honorable Christina A. Snyder<br><br>Date: August 18, 2014<br>Time: 10:00 a.m.<br>Courtroom: 5—2nd Floor |
| This Document Relates To: All Actions. | |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................... 1

II.  SUMMARY OF THE RELEVANT PROCEEDINGS ........................... 2

    A.  Class Counsel Expended Considerable Time and Resources in Investigating, Litigating, and Settling this Complex Action .................. 3

        1.  Class Counsel performed an extensive factual investigation and retained qualified experts to prosecute this action...................... 3

        2.  Class Counsel expended many hours related to motion practice and discovery........................................................... 4

III. SUMMARY OF THE SETTLEMENT AGREEMENT ......................... 6

    A.  Settlement Negotiations and Mediation................................................. 6

    B.  The Settlement Provides Exceptional Benefits for Class Members ........ 8

        1.  Monetary Benefits .............................................................. 9

        2.  Safety-Related Dryer Service Program ............................................10

        3.  Injunctive Relief ..............................................................11

        4.  Additional Benefits ..........................................................12

IV.  DISCUSSION..................................................................13

    A.  Class Counsel's Lodestar Plus a Modest Multiplier is an Appropriate Approach to Award Attorneys' Fees in this Case .............13

        1.  The Lodestar method is appropriate given the fee-shifting statues involved in this case.......................................................14

        2.  Class Counsel's fees are reasonable. ...............................................17

    B.  A Cross-Check Demonstrates that Class Counsel's Fee Award is Reasonable..............................................................21

    C.  The Requested Service Awards are Reasonable ...................................23

V.   CONCLUSION.................................................................24

i

CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND FOR
SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
MASTER FILE NO. SACV12-1644-CAS(VBKx)

# TABLE OF AUTHORITIES

**Cases**

*Alberto v. GMRI, Inc.*,
  252 F.R.D. 652 (E.D. Cal. 2008).................................................................. 24

*Blum v. Stenson*,
  465 U.S. 886 (1984)..................................................................................... 17

*Chaikin v. Lululemon USA, Inc.*,
  No. 12-CV-02481-GPC-MDD, 2014 U.S. Dist. LEXIS 35258
  (S.D. Cal. Mar. 14, 2014).............................................................................. 24

*Comcast v. Behrend*,
  569 U.S. ___, 133 S. Ct. 1426 (2013) .......................................................... 4

*Crane-McNab v. County of Merced*,
  773 F. Supp. 2d 861 (E.D. Cal. 2011) .................................................. 17, 19

*Fischer v. SJB-P.D. Inc.*,
  214 F.3d 1115 (9th Cir. 2000)...................................................................... 17

*Foos v. Ann, Inc.*,
  No. 11cv2794, 2013 U.S. Dist. LEXIS 136918 (S.D. Cal. Sept. 24, 2013).. 18

*Gezalyan v. BMW of North America, LLC*,
  697 F. Supp. 2d. 1168 (C.D. Cal. 2010) ...................................................... 14

*Hanlon v. Chrysler Corp.*,
  150 F. 3d 1011 (9th Cir. 1998)..................................................................... 22

*Hanlon v. Chrysler Corp.*,
  150 F.3d. 1011 (9th Cir. 1998)..................................................................... 19

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. Jan. 20, 2011).................................................... 18

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)..................................................................................... 17

*In re Bluetooth Headset Prods. Liab. Litig*,
  654 F.3d 935 (9th Cir. 2011)................................................................. 15, 16

*In re Easysaver Rewards Litig.*,
  921 F. Supp. 2d 1040 (S.D. Cal. Feb. 4, 2013).......................................... 21

*In re Ferrero Litig.*,
    No. 11-cv-00205-KSC, 2012 U.S. Dist. LEXIS 94900
    (S.D. Cal. July 9, 2012)................................................................... 15, 16, 23

*In re Ferrero Litig.*,
    No. 12-56469, 2014 U.S. App. LEXIS 13573 (9th Cir. July 16, 2014)........ 15

*In re HP Power Plug & Graphic Card Litig.*,
    No. C-06-02254 RMW, 2008 U.S. Dist. LEXIS 111427
    (N.D. Cal. July 8, 2008) ........................................................................ 16, 23

*In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and*
    *Prods. Liability Litig.*,
    No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298
    (C.D. Cal. July 24, 2013) .............................................................................. 21

*In re: Toys "R" Us – Delaware, Inc. – Fair & Accurate Credit Transactions Act*
    *(FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ........................................................... 18, 22

*Iorio v. Allianz Life Ins. Co. of N. Am., Inc.*,
    No. 05-cv-0633-JLS (CAB), 2011 U.S. Dist. LEXIS 21824
    (S.D. Cal. Mar. 3, 2011)................................................................................ 22

*Jefferson v. H&M Hennes & Mauritz, L.P.*,
    No. CV 11-7683 CAS (JCGx), 2013 U.S. Dist. LEXIS 2875
    (C.D. Cal. Jan. 7, 2013) ............................................................................... 21

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975)................................................................... 17, 19

*Ketchum v. Moses*,
    24 Cal. 4th 1122, 17 P.3d 735 (2001).......................................................... 15

*Landen v. Electrolux Home Products, Inc.*,
    No. CV 13-1033 DSF (SHx), 2014 U.S. Dist. LEXIS 90886
    (C.D. Cal. July 1, 2014) ............................................................................... 20

*Larsen v. Trader Joe's Co.*,
    No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538
    (N.D. Cal. July 11, 2014) ............................................................................ 14

*Lealao v. Beneficial Cal., Inc.*,
    82 Cal. App. 4th 19, 97 Cal. Rptr. 2d 797 (2000)....................................... 14

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012)................................................................... 20

*Merkner v. AK Steel Corp.*,
    No. 09-CV-423, 2011 U.S. Dist. LEXIS 157375 (S.D. Ohio Oct. 1, 2011) . 21

*Morey v. Louis Vuitton N.A., Inc.*,
    NO. 11cv1517 WQH (BLM), 2014 U.S. Dist. LEXIS 3331
    (S.D. Cal. Jan. 10, 2014) .............................................................................. 18

*New Eng. Carpenters Health Benefits Fund v. First Databank*,
    No. 05-11148-PBS, 2009 U.S. Dist. LEXIS 68419
    (D. Mass. Aug. 3, 2009) ............................................................................... 21

*Reed v. 1-800 Contacts, Inc.*,
    No. 12-cv-02359 JM (BGS), 2014 U.S. Dist. LEXIS 255
    (S.D. Cal. Jan. 2, 2014) .......................................................................... 18, 21

*Roberts, et al. v. Electrolux Home Prods., Inc.*,
    No. SACV 12-1644 CAS (VBKx), 2013 U.S. Dist. LEXIS 115870
    (C.D. Cal. Aug. 14, 2013) .............................................................................. 5

*Seebrook v. The Children's Place Retail Stores, Inc.*,
    No. C 11-837 CW, 2013 U.S. Dist. LEXIS 171864
    (N.D. Cal. Dec. 4, 2013) ...................................................................... 15, 18

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ..................................................................... 22

*State of Florida v. Dunne*,
    915 F.2d 542 (9th Cir. 1990) ........................................................................ 18

*United Steelworkers of America v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ........................................................................ 17

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................... 14, 20

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224, 110 Cal. Rptr. 2d 145 (2001) .............................. 14, 15

**Statutes**

15 U.S.C. § 2310 ............................................................................................ 2, 15

15 U.S.C. § 2301 ............................................................................................ 2, 15

Ark. Code Ann § 4-88 ............................................................................... 2, 15, 16

Cal. Civ. Code. § 1750 ................................................................................... 2, 15

Cal. Civ. Code. § 1780 ................................................................................... 2, 15

N.Y. G.B.L. § 349 ..................................................................................... 2, 15, 16

CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND FOR
SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
MASTER FILE NO. SACV12-1644-CAS(VBKx)

# I.   INTRODUCTION

On May 5, 2012, this Court granted preliminary approval to a class action Settlement that will confer significant safety, monetary, and non-monetary relief to the proposed nationwide Settlement Class of owners of certain types of dryers manufactured by Electrolux Home Products, Inc. ("Electrolux").  The strong result and recovery achieved in the nationwide Settlement are largely attributable to Class Counsel's efforts and creativity, and were the result of vigorous motion practice, extensive and expensive expert discovery on multiple technical issues, and a lengthy, hard-fought negotiation that included: an initial mediation session with opposing counsel and Electrolux's in-house counsel in late 2013, several mediation conference calls with opposing counsel, *ex parte* conference calls with nationally-renowned mediator Jonathan Marks, Class Counsel's[1] submission of over a hundred pages of briefing to the mediator, two day-long mediation sessions (which Electrolux's in-house counsel attended), and numerous post-mediation conference calls.  *See* Exhibit 1, Declaration of Edward A. Wallace ("Wallace Decl.") at ¶¶ 29-37, and Exhibit 2, Declaration of Jonathan Marks ("Marks Decl."), at ¶¶ 9-21.  At the end of the negotiations, Mr. Marks concluded that the parties were represented by "experienced and competent counsel," who were "effective advocates for their clients. . . ."  Marks Decl. ¶¶ 22-24.

In connection with the Settlement, Class Counsel requests an award of $8 million, inclusive of attorneys' fees and costs.  Class Counsel also requests a modest service award of $3,000 for each of the named Plaintiffs: Shannon Carty, Matthew Downs, Stephen Gavic, Michelle McGowan, and Tammie Humphrey

---

[1] Pursuant to this Court's Preliminary Approval Order (ECF No. 150), Edward A. Wallace, Amy E. Keller, and Dawn M. Goulet of Wexler Wallace LLP; Erin K. Dickinson and Charles J. Crueger of Hansen Reynolds Dickinson Crueger LLC; and Gregory F. Coleman of Greg Coleman Law PC, were appointed Class Counsel pursuant to Fed. R. Civ. P. 23(g).

("Plaintiffs").   These fees, expense reimbursements, and service awards will be paid separately by Electrolux, who has no objection to them, and will have no impact on or otherwise diminish the benefits paid to the Settlement Class.   As detailed below, the amounts requested are squarely within the confines of the law followed in this Circuit.

## II.   SUMMARY OF THE RELEVANT PROCEEDINGS

Plaintiffs brought three class action lawsuits[2] against Electrolux alleging that it designed and manufactured "ball-hitch" clothes Dryers ("Dryers") having uniform design defects that could cause "lint to accumulate behind the drum in direct proximity to the heat source," and that lint could "ignite and travel into the drum." (Consol. Second Amend. Class Action Compl. ("2AC"), ECF No. 140-1, ¶ 1, 71-75.)  The lawsuits alleged, *inter alia*, violations of various state consumer protection statutes (Cal. Civ. Code. § 1750, *et seq.*; Ark. Code Ann § 4-88-107, *et seq.*; N.Y. G.B.L. § 349, *et seq.*), and the Magnuson-Moss Warranty Improvement Act[3] for breaches of implied and express warranties (15 U.S.C. § 2301, *et seq.*), each of which provides for attorneys' fees to a successful plaintiff (15 U.S.C. § 2310(d); Cal. Civ. Code. § 1780(e); Ark. Code Ann § 4-88-113; N.Y. G.B.L. § 349(h)).   After significant investigation, discovery, and litigation, the parties arrived at a Settlement that resolves these claims, but will not require a release of any personal injury or property damage claims.

---

[2] *Humphrey v. Electrolux Home Products, Inc.*, No. 12-cv-00157 (E.D. Ark.) ("*Humphrey*"), *McGowan v. Electrolux Home Products, Inc.*, No. 12-cv-05019 (E.D.N.Y.) ("*McGowan*"), and this Action were later consolidated.  (2AC, ECF No. 140-1, 141.)

[3] Brought as Count V in the latest operative complaint.  (2AC, ECF No. 143 at 36.)

**A.    Class Counsel Expended Considerable Time and Resources in Investigating, Litigating, and Settling this Complex Action**

Class Counsel expended thousands of hours and hundreds of thousands of dollars in necessary out-of-pocket expenses to investigate, develop, prosecute, and resolve the three consolidated class actions.  As a result, Class Counsel were able to overcome many obstacles to secure important benefits for the Class.

**1.    Class Counsel performed an extensive factual investigation and retained qualified experts to prosecute this action.**

Before filing the initial complaint in the *Humphrey* Action, Class Counsel investigated the potential problems with the Dryers, and eventually worked with a consulting expert witness who had investigated other fires caused by these Dryers—Jack Sanderson of Fire Findings, LLC—to perform a non-destructive examination of Ms. Humphrey's Dryer.  Wallace Decl. ¶¶ 8-12.  Class Counsel also retained several highly-qualified testifying experts—after extensive research—in order to ultimately prepare this case for class certification and trial, including:

    i   An engineering expert to analyze the Dryer's design, which included extensive technical analysis and comparative testing of air flow on the Dryers—which had never been done before[4] (Marthinus van Schoor, Ph.D., who is well-known and well-respected in his field);

    i   Experts on the thermal properties of plastics (Sam Miller, Ph.D. and W. Joseph Fallows, B.S.E., whose unique experiences with the plastic component parts used in Electrolux's competitors' dryers proved helpful to Plaintiffs' continuing investigation of the Dryers' defects);

---

[4] This air flow testing had not been performed by Electrolux during its engineering process or any of the prior individual lawsuits filed against Electrolux related to Dryer fires.  Wallace Decl., Ex. C at 44-47, 76-77 (Mar. 26, 2013 Dep. Tr. of Carl C. King).

1    i    An experienced fire origin and cause expert (Michael Stoddard of the
2         Wright Group, Inc., a company which has investigated many dryer
3         fires, including Electrolux Dryer fires);
4    i    An expert on warnings and a human factors psychologist (Carol
5         Pollack-Nelson, Ph.D., formerly of the U.S. Consumer Product Safety
6         Commission); and
7    i    An expert witness on the complicated damages involved in this case,
8         in light of the Supreme Court's *Comcast v. Behrend* decision, 569
9         U.S. ___, 133 S. Ct. 1426 (2013) (Frank Bernatowicz, C.P.A., P.E.,
10        whose background in engineering and extensive accounting
11        experience benefitted the case).

12   Wallace Decl. ¶¶ 24-25.  The experts prepared a detailed report after reviewing
13   thousands of documents and performing numerous tests.  *Id.* ¶ 27. The
14   thoroughness of Class Counsel's investigation is reflected in the fact that
15   Electrolux named seven expert witnesses to address the technical and damages
16   issues raised in Plaintiffs' expert reports.  *Id.*  During settlement negotiations,
17   Class Counsel were also preparing for the upcoming depositions of both Plaintiffs'
18   experts and Electrolux's seven expert witnesses.

19              **2.    Class Counsel expended many hours related to motion**
20                      **practice and discovery.**

21        Class Counsel's time in these consolidated actions was largely driven by
22   responding to a well-executed defense by sophisticated counsel.  Electrolux
23   attacked the pleadings in each of the eventually-consolidated actions—including
24   on motions to dismiss and strike, which required briefing and preparing for oral
25   argument by Class Counsel.  (*Humphrey* ECF Nos. 16-17, 20-21, 24, 30-32, 34,
26   36, 42, 44; *McGowan* ECF Nos. 10, 17, 20-21; *Roberts* ECF Nos. 36, 43-45, 53-
27   54, 60-62, 66-67.)    Thereafter, the Plaintiffs responded to—and defeated—

28

CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND FOR
SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
MASTER FILE NO. SACV12-1644-CAS(VBKx)

Electrolux's motion campaign to consolidate all of the then-pending actions in Arkansas. (*Id*.) When Plaintiffs agreed to consolidate the actions in California, Electrolux wanted to continue litigating the *Humphrey* Action separately in Arkansas—which required Class Counsel's effort to ensure that the cases were proceeding on parallel tracks, while preparing for class certification in two separate courts. (*Humphrey* ECF No. 48, 49; *Roberts* ECF No. 71.) Wallace Decl. ¶ 14.[5]

The parties began discovery in August 2012. Over the next eighteen months, the parties engaged in extensive written and document discovery, including production of over 900,000 pages of documents, and copies of electronic databases comprising terabytes of data. Plaintiffs also took numerous depositions of current and former Electrolux engineers and several Rule 30(b)(6) depositions of Electrolux's corporate representatives on topics ranging from design modifications and materials, Electrolux's corporate structure, and record retention. Wallace Decl. ¶¶ 17-18. In turn, Electrolux served written discovery on Plaintiffs and took each of their depositions in California, New York, Illinois, Arkansas, and Missouri. In addition, the Plaintiffs made their Dryers available for day-long inspections by the parties' experts and opened their homes to have their venting and laundry rooms inspected by the parties' experts. *Id*. ¶ 19. Plaintiffs produced relevant documents within their possession, in addition to hundreds of thousands of pages of documents and other data—including testing and video—in the possession of their experts. *Id*. ¶¶ 17, 19.

---

[5] When Electrolux opposed allowing the original California plaintiffs to withdraw as named plaintiffs, Class Counsel had to brief that issue, as well, and was ultimately successful. *See Roberts, et al. v. Electrolux Home Prods., Inc.*, No. SACV 12-1644 CAS (VBKx), 2013 U.S. Dist. LEXIS 115870 (C.D. Cal. Aug. 14, 2013).

Despite the extensive discovery produced, Plaintiffs noted deficiencies with Electrolux's responses—namely, that Electrolux had identified only one individual in its initial disclosures (Carl King, Electrolux's "Safety Engineer"), did not initially provide Plaintiffs with basic discovery such as sales numbers, and did not produce documents which were ultimately produced from another source after Plaintiffs had to subpoena one of Electrolux's customers, General Electric. Wallace Decl. ¶ 20. Class Counsel diligently met and conferred with Electrolux (including an in-person meet-and-confer in Chicago, Illinois), only bringing one discovery motion over the course of approximately two years of contentious litigation. (*Roberts* ECF No. 84.) *See also* Wallace Decl. ¶ 21. Although ultimately unsuccessful, that motion resulted in Electrolux producing documents for the first time that were never produced in over a decade of litigation involving other Dryer fires. *Id.*

Plaintiffs served their initial expert disclosures and reports in October 2013 on topics such as dryer design, the cause of the fires in Plaintiffs' Dryers, materials, human factors and warnings, and damages in consumer class actions. Electrolux submitted its expert disclosures and reports in early January 2014, and the parties started preparing to file briefs on class certification and for expert depositions when they began engaging in settlement negotiations. *Id.* ¶ 27.

## III.   SUMMARY OF THE SETTLEMENT AGREEMENT

Class Counsel devoted substantial resources to prepare for and participate in the mediation sessions that ultimately led to the Settlement. Wallace Decl. ¶¶ 29-37. The parties entered into a nationwide Settlement only after extensive mediation over the course of several months.

### A.   Settlement Negotiations and Mediation

In late 2013, Class Counsel and both outside and in-house counsel for Electrolux met in Chicago, Illinois, to discuss a potential resolution to the pending

6

actions.   Wallace Decl. ¶ 30. In December 2013, the parties engaged Jonathan Marks of MarksADR, LLC, a nationally-renowned private mediator, to assist in exploring the possibility of resolving Plaintiffs' class claims.   Marks Decl. ¶ 6. The parties provided Mr. Marks voluminous materials, including all pertinent pleadings, expert reports, orders, and briefing in the case and extensive mediation statements (Class Counsel provided Mr. Marks with over 100 pages of briefing specifically drafted for the mediation, itself).   Wallace Decl. ¶ 31. Mr. Marks also held *ex parte* telephone conferences with Plaintiffs' counsel and Electrolux's counsel regarding their respective claims, defenses, and arguments. *Id*.   The parties thereafter engaged in a formal mediation with Mr. Marks on January 7 and 8, 2014, in Chicago, Illinois.   Marks Decl. ¶ 14.

With the assistance of Mr. Marks, the parties engaged in arm's-length negotiations.   *Id*. ¶¶ 15-23.   Following numerous proposals and counter-proposals, the parties' agreed on many, but not all, of the essential terms of the settlement. On the second day of the mediation, the parties finally agreed upon the basic terms of the Settlement, and then and only then did they begin to discuss attorneys' fees. Marks Decl. ¶ 17.   When they could not reach an agreement on the fees, Class Counsel suggested bringing the issue directly to the Court, an idea that was ultimately rejected by Electrolux.   Wallace Decl. ¶ 35.   The parties then engaged in subsequent sessions, with and without Mr. Marks's involvement, in the following months.  The parties finalized the Settlement in April 2014. *Id.* ¶ 36.

On April 30, 2014, the parties formally entered into a comprehensive written Settlement Agreement. The Settlement Agreement provides for a nationwide settlement of Plaintiffs' class claims, with the "Settlement Class" proposed as "all residents of the United States who purchased or currently own, primarily for personal or household purposes, a Dryer," (Settlement Agreement I.LL), with Dryer defined as "Frigidaire-, White Westinghouse-, Kelvinator-,

Gibson-, Tappan-, Crosley-, or Kenmore- brand ball-hitch freestanding clothing dryers manufactured by Electrolux at its Webster City, Iowa, division between January 1, 2002, and December 31, 2011." (*Id.* I.J.)  Excluded from the Settlement Class are (a) officers, directors, and employees of Electrolux and its parents or subsidiaries, (b) insurers of Settlement Class Members, (c) subrogees or all entities claiming to be subrogated to the rights of a Dryer purchaser, a Dryer owner, or a Settlement Class Member, and (d) issuers or providers of extended Dryer warranties or service contracts. (*Id.* I.LL.)

Class Counsel believes—and the named Plaintiffs agree[6]—that the Settlement is in the best interests of the Class.

**B.      The Settlement Provides Exceptional Benefits for Class Members**

The nationwide Settlement provides for many different benefits for the Class members—each of which has been evaluated by Class Counsel to ensure that the Settlement provides real safety, monetary, and non-monetary relief to the Settlement Class without requiring *any* of the Class members to release personal injury or property damage claims against Electrolux.[7]  To that end, Class Counsel engaged Mr. Bernatowicz, who was assisted by Dr. van Schoor, to evaluate the benefits the Settlement makes available to the class.  As Mr. Bernatowicz explains, the analysis he performed is in accordance with the Financial Accounting Standards Board pronouncement #5 and is similar to the methodology accountants use to estimate warranty reserves and/or financial statement losses.  Wallace Decl., Ex. D.[8]

---

[6] Attached as Exhibit F to Edward A. Wallace's declaration are the signatures of the named Plaintiffs—each of whom has approved of the Settlement Agreement as class representatives and fiduciaries of the absent Settlement Class members.

[7] Except for claims related to the purchase price of the Dryer.  (Settlement Agreement I.FF.)

[8] As explained herein, this value represents an expected "utilization rate" of the Settlement.  The valuation does not take into account the cash rebate or voucher

### 1.    Monetary Benefits

**Compensation for Past Dryer Fires.**  For those Settlement Class Members who had a Dryer fire within the first 10 years after purchase, Electrolux will reimburse them for any unreimbursed, out-of-pocket expenses the Settlement Class Members incurred (including to repair or replace the Dryer, for an insurance deductible expense, or for damages to other property) relating to the fire, up to the lesser of Dryer's purchase price or $1,300.  (Settlement Agreement IV.E.)

**Compensation for Future Dryer Fires.**  For those Settlement Class Members who experience a Dryer fire at some point in the future (but within the first 10 years after purchase), Electrolux will reimburse them for any out-of-pocket expenses the Settlement Class Members incur (including to repair or replace the Dryer, for an insurance deductible expense, or for damages to other property) relating to that fire, up to the lesser of Dryer's purchase price or $1,300.  This portion of the Settlement will remain in effect until December 31, 2022—which will require Class Counsel to continue to monitor the Settlement for the next eight years, and respond to any comments, inquiries, or concerns from the Settlement Class.  (*Id.* IV.F.)

Based upon an extensive process, which takes into account the "value" of this portion of the Settlement to Settlement Class Members, Mr. Bernatowicz estimates that this portion of the Settlement has a full utilization value—the value of the benefits made available to the Class—of $13.5 million,[9] and a projected utilization value of $7.8 million.  Wallace Decl., Ex. D.

programs offered under the Settlement—which add additional value.  *Mr. Bernatowicz estimates that the Settlement's utilization value may be as high as $43 million, and if 100% of the Settlement Class Members participated in and claimed the benefits available under the Settlement, the value of the Settlement could be as high as $155 million.*  Wallace Decl., Ex. D.

[9] This calculation is derived by adding the "full utilization value" from the 2002-2013 "past dryer fires" ($9.3 million) to the total for the 2014-2022 "future dryer fires" ($4.2 million).  *Id.*

## 2. Safety-Related Dryer Service Program

**Free Dryer Service Cleaning Program.** Electrolux's position from the commencement of this litigation (indeed, the basis for several of its affirmative defenses) is that cleaning these Dryers would *significantly* reduce their fire rate. (*McGowan* ECF No. 27 at 26-27; *Humphrey* ECF No. 52 at 32, 35; *Roberts* ECF No. 80 at 67.)[10]   A dryer cleaning on average costs around $100. Wallace Decl., Ex. D.

Under the Settlement, Electrolux will provide free-of-charge a Dryer cleaning service from an authorized service technician for those Settlement Class Members who experienced, within the first five years of ownership, a qualifying performance problem with their Dryer (*i.e.*, a problem with overheating, burning, or scorching of laundry loads, longer than normal Dryer cycle times, abnormal lint buildup inside the Dryer, sparking of the Dryer's heating element, burned or scorched lint inside the Dryer, or observed smoke or burning odor).  Further, as part of this portion of the Settlement, Electrolux will provide—*for the first time*—training and guidance to authorized service technicians that the drum of the Dryers must be removed for cleaning and that all lint must be cleaned out of the heater pan.  (*Id.* IV.B.7.)[11]

---

[10] Electrolux's engineers also testified that, if consumers regularly followed the cleaning instructions in the Use and Care Guide, this would also reduce the risk of fire.  *See* Wallace Decl., Ex. B at 126 (Mar. 14, 2013 Dep. Tr. of Brian D. Ripley ("If not installed and maintained properly," a clothes dryer may catch on fire); Ex. C at 219 (Mar. 26, 2013 Dep. Tr. of Carl D. King (cleaning the Dryer "takes the fuel out of the dryer" and will "at least reduce the risk of fire[]").

[11] Electrolux's Safety Engineer testified that Electrolux did not provide authorized service technicians with instructions regarding how to clean these Dryers.  Wallace Decl., Ex. C at 213-219 (Mar. 26, 2013 Dep. Tr. of Carl D. King).  As a result, Class Members who had their Dryers serviced and cleaned may not have received the cleaning that these Dryers—specifically—needed (removing lint that accumulates in the heater pan and behind the drum of the Dryers—where it cannot be seen by the average consumer).

Based upon the benefits the Settlement Class Members are expected to receive under this portion of the Settlement, Mr. Bernatowicz determined the maximum utilization value to be $79 million and the projected utilization value of the Safety Program to be $11.9 million.  Wallace Decl., Ex. D.

### 3. Injunctive Relief

**Injunctive Relief and Safety Notice.**  While Electrolux provided cleaning instructions in the past in its Use and Care Guides for the Dryers,[12] the cleaning instructions were never specific to the design of this Dryer and never advised consumers that lint could accumulate unseen behind the drums of the Dryers.[13]  To remedy this problem, Class Counsel negotiated that Electrolux put out specific cleaning instructions and a warning that lint may accumulate behind the drums of these Dryers.  A "Customer Safety Notice" was sent to identifiable Class members from Electrolux's own database, published on the Settlement website, and now appears on Electrolux's own website to inform customers who own the Dryers at issue that: lint can accumulate behind the drums of the Dryers, the Dryers need to be regularly cleaned (including behind the drums of the Dryers), and proper installation, use, and care of the Dryers are important to avoid fires.  (Settlement Agreement ¶ IV.A.)[14]  Class Counsel also realized the importance of such a "safety notice" to Class Members after a survey studied by Class Counsel's expert Carol Pollack-Nelson revealed that many of Electrolux's customers did not review their Dryer's Use and Care Guides (where similar "cleaning" instructions were

---

[12] These instructions were buried in the middle of Electrolux's Use and Care Guides.  The Settlement provides that a separate, independent document will now be available on-line on the Settlement website and on Electrolux's website, providing *specific* instructions related to these Dryers.

[13] *See supra* fn 12.

[14] This instruction appears in the "FAQ" of both Electrolux and Frigidaire's websites in the "Laundry Section" concerning "How often do I need to clean my dryer?"

CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND FOR SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

MASTER FILE NO. SACV12-1644-CAS(VBKx)

located), and because the Use and Care Guide for the Dryers did not contain *specific* instructions to clean behind the drums of the Dryers—where Plaintiffs alleged that lint could accumulate next to the heat source and catch fire.  Wallace Decl. ¶ 33.

This portion of the Settlement provides an important safety benefit of immense value to the Settlement Class Members: they are informed that the Dryers may accumulate lint next to the Dryers' heat sources, and that this lint needs to be removed by an authorized service professional to reduce the risk of fire.  Plaintiffs' experts believe that this portion of the Settlement will have a significant impact on consumer behavior, result in proper cleaning and maintenance of the Dryers, and substantially reduce the risk of fire in the Dryers.  Mr. Bernatowicz estimates that this portion of the Settlement provides a benefit to the Settlement Class in the amount of $15.7 million.  Wallace Decl., Ex. D.

### 4.    Additional Benefits

Beyond the monetary and injunctive relief, and the free program established to address the major contributing defect to Dryer fires, Class Counsel also negotiated for additional benefits for the Class members.  These additional benefits would allow a Class member to replace his or her Dryer with one of the new models which does not contain the alleged defects (or purchase another home product) at a significant discount at any point over the next two years.  (Settlement Agreement IV.C.-D.)  For purposes of Plaintiffs' application for attorneys' fees and costs, Mr. Bernatowicz did not assign a value to this portion of the Settlement, but the benefit to the Class cannot be understated: it allows Class Members to purchase a new dryer—which does not contain the defects alleged in Plaintiffs' complaints—at a significant discount.[15]

---

[15] The vouchers and cash rebates can also be combined with other sales or offers and are freely transferrable (they may be sold on the secondary market or given away).  (Settlement Agreement IV. C.1.d. and C.4.)

**Cash Rebate Program.**  All Settlement Class Members are entitled to a cash rebate to assist in the purchase of a replacement Electrolux-brand or Frigidaire-brand clothes dryer or other home appliance (out of a selection of choices offered by Electrolux), up to a maximum of $350 off the price.

**New Products Program.**  Alternatively, Class members may elect this option.  All Settlement Class members who do not plan to purchase a new home appliance may receive an online code that can be used to purchase new products (such as a vacuum cleaner, air cleaner, or appliance/cleaning accessories) at up to a 20% discount from Electrolux's website: www.electroluxappliances.com.

## IV.    DISCUSSION

### A.    Class Counsel's Lodestar Plus a Modest Multiplier is an Appropriate Approach to Award Attorneys' Fees in this Case

Class counsel expended years of time, effort, and considerable expense overcoming formidable hurdles to bring these claims to a favorable resolution.  As a result, they obtained relief that consumers had never been able to achieve from Electrolux.  Absent these efforts, the Class likely may have not recovered the monetary, injunctive, and other relief provided for in this Settlement.  For these efforts, Class Counsel is seeking their lodestar based on current rates plus a modest multiplier of 1.23—a calculation routinely used in this Circuit to award fees, particularly when claims are brought involving a fee shifting statute.  Such an award will not diminish any of the benefits to the Class as the Parties have agreed to payment of Class Counsel's fee separately and to not pay that fee out of any portion of the recovery to the Class.

In cases, such as this one, where a Settlement was reached with no showing of collusion, and where the attorneys' fees do not reduce any benefits to the Class, the Court should approve Class Counsel's application for attorneys' fees.  As the record here reflects, all of the attorneys appointed Class Counsel—in addition to

local counsel in each of the consolidated actions—have prosecuted this action, with no guarantee of recovering *anything*, and have advanced all costs without reimbursement.  Wallace Decl. ¶ 5.  To date, Class Counsel has expended over 12,000 hours in professional services, and incurred over $627,000.00 in unreimbursed out-of-pocket costs.  *Id.* ¶¶ 46-47.  As noted, Class Counsel achieved valuable, real, and immediate relief for the Settlement Class—the benefits being made available to the Class (excluding the rebate program) have been independently valued to have a full utilization value of over $155 million and a projected utilization value of over $35 million.  *Id.*, Ex. D.  The excellent monetary and safety-related injunctive relief achieved more than justifies Class Counsel's fee request.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (procurement of monetary and injunctive relief).  Further, this result was achieved because of the efforts of dedicated named Plaintiffs, who understood their roles as class representatives and performed their duties as fiduciaries of the Class.  Class Counsel thus respectfully requests that the Court award them $8,000,000.00 in full reimbursement for costs and attorneys' fees, and a modest $3,000.00 service award for each named Plaintiff.

**1.     The Lodestar method is appropriate given the fee-shifting statues involved in this case.**

In light of the risks and delays involved in contingent class action litigation, California courts and courts in this Circuit "recognize two methods for calculating attorneys' fees in civil class actions: The lodestar plus multiplier method and the percentage of the recovery method."  *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254, 110 Cal. Rptr. 2d 145 (2001); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d at 1050; *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, **9-10 (N.D. Cal. July 11, 2014); *Lealao v.*

*Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 49-50, 97 Cal. Rptr. 2d 797 (2000).[16]  In cases where "fee shifting" is involved, such as this one—where the obligation to pay attorneys' fees is statutorily or otherwise transferred from the plaintiff or class to the defendant and is paid separately from the class's recovery—the lodestar-multiplier method is an appropriate method for calculating the attorneys' fees.  *See In re Bluetooth Headset Prods. Liab. Litig*, 654 F.3d 935, 941 (9th Cir. 2011); *In re Ferrero Litig.*, No. 11-cv-00205-KSC, 2012 U.S. Dist. LEXIS 94900, *10 (S.D. Cal. July 9, 2012), *aff'd*, No. 12-56469, 2014 U.S. App. LEXIS 13573 (9th Cir. July 16, 2014) (in a class action settlement providing for injunctive relief, "[t]he Court concludes that Plaintiffs are prevailing parties as the term is used in the fee-shifting provision of the Consumer Legal Remedies Act, and Class Counsel are thus entitled to a reasonable fee and expense award for their work.").  *See also Seebrook v. The Children's Place Retail Stores, Inc.*, No. C 11-837 CW, 2013 U.S. Dist. LEXIS 171864 (N.D. Cal. Dec. 4, 2013) (attorneys' fees determined based upon lodestar method because the case sought the "enforcement of an important right affecting the public interest.").

This is such a case.  As described herein, *supra* III., Plaintiffs' claims were brought under several fee-shifting statutes: consumer protection laws (Cal. Civ. Code. § 1750, *et seq.*; Ark. Code Ann § 4-88-107, *et seq.*; N.Y. G.B.L. § 349, *et seq.*) and the Magnuson-Moss Warranty Improvement Act for breaches of implied and express warranties (15 U.S.C. § 2301, *et seq.*).  Each of these statutes provides for attorneys' fees to successful plaintiffs.  *See* 15 U.S.C. § 2310(d)(2) (providing for "as part of the judgment a sum equal to the aggregate amount of costs and

---

[16] In addition to Ninth Circuit law, this Court may also look to California law to determine the issue of attorneys' fees. *See Gezalyan v. BMW of North America, LLC*, 697 F. Supp. 2d. 1168, 1170 (C.D. Cal. 2010) ("In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees.").

expenses (including attorneys' fees based on actual time expended. . ."); Cal. Civ. Code. § 1780(e) ("The court shall award costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."); Ark. Code Ann § 4-88-113 ("Any person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees"); N.Y. G.B.L. § 349(h) ("The court may award reasonable attorney's fees to a prevailing plaintiff").

Further, as here, where the attorneys' fees are based upon significant injunctive relief providing a safety benefit and relief like a repair or monetary relief available to remedy a safety defect, the lodestar method is appropriate for determining Class Counsel's fees. *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 94900, **10-11 (injunctive relief); *In re Bluetooth*, 654 F.3d at 941 ("The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes. . . where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation."); *In re HP Power Plug & Graphic Card Litig.*, No. C-06-02254 RMW, 2008 U.S. Dist. LEXIS 111427, **7-8 (N.D. Cal. July 8, 2008) ("The main value of the settlement is the provision of a repair option. . . [the court] finds using 'a lodestar with a multiplier method' to be appropriate for determining attorney's fees for plaintiffs' counsel in this case."). The settlement offers important injunctive relief in the form of safety notices mailed to owners warning them of the specific fire risks of the Dryers, training for Electrolux personnel to ensure that the Dryers are cleaned to prevent the problem, and a safety program available to Settlement Class Members (a $100 dryer cleaning by authorized service personnel)—free of charge—to prevent dryer fires from starting in these Dryers. These remedies are designed to prevent consumer deaths, injuries, and the

enormous property damage that has occurred with Dryer fires.  Because of the large safety benefit to the class, calculating attorneys' fees using the lodestar method is appropriate in this case.[17]

### 2.    Class Counsel's fees are reasonable.

To determine reasonable attorneys' fees in this case, the Court must first calculate the "lodestar" amount by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate.  *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  There is a strong presumption that the lodestar amount is reasonable.  *Fischer*, 214 F.3d at 1119 n.4.  The Court may then adjust the lodestar amount via a multiplier based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), that are not subsumed under the lodestar calculation.  *Crane-McNab v. County of Merced*, 773 F. Supp. 2d 861, 882-83 (E.D. Cal. 2011).

### a.    Class Counsel's hourly rates are consistent with prevailing market rates in the relevant community.

As shown by the exhibits attached to the Declaration of Edward A. Wallace, Class Counsel's fees are reasonable in this case.  First, the attorneys' hourly rates are consistent with the "prevailing market rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984).  *See also United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (". . . rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate.").[18]  *See also Reed*

---

[17] As a cross-check for the lodestar calculation, Plaintiffs also submit a valuation of the settlement benefits, to show the Court the lodestar approach is reasonable.  *See infra*, IV.B.

[18] Additionally, the Laffey Matrix, available at www.laffeymatrix.com, provides that the hourly rates charged by the attorneys in this case are reasonable.  Federal courts in California have determined that checking the hourly rate of an attorney

17

CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND FOR SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

MASTER FILE NO. SACV12-1644-CAS(VBKx)

*v. 1-800 Contacts, Inc.*, No. 12-cv-02359 JM (BGS), 2014 U.S. Dist. LEXIS 255 (S.D. Cal. Jan. 2, 2014) (hourly rate of $400 for associates and $650 for partners reasonable); *Seebrook* , 2013 U.S. Dist. LEXIS 171864 (N.D. Cal. Dec. 4, 2013) (hourly rate of $650.00 per hour); *Foos v. Ann, Inc.*, No. 11cv2794, 2013 U.S. Dist. LEXIS 136918 (S.D. Cal. Sept. 24, 2013) (hourly rate of $585.00, $425.00, and $325.00 per hour); *Hartless v. Clorox Co*., 273 F.R.D. 630 (S.D. Cal. 2011) (court approved average hourly rates that ranged from $575 to $795 per hour); *Morey v. Louis Vuitton N.A., Inc.*, NO. 11cv1517 WQH (BLM), 2014 U.S. Dist. LEXIS 3331 (S.D. Cal. Jan. 10, 2014) (hourly rates ranging from $500 for associates and $675 for partners approved).

> **b.      A modest lodestar multiplier of 1.23 is justified and is below multipliers approved by courts in this Circuit**.

Class Counsel's request for a modest multiplier of 1.23 is more than reasonable for a case of this size and scope.  "In a lodestar analysis, the court multiplies the number of hours reasonably expended by counsel on the matter by a reasonable hourly rate and adjusts the result upward or downward depending on a variety of factors."  *In re: Toys "R" Us – Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) (*citing State of Florida v. Dunne*, 915 F.2d 542, 545 n. 3 (9th Cir. 1990)).   These "reasonableness" factors may include "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  *Hanlon v. Chrysler Corp.*, 150 F.3d. 1011, 1029 (9th Cir. 1998) (citing *Kerr*, 526 F.2d at 70).[19]

---

against the Laffey Matrix "lends further credibility" to an attorney's hourly rate. *Reed v. 1-800-Contacts, Inc.*, No. 12-cv-02359 JM (BGS), 2014 U.S. Dist. LEXIS 255, *25 (S.D. Cal. Jan 2, 2014).

[19] Specifically, courts in this Circuit evaluate the following factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill required to perform the legal service properly, (4) the preclusion of other

Applying these factors to this case demonstrates that a modest lodestar multiplier is reasonable.  Here, as explained above, Class Counsel expended over 12,000 hours of work on this case dealing with complex discovery matters, motion practice, and sophisticated expert witness reports, and will incur significantly more time in monitoring the Settlement over the next eight years.  For example:

i   This case consumed thousands of hours of attorney resources from firms experienced in class action litigation and required a coordinated effort of attorneys across the Country;

i   This case involved sophisticated engineering concepts, state-of-the-art testing, and detailed reports from skilled and well-respected expert witnesses to get to Settlement;

i   Class counsel will need to continue to monitor this Settlement *for the next eight years*—until December 31, 2022—as Class members will be able to submit claims for future Dryer fires until that time;

i   Because the Settlement telephone hotline is automated, Class Counsel has already made itself available to respond to questions from Settlement Class members;

i   Class Counsel will continue to respond to questions from Settlement Class members throughout the claims period—until December 15, 2014;

---

employment by the attorney due to acceptance of the case, (5) the customary fee, (6) time limitations imposed by the client or the circumstances, (7) the amount involved and the results obtained, (8) the experience, reputation, and ability of the attorneys, (9) the "undesirability" of the case, (10) the nature and length of the professional relationship with the client, and (11) awards in similar cases.  *Crane-McNab*, 773 F. Supp. 2d at 882-83 (noting *Kerr* factors still followed by the courts).

i   Class Counsel will continue to respond to Class member inquiries for
the next two years, as they determine whether or not to take advantage
of the cash rebate program established through this Settlement; and

i   Class Counsel will continue to respond to Class member inquiries and
assist Class members in submitting claims related to any Dryer fires
until December 31, 2022.

Wallace Decl. ¶¶ 43-45, and attached exhibits.   Thus, although Class Counsel
seeks a multiplier of their fees at 1.23 now, this multiplier will likely decrease
throughout the claims period.

Further, the relief obtained for the Class—compared to the risk of non-
payment had the case continued and the level of risk in further litigation at the
class certification stage for a nationwide class and subsequent appeals—
demonstrates that the results achieved for the Class are significant, and have a high
value.  *See, e.g., Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 585 (9th Cir.
2012) ("district court erred because it erroneously concluded that California law
could be applied to the entire nationwide class"); *Landen v. Electrolux Home
Products, Inc.*, No. CV 13-1033 DSF (SHx), 2014 U.S. Dist. LEXIS 90886, *5
(C.D. Cal. July 1, 2014) (class certification denied in case against Electrolux
involving design defect in washing machines).  *See also, supra* III.B. (describing
value of Settlement benefits to the Class).

Courts in this Circuit have routinely applied multipliers in the range
requested by Class Counsel for similar benefits.  *See Vizcaino*, 290 F.3d at 1049-
50 (surveying class actions nationwide and finding the majority of lodestar
multipliers fell within the 1.5-3.0 range); *Jefferson v. H&M Hennes & Mauritz,
L.P.*, No. CV 11-7683 CAS (JCGx), 2013 U.S. Dist. LEXIS 2875 (C.D. Cal. Jan.
7, 2013) (Snyder, J.) (citing cases for the proposition that a range of multipliers—
between 2 and 4 "or even higher" are regularly approved); *Reed*, 2014 U.S. Dist.

LEXIS 255, *27 (multiplier of 2.9); *In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liability Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, *309 (C.D. Cal. July 24, 2013) (multiplier of 2.87); *In re Easysaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1057 (S.D. Cal. Feb. 4, 2013) (multiplier of 2.1).  And courts have also approved multipliers for Class Counsel's work in the past.  *See*, *e.g.*, *Merkner v. AK Steel Corp.*, No. 09-CV-423, 2011 U.S. Dist. LEXIS 157375, *20 (S.D. Ohio Oct. 1, 2011) (Gregory Coleman as co-lead counsel; lodestar multiplier of 5.3 applied); *New Eng. Carpenters Health Benefits Fund v. First Databank*, No. 05-11148-PBS, 2009 U.S. Dist. LEXIS 68419, *10 (D. Mass. Aug. 3, 2009) (where Wexler Wallace LLP served as counsel, multiplier of 8.3 awarded).  Especially in light of the fact that Class Counsel's work in this Settlement is far from over—a modest multiplier such as the one requested is more than reasonable.

## B.    A Cross-Check Demonstrates that Class Counsel's Fee Award is Reasonable

An independent valuation of the Dryer cleaning, fire compensation, and injunctive relief benefits provided under this Settlement shows that it has a full utilization value of over $155 million and a projected utilization value of over $35 million.[20]  Wallace Decl., Ex. D.  Provided that the Court grants final approval to the Settlement, and absent any appeal of final approval, these benefits will begin to be made available to Settlement Class Members before the end of the year. (Settlement Agreement I.K., VIII.C.)  Although Class Counsel are entitled to reasonable attorneys' fees based upon a lodestar calculation, a percentage cross-check based off of a valuation of the monetary and injunctive relief and free service program to address safety issues in the Dryers available to the Settlement

---

[20] Excluding a valuation for the separate cash rebate and voucher programs. Wallace Decl., Ex. D.

Class Members confirms that the requested fee amount is more than reasonable. Again, to receive these Settlement benefits, *Class Members do not need to spend any of their own money*.

In applying the cross-check, the Ninth Circuit has determined that 25% of the recovery is a "benchmark" award for class action cases, and recognized that percentage fees in the range of 20-30% are generally appropriate. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1029 (9th Cir. 1998); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Comparing the value of the Settlement to Class Counsel's requested fee award,[21] the requested attorneys' fees represent less than 5% of the full utilization value of the Settlement and 21% of its projected utilization value.[22]  This cross-check shows the requested fees are reasonable.  *See Iorio v. Allianz Life Ins. Co. of N. Am., Inc.*, No. 05-cv-0633-JLS (CAB), 2011 U.S. Dist. LEXIS 21824, **36-37 (S.D. Cal. Mar. 3, 2011) (attorneys' fees represented 16.48% of the settlement's "full utilization value" (*i.e.*, if every class member took advantage of the settlement), and 29.95% of the settlement's "projected utilization value" midpoint (*i.e.*, the midpoint range of the projected value of benefits which will be received by the class)); *In re Toys "R" Us*, 295 F.R.D. at 457 (determining attorneys' fees to be worth approximately 30% to potential class recovery at particular claims rate: "While it is difficult to predict Toys' actual settlement liability, because it has committed to distribute vouchers worth potentially millions to the class, and because attorneys' fees will not reduce the settlement amount available to class

---

[21] This percentage is derived by subtracting expenses from the total $8,000,000.00 requested.  *See* Wallace Decl., Ex. E.

[22] Again, however, the payment of these fees will not result in any reduction to the Class's Settlement benefits.   (Settlement Agreement X.E. ("The payment of attorneys' fees and costs and Incentive Awards will be paid by Electrolux over and above the benefits provided in Section IV of this Agreement and will not reduce the amount of any benefits paid to the Settlement Class Members.").)

members, the court concludes that the fee award to which the parties agreed is not so disproportionate to the class's recovery that it suggests collusion.").

Finally, because the Settlement valuation and attorneys' fee application is based upon the monetary and injunctive relief available to the Settlement Class, the Court is thus able to determine an attorneys' fee award at final approval, without waiting until claims are received and processed (some claims which may be submitted as late as December 2022). *See Owen v. Fresh, Inc., et al.*, No. 12-cv-7971-SVW-JEM (C.D. Cal. Nov. 8, 2013 Order) (attached to Wallace Decl. as Ex. A) (attorneys' fees approved: "Plaintiff's counsel does not seek compensation based on the value of the coupon relief in this case, but rather seeks fees using a lodestar analysis based on the provision of equitable relief in the class settlement."); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 94900, *10 (determination of attorneys' fees based upon valuation of injunctive relief, which could be determined at time of approval). *Cf. In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1184-85 (9th Cir. 2013) (district court required to wait to determine redemption rate for coupon-based settlement, noting that "CAFA only permits district courts to award lodestar fees when those fees are "not based on the value of the coupons.'").

## C.   The Requested Service Awards are Reasonable

Class Counsel also respectfully requests a modest service award to compensate the named Plaintiffs for their diligence and effort in representing the Settlement Class in this case.  All of the named Plaintiffs participated in day-long depositions, made their dryers available for inspection, participated in day-long inspections of their homes, answered discovery propounded by Electrolux—including interrogatories and document requests, and remained well-informed about the status of the case (including asking questions about the Settlement benefits available to the Class to ensure its fairness in their fiduciary capacity).

Wallace Decl. ¶¶ 49-50.  The named Plaintiffs more than adequately performed their roles, and a modest $3,000 service award should be approved for each.  *See Chaikin v. Lululemon USA, Inc.*, No. 12-CV-02481-GPC-MDD, 2014 U.S. Dist. LEXIS 35258, **17-18 (S.D. Cal. Mar. 14, 2014) ($3,000 service award); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008) ("Courts have generally found that $5,000 incentive payments are reasonable.").

# V.   CONCLUSION

Class Counsel's request for an award of attorneys' fees and costs in the amount of $8,000,000.00 is reasonable and justified considering the value of the Settlement achieved for members of the Class.  Further, an service award of $3,000.00 to each named Plaintiff is fair and reasonable.  Accordingly, Class Counsel respectfully requests that this Court award the requested fees, costs, and service award.

Date:          July 22, 2014

Respectfully submitted by:  /s/  Edward A. Wallace

**WEXLER  WALLACE LLP**
EDWARD A. WALLACE (*pro hac vice*)
AMY E. KELLER (*pro hac vice*)
DAWN M. GOULET (*pro hac vice*)
eaw@wexlerwallace.com
aek@wexlerwallace.com
dmg@wexlerwallace.com
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KREINDLER & KREINDLER LLP**
GRETCHEN M. NELSON
gnelsen@kreindler.com
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

**HANSEN REYNOLDS DICKINSON CRUEGER LLC**
ERIN DICKINSON (*pro hac vice*)
CHARLES CRUEGER (*pro hac vice*)
edickinson@hrdclaw.com
ccrueger@hrdclaw.com
316 North Milwaukee Street, Suite 200
Milwaukee, Wisconsin 53202
Telephone: (414) 455-7676
Facsimile: (414) 273-8476

**GREG COLEMAN LAW PC**
GREGORY F. COLEMAN (*pro hac vice*)
greg@gregcolemanlaw.com
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, Tennessee 37902
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

*Attorneys for the Plaintiffs and the Settlement Class*

25

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

1

2          I hereby certify that on July 22, 2014, I electronically filed the foregoing

3   with the Clerk of Court using the CM/ECF system which will send notification of

4   such filing to all counsel of record.

5                                          /s/ Edward A. Wallace
                                           Edward A. Wallace
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND FOR
SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
MASTER FILE NO. SACV12-1644-CAS(VBKx)