1  Joseph Darrell Palmer (SBN 125147)
   Law Offices of Darrell Palmer
2  2244 Faraday Avenue, Suite 121
   Carlsbad, CA 92008
3  Telephone: (858) 215-4064
   Facsimile: (866) 583-8115
4  Email:  darrell.palmer@palmerlegalteam.com

```
            FILED
   CLERK, U.S. DISTRICT COURT

        AUG - 1 2014

   CENTRAL DISTRICT OF CALIFORNIA
   BY              ℓ       DEPUTY
```

5

6  Attorney for Objector Patrick S. Sweeney

7

8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

11 SHAWN ROBERTS, et al.;                  )  Master File No. 12-CV-1644-CAS (VBKx)
                                           )
12            Plaintiffs,                  )  CLASS ACTION
                                           )
13                                         )
   v.                                      )  **OBJECTION OF PATRICK S.**
14                                         )  **SWEENEY TO PROPOSED**
                                           )  **SETTLEMENT AND NOTICE OF**
15 ELECTROLUX HOME PRODUCTS,               )  **INTENT TO APPEAR**
   INC.,                                   )
16                                         )
                                           )
17            Defendants.                  )
                                           )  Date:  August 18, 2014
18 _____         )  Time:  10:00 a.m.
                                           )  Place:  Courtroom 5, 2nd Floor
19 This Document Relates To All Actions.   )  Judge:  Hon. Christina A. Snyder
                                           )
20

21

22

23

24

25

26

27

28

                              0

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................... 1

    A. Summary of the Action and the Settlement ...................................... 1
    B. The Standard for Approving a Proposed Class Action Settlement .......... 2

II.   ARGUMENT ................................................................... 3

    A. The Settlement Consideration is Illusory ....................................... 3

    1. The rebates or online vouchers are coupons .................................... 3
    2. The cleaning service is too little too late ....................................... 4
    3. The reimbursement for fire damage is of little value ......................... 5

    B. There is no commonality ......................................................... 5

    C. Notice is grossly inadequate ..................................................... 5

    D. The Safety Notice Procedures are Inadequate and Dangerous ............... 7

    E. The Fee Request is Unreasonable ............................................... 9

    1. Class Counsel's Lodestar Information is Insufficient ......................... 11
    2. Bernatowicz' valuation is Speculative and Excessive ....................... 12
    3. This is a coupon settlement and value is based on redemption.................. 13

III.  JOINDER IN OTHER OBJECTIONS .............................................. 14

IV.   CONCLUSIONS .................................................................. 14

i

# TABLE OF AUTHORITIES

## CASES

*Dennis v. Kellogg Co.*
697 F.3d 858, 862-63 (9th Cir. 2012) ............................................................. 10

*Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corp.*
823 F.2d 20, 23 (2d Cir. 1987) .................................................................. 2

*Hecht v. United Collection Bureau*
691 F.3d 218, 222 (2d Cir. 2012) ............................................................. 5

*Humphrey v. Electrolux*
4:12-cv-00157 (E.D. Ark.) ....................................................................... 8

*In re Bluetooth Headset Prod. Liab. Litig.*
654 F.3d 935, 946-47 (9th Cir.2011) ........................................................ 2

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*
55 F.3d 768 (3d Cir. 1995) ....................................................................... 10

*In re HP Inkjet Printer Litig.*
716 F.3d 1173, 1184 (9th Cir. 2013) ................................................... 10, 14

*In re Warner Communications Sec. Litig.*
798 F.2d 35, 37 (2d Cir.1986) ................................................................. 2

*Johnson v. Comerica*
83 F.3d 241 (8th Cir. 1996) .................................................................... 10

*Mirfashi v. Fleet Mortgage Corp.*
356 F.3d 781, 785 (7th Cir. 2004) ........................................................... 2

*Mullane v. Cent. Hanover Bank*
339 U.S. 306, 315 (1950) ......................................................................... 5

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797, 811-12 & n.3 (1985) .......................................................... 5

ii

*Silber v. Mahon*
957 F.2d 697, 701 (9th Cir. 1992) ................................................................ 2

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*
463 F.3d 646, 654 (7th Cir. 2006) ........................................................ 3, 13

## STATUTES AND OTHER AUTHORITY

28 U.S.C. § 1712   .................................................................... 3, 10, 14

28 U.S.C. §1712(a) ..................................................................... 10, 14

28 U.S.C. §1712(a)-(c) ...................................................................... 14

28 U.S.C. §1712(e) ......................................................................... 14

Fed. R. Civ. Proc. 23(e)(2) ............................................................... 2


A Market-Based Approach to Coupon Settlements in Antitrust
and Consumer Class Action Litigation
Christopher R. Leslie, 49 UCLA L. Rev. 991, 1049 (2002) ............................. 14

Case No. 12-CV-1644-CAS (VBKx)
OBJECTION OF PATRICK SWEENEY TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

# I.  INTRODUCTION

Patrick S. Sweeney's address is 2935 South Fish Hatchery Road Unit #7, Madison, WI 53711, telephone: 608-695-3651.  Sweeney is the owner of Frigidaire Dryer model number GEF331AS1, with serial number XD22701555 as verified in his declaration.

## A.    Summary of the Action and the Settlement

Plaintiffs allege Electrolux manufactured and sold dryers containing defects causing the dryers to catch on fire, and that they have known about these dangers since the mid 1990's but have continued to manufacture and sell these dryers.  Plaintiffs allege that Electrolux "unlawfully profited" from the sale of the dryers,  breached warranties, was negligent, and violated various consumer protection statutes.  The company sold the defective dryers – described as ball-hitch freestanding clothes dryer –under various brand names, including Frigidaire, White Westinghouse, Kelvinator, Gibson, Tappan, Crosley or Kenmore.   Purchasers of the dryers between January 1, 2002 and December 31, 2011 (and current owners) are Class Members.  Class members who experience a fire caused by the dryers are divided into two subclasses, (1) those whose dryers caught on fire in the past, and (2) those who will experience a dryer fire in the future (until the cut-off date to make a claim under the terms ).

Settlement consideration:

1. First, a discount of either 10% or 20% ($350 maximum) on the purchase of a new Frigidaire or Electrolux-brand appliance or product;

2. One hour from Electrolux authorized service technician for cleaning dryer with specific conditions which occurred during first five years after purchase. Eligible performance problems include overheating, burning, or scorching of laundry loads, longer than normal dryer cycle times, abnormal lint buildup, sparking of the dryer's heating element, and burning of lint inside the dryer;

3. Class members whose dryers catch on fire and who can document expenses related to the fire, are eligible for reimbursement of up to $1,300 for "out-of-

1

1  pocket expenses," typically the expense of replacing the dryer.  Class members
2  who cannot document their fire-related expenses are eligible to receive $300
3  for fire related dryer damage;
4  4. Electrolux will send safety notices to identifiable Class Members informing
5  them that lint can build up inside the Dryers and the Dryers should be cleaned
6  by an authorized service professional at least every 18 months.

7  **B.    The Standard for Approving a Proposed Class Action Settlement**

8  In reviewing a proposed settlement, the district court has a duty to ensure the
9  settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2)  Appellate
10 courts accord considerable deference to the district court's "knowledge of the litigants
11 and of the strengths and weaknesses of their contentions". . . . and recognize that the
12 district court "is in the best position to evaluate whether the settlement constitutes a
13 reasonable compromise." *Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corp.*, 823
14 F.2d 20, 23 (2d Cir. 1987).  "Because class actions are rife with potential conflicts of
15 interest between class counsel and Class Members, district judges presiding over such
16 actions are expected to give careful scrutiny to the terms of proposed settlements in
17 order to make sure that class counsel are behaving as honest fiduciaries for the class as a
18 whole." *Mirfashi v. Fleet Mortgage Corp.* 356 F.3d 781, 785 (7th Cir. 2004).

19 The court must be protective of unnamed Class Members.  "In approving a
20 proposed class action settlement, the district court has a fiduciary responsibility to
21 ensure that 'the settlement is fair and not a product of collusion, and that the Class
22 Members' interests were represented adequately.'" *Grant, citing In re Warner*
23 *Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir.1986).  See also *Silber v. Mahon*,
24 957 F.2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a
25 duty to protect the interests of absent Class Members.")  Settlements involving class
26 certification for settlement only require additional scrutiny. *See, e.g. In re Bluetooth*
27 *Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir.2011).
28

2

# II. ARGUMENT

**A.     The Settlement Relief is Illusory**

### 1. *The rebates or online vouchers are coupons*

Although labeled rebates and vouchers, this a coupon settlement.  The settlement provides for a rebate of up to $350 on the purchase of a new Frigidaire or Electrolux brand clothes dryer.   Although the rebates can be used to make purchases from any retailer, information as to the current prices for eligible products (which can be found on the Electrolux website, available at *http://www.electroluxappliances.com/Washers-Dryers/Dryers/* visited on July 27, 2014), ranged from $999.00 to $1,649.00.  The 20% rebate based on a purchase price of $1,649.00 would be $329.80; the purchase price after the rebate would still be $1,319.00.  Rebates can be used besides other promotional offers or discounts, so consumers could qualify for a higher discount off the MSRP, but their refund would be reduced accordingly.  For a Electrolux Dryer priced at $999.00 the discount would be $199.80.  For purchase of Frigidaire appliances the actual value of the rebate is even less.  Dryers on the Frigidaire website, available at *http://www.frigidaire.com/Washers-Dryers/Dryers/* (visited on July 27, 2014), range in price from $1,149.00 to $699.00.  The rebate offered for the purchase of Frigidaire Dryers is only 10%, ranging from approximately $114.90 to $69.90.

For those not planning to purchase a new clothes dryer or home appliance in the next two years, there is an option to obtain a 10%-20% discount (again for maximum of $350 off the published sale price) on a future purchase through Electrolux's direct-to-consumer website.  These class members will need to make their purchase online from *www.ElectroluxAppliances.com* using an online code.

Although these coupons are "stackable", meaning they can be combined with other discounts, they cannot be valued at face value.  The Class Action Fairness Act, 28 U.S.C. § 1712 was born of the recognition that "[c]ompensation in kind is worth less than cash of the same nominal value." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006).  Coupons are problematic when class members must

3

spend their own money to realize any benefit from the settlement. Here class members must spend hundreds of dollars to take advantage of the rebates. Burned by the purchase of defendant's defective dryers, a sensible consumer probably will not return to the Electrolux or Frigidaire brand. These coupons are an Electrolux marketing device. Coupon redemption will be low or nonexistent.

### 2. *The cleaning service is too little too late*

Electrolux has offered a one hour cleaning service for dryers with overheating, burning, or scorching of laundry loads, longer than normal dryer cycle times, abnormal lint buildup behind the rear of the clothes drum inside their dryers, sparking of an electric dryer model's heating element, burned or scorched lint inside the dryer, or even those who saw smoke or smelled a burning odor coming from their Dryers. The parties admit one hour of service time will usually not cover the full cleaning cost. Besides, if someone has already noticed these dangerous symptoms/conditions – wouldn't they have already repaired or replaced it?

Electrolux must disclose its contract rates with the technicians or the court cannot value this part of the settlement. If the consumer rate is $100/hour but Electrolux only pays $60/hour, the value calculation has to use $60.

Based on the allegations, Electrolux should issue a product recall and repair or replace these dryers. Dangerous products should be repaired or replaced. Cleaning is a temporary fix; according to the agreed warning notice, consumers must pay a technician every 18 months for a cleaning. Consumers unable to purchase a new product or afford appliance technicians are left vulnerable to a dangerous condition.

This offer is only available for Dryers less than 10 years old as of March 9, 2012, that experienced a qualifying performance problem during the first five years of purchase. As if any class member will remember a smoky smell in 2005 (or any other time) If a Dryer was six years old when it smolders – no relief except a coupon. Electrolux is hoping to take advantage of repeat business sooner than normal, as dryers are expected to have a normal product life of approximately thirteen years. The

4

1    inadequacy of this relief is highlighted: "Electrolux will not pay for the cost of repairs or
2    parts, but you will not be required to make any repairs or replace any parts in your dryer,
3    either."  You're on your own if you keep using a dryer with a known fire hazard.

4    ### 3. *The reimbursement for fire damage is of little value*

5    For those Settlement Class Members who experience a Dryer fire in the future
6    (but within the first 10 years after purchase), Electrolux will reimburse them for out-of-
7    pocket expenses up to the lesser of the Dryer's purchase price or $1,300.  Given the
8    limitations on these funds, this will cover partial replacement costs only.

9    ## B.    There is no Commonality

10   Class certification may not be appropriate; there is no such thing as a typical home
11   fire.  The circumstances including comparative fault or contributory negligence issues
12   are complex, and have no commonality.  Class Members are being compensated for
13   damage to other property for this Settlement, ranging from $25,000 for Plaintiff Shannon
14   McCarthy to 1239.65 for Plaintiff Michelle McGowan, underscores the inadequacy of
15   the class action for handling these claims.  This settlement similarly fails for a lack of
16   adequate representation; class counsel and the class representatives are putting their own
17   interests in front of those of class members.

18   ## C.    Notice is grossly inadequate

19   Absent class members have a due process right to notice and an opportunity to opt
20   out of class litigation when the action is predominantly for money damages. *Phillips*
21   *Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 & n.3 (1985); *Hecht v. United Collection*
22   *Bureau*, 691 F.3d 218, 222 (2d Cir. 2012).  To be constitutionally compliant, notice must
23   be the "best practicable, reasonably calculated, under all the circumstances, to apprise
24   interested parties of the pendency of the action and afford them an opportunity to present
25   their objections." *Hecht*, 691 F.3d at 224 (*quoting Shutts*, 472 U.S. at 812). This must be
26   more than a "mere gesture": "The means employed must be such as one desirous of
27   actually informing the absentee might reasonably adopt to accomplish it." *Id.* (*quoting*
28   *Mullane v. Cent. Hanover Bank*, 339 U.S. 306, 315 (1950)).

5

1       The one page notice on the settlement website is wholly inadequate.  A separate

2 twelve page FAQ Form provides the information typically provided in a long form

3 notice, but is inexplicably merely labeled FAQ Form, rather than Notice or Long Form

4 Notice.  A typical consumer will not recognize the FAQ Form as the detailed notice.

5 This disguised notice and website format is unacceptable.  It is different than every other

6 settlement website.  The FAQ Form (Spanish) would probably be more helpful if it were

7 properly labeled in Spanish, Preguntas más frecuentes.

8       A settlement website that does not provide sufficient information to enable class

9 members to evaluate the settlement is not the "best practicable".  The settlement website

10 includes the class notice and answers to frequently asked questions, and the claim form.

11 On the page identified by the label "Court Documents", class counsel have provided:

- Settlement Agreement
- Preliminary Approval Order
- Class Counsel's Application for Attorneys' Fees and Expenses and for Service Awards; Memorandum of Points and Authorities in Support Thereof

17       Conspicuously absent, however, are the operative complaint and Class Counsel's

18 motion for final approval.  *In re Mercury Interactive Corp. Securities Litigation,* 618

19 F.3d 988 (9th Cir. 2010):

> The Advisory Committee Notes to the 2003 amendments to Rule 23(h) further support this reading of the rule. They elaborate that "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Fed. R. Civ. P. 23, 2003 Advisory Committee Notes, ¶ 68. The Advisory Committee Notes further contemplate that, in appropriate cases, the court will permit an "objector discovery relevant to the objections." Id. ¶ 69. Clearly, the rule's drafters envisioned a process much more thorough than what occurred in this case.
> Commentators also agree with this logical interpretation of the rule. For example, Moore's Federal Practice counsels that "[a]ny objection deadline set by the court should provide the eligible parties with an adequate

6

opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request." 5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009). Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.

*Id* at 994. The fee motion filing did not give the class sufficient time to review the fee motion. And the final approval motion was not filed before the objection deadline. Central District local rule 6-1 require motions be filed 28 days before the hearing date. It was error to set the final approval filing date on August 8. (Doc 150 at 9) *See Mercury* FN2 at 995. By failing to publish the Complaint or the Motion for Final Approval on the settlement website, Class Counsel have prejudiced their clients, making it extremely difficult for class members to understand the claims they may be giving up in choosing not to opt-out of the settlement.

**D.    The Safety Notice Procedures are Inadequate and Dangerous**

Review of the Consolidated Second Amended Class Action Complaint suggests that certain features not just inadequate, but are dangerous.  The Settlement merely perpetuates the Company's pattern of concealing the seriousness of the defects found in its dryers.  The Safety Notice provided for under the Settlement advises Class Members to "At least every 18 months have an authorized service technician clean inside the dryer cabinet, especially between the drum and cabinet, the lint screen housing, and exhaust duct, where lint can build up.  An excessive amount of lint buildup in these areas could cause inefficient drying and possible fire."  According to information found , however, cleaning the units at 18 month intervals is ineffectual, and this information merely repeats the deceptive and inadequate warnings Electrolux in its earlier product safety warnings.  Para. 103 alleges:

7

1
2
3
4
5
6
7

103. For example, Electrolux inserted a statement in its user guides that 'Every 18 months an authorized servicer should clean the dryer cabinet interior and exhaust duct.' Electrolux has been unable in prior depositions to provide any engineering basis for this statement or any explanation for why it inserted this statement in its user guide. Moreover, warranty data for Electrolux dryers showing that 80% of the fire warranty claims related to lint occurred within the first 18 months of use, demonstrate how having the Dryer serviced every 18 months does not eliminate or materially reduce the safety risks or remedy the Defects.

8
9
10
11
12
13
14
15
16
17
18

The Complaint points out that Electrolux relied on safety warnings of this sort to avoid liability in some lawsuits following dryer fires. According to the Complaint, the Company relied on "this baseless instruction to argue that it had no liability for the Defects, and asked a court to dismiss a plaintiff's complaint, because '[p]laintiff's allegation shows, at most, that she failed to heed the warnings and instructions in her Use & Care Guide' to have the Dryer serviced every 18 months. *Humphrey v. Electrolux*, 4:12-cv-00157 (E.D. Ark.) (Dkt. No. 17 at 8 n.3)." Electrolux made this argument even though it knew, or at the least should have known, that the 18 month period has no engineering basis and is nothing more than part of the company's strategy to conceal the Defects from consumers, shift the blame, and avoid liability for damages caused by its defective Dryers." Complaint, para. 104.

19
20
21
22
23
24
25
26
27

The information in these safety warnings is inadequate and deceptive and the settlement perpetuates this pattern. It allows the Company to limit vast potential liabilities, while refusing to retrofit or repair the defective products. Offering one cleaning is a wholly inadequate remedy, as the evidence shows many of the fires occur when the Dryers are less than 18 months old. The safety notice further implies that consumers can prevent the fires through cleaning, although the Complaint alleges that the consumers cannot prevent the fires. The Complaint shows that Electrolux' design, including its improper use of flammable plastics, create fire risks that cannot be eliminated or even significantly reduced through cleaning. The Complaint alleges:

28

8

76. The Electrolux ball hitch Dryers are also defective because Electrolux's design does not contain a fire within the dryer cabinet, but instead will aid in spreading any fire outside the Dryers.

77. The Electrolux design uses combustible plastic components in the air duct and blower housing that provide an additional fuel source for any fire and do not properly contain fires once ignited. These plastics not only catch fire but melt, and the hot molten plastic then spreads the fire inside the Dryer cabinet and helps the fire to spread out of the Dryer cabinet, where it can ignite surrounding items.

78. Indeed, the Electrolux Dryers failed fire containment testing that Electrolux performed in 1995 when molten plastic and flame escaped the Dryers, thereby proving that Electrolux's Dryers' design was defective and represented a serious safety hazard. Nonetheless, even though Electrolux was aware of how to eliminate this hazard, and even though Electrolux was aware of a fundamental engineering principle stating that all known safety hazards should be eliminated, if possible, through the selection of a design or material that removes the hazard altogether, Electrolux chose not to fix the safety hazard or to even warn the public or consumers who purchased the Dryers.

Class Counsel have agreed to a Settlement that pays them handsomely for their work, but allows the company to limit its liabilities and continue its pattern of disseminating improper information and concealing real safety risks.

**E.     The Fee Request is Unreasonable**

We have few measurable benefits to the Class yet Class Counsel ask for fees and costs of $8,000,000.00. They claim a lodestar of 12,000+ hours and request a 1.23 multiplier. Class counsel ignore CAFA and this coupon settlement. Class counsel: "fee shifting" is involved, such as this one—where the obligation to pay attorneys' fees is statutorily or otherwise transferred from the plaintiff or class to the defendant and is paid separately from the class's recovery—the lodestar multiplier method is an appropriate method for calculating the attorneys' fees." (Doc 153 at 15) And "where the attorneys' fees are based upon significant injunctive relief providing a safety benefit and relief like a repair or monetary relief available to remedy a safety defect, the lodestar method is appropriate for determining Class Counsel's fees." (Doc 153 at 16)

9

Settlements that create non-coupon value besides coupon value (i.e. those where a separate portion of the attorney's fee award is attributable to non-coupon relief) are subject to CAFA.  Where there is "a portion of [the] attorney's fee award . . . that is attributable to the award of the coupons," 28 U.S.C. §1712(a), a court must scrutinize that portion of the attorney's fee and base it "on the value to class members of the coupons that are redeemed." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1184 (9th Cir. 2013). Because of the inherent dangers of settlements that award coupons, CAFA requires a district court to base "the portion of any attorney's fee . . . attributable to the award of coupons" on "the value to class members of the coupons that are redeemed." 28 U.S.C. §1712(a).

Claiming the fees were negotiated separately is irrelevant.  Each of the benefits offered with the Settlement, including attorneys' fees, form part of a "constructive common fund." *See, e.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (9th Cir. 2012) (evaluating a "constructive common fund" settlement).  Similar arguments were made in *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995).  Third Circuit found that "Although class counsel and GM contend (and the district court believed) that the fee was a separate agreement, thus superficially resembling the separate awards in statutory fee cases, private agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case." *Id.*, at 821. Regarding the lodestar method: "the court must vigilantly guard against the lodestar's potential to exacerbate the misalignment of the attorneys' and the class's interests." *Id. Accord. Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal.").

Class Counsel claim "An independent valuation of the Dryer cleaning, fire compensation, and injunctive relief benefits provided under this Settlement shows that it has a full utilization value of over $155 million and a projected utilization value of over

10

$35 million." (Doc 153 at 21), citing Wallace Decl., Ex. D. Their expert's analysis is
self-serving; CAFA cannot be distinguished.

### 1. Class Counsel's Lodestar Information is Insufficient

To support the lodestar, Class Counsel describe in narrative fashion their work
during the litigation.  There was no certification motion; their work focused on motions
to dismiss and discovery during two years.

Class counsel brought and lost one discovery motion but claim victory because
Electrolux produced previously unseen documents. (Doc 153 at 6)  Mr. Wallace offers a
table of time spent litigating the case.  Wexler Wallace LLP claims 4,975.4 hours
litigating the case and a lodestar of $1,971,985.00, plus expenses of $242,098.98.
Average billable hours are $396; this number may also include paralegal or contract
attorney billings.  Exhibit E to Wexler's Declaration provides some additional
information, including the names and hourly billing rates of individuals who worked on
the litigation, although the table does not indicate if the persons listed are even attorneys.
Edward Wallace himself spent 347.1 hours litigating the case at a billing rate of $650.
Most of the work was done by Amy Keller, 1452.4 hours at $475/hr and Dawn Goulet,
1272.6 hours $475/hr and Vanessa Romero, 856.15 hours at $150/hr.  Similar
information is provided for other law firms.

There are no billing records or any explanation of the work performed. The court
must demand and scrutinize detailed time sheets.

Expert testimony is not a CAFA pass.  The settlement value cannot be determined
until the actual claims and rebates are tallied.

### 2. Bernatowicz' valuation is Speculative and Excessive.

Mr. Bernatowicz suggests a full utilization value of $155 million and projected
utilization value of over $35 million.  His assumptions are flawed and lack foundation.

Bernatowicz suggests (there's no foundation) an estimated 791,413 class members
are eligible for Dryer Cleaning.  Bernatowicz assumes a value of $100 for the hour of

11

1  cleaning.  His estimate that between 10 and 20% of eligible class members will claim the
2  benefit also lacks foundation; it is pure speculation.  This is not a government imposdd
3  product recall.  Is having your dryer cleaned be a benefit?  It may prevent future fires but
4  why are these dryers being left in homes?  Class members are helping the Defendant
5  minimize future expense.  The projected value of $7,914,130 to $15,828,259 is not a
6  benefit to consumers.  Scheduling a cleaning is an onerous annoyance.  Unlike a product
7  recall, this cleaning will be a temporary fix.  Class members are not being offered a
8  repair or a product upgrade, it is a temporary fix that leaves them vulnerable to
9  substantial fire risk.

10        The assumptions used in determining the value of this settlement, including the
11  Fire Compensation benefit are without foundation.  The reports Bernatowicz relies on
12  are not attached to this report; the court has no idea about the basis for his assumptions.
13  Bernatowicz report does educate the court; Electrolux has spent approximately $9.3
14  million in product replacement costs related to dryer fires for the period.  For 2002 to
15  2013, there were an estimated 25,655 fires, multiplied by the $363 average out-of-pocket
16  loss.  The full utilization value for past fires is $9,322,952.  Here Bernatowicz estimates
17  that 50%-65% of all eligible class members will claim the compensation available to
18  them under the settlement, so he estimates the value of this portion of the settlement at
19  between $4,661,476 and $6,059,919.

20        The value of this portion of the settlement for the period 2014 through 2022 is
21  projected to be lower.  For 2014 through 2022, Bernatowicz estimates 11,597 future
22  fires; he again assumes an average $363 out-of-pocket loss.  The projections are reduced
23  by 1 -2% based on averted fires, with full utilization value of this portion of the
24  settlement estimated between $4,136,100 and $4,175,197.  Bernatowicz estimates that
25  50%-65% of all eligible class members will claim the compensation, an astounding
26  claims rate assumption.  And, after the cleaning and additional safety
27  notices/instructions, over ten thousand fires are projected to occur in the next six years.
28  This court cannot in good conscience, sanction an estimated 11,489 future fires.

12

1    Bernatowicz values the mailing of safety notices to Class Members at between

2  $12.6 million and $18.9 million. This number is based on Startlingly, for the safety

3  notice we learn that the average out of pocket loss from these fires is expected to be

4  $12,174. (Although as noted above the class members who experience any such fire are

5  only expected to recoup $363 in out-of-pocket expenses). Bernatowicz uses this much

6  higher out-of-pocket loss figure to calculate the benefit of the settlement. Multiplying

7  the estimated 11,489 future fires times the estimated average out of pocket loss from

8  these fires of $12,174, *reduced by 45% because of the safety notices,* he reaches the

9  startling conclusion that mailing safety notices provides a full utilization benefit to the

10  class of $62,939,295. To come up with a projected utilization value for this portion of

11  the settlement he assumes a participation rate of between 20% and 30%, yielding a value

12  between $12,587,859 and $18,881,789.

13    These calculations as to the benefit of the settlement to the class are misleading.

14  The only value or cost the court should consider is the cost of the notice. Electrolux'

15  diminished liability is not a class benefit. Avoiding fires is not a benefit.

16    ### 3. *This is a coupon settlement and value is based on redemption*

17    Class Counsel claim "The excellent monetary and safety-related injunctive relief

18  achieved more than justifies Class Counsel's fee request." (Fee Motion, page 14.) The

19  relief is not excellent. This is a coupon settlement which provides a coupon for an

20  Electrolux cleaning (which may or may not cover the full cost of the cleaning), and a

21  discount for the purchase of an Electrolux product. Some monetary relief is provided,

22  but only for class members who experience the trauma of an actual fire in their homes –

23  and even then the compensation is capped at $1,300 but estimated to be worth far less.

24  The fact that the rebate offers merely a percentage off the purchase price of a new

25  product – a fairly small percent at that, at 10% or 20% -- means that Class Members will

26  have to spend hundreds of dollars to take advantage of this Settlement. *See Synfuel v.*

27  *DHL Express* (USA), 463 F.3d 646, 654 (7th Cir. 2006) (Wood, J.) (A "discount on a

28  proposed purchase" is typical coupon relief). The value of these coupons should be

13

1 │ looked at with skepticism. Section §1712 was born of the recognition that

2 │ "[c]ompensation in kind is worth less than cash of the same nominal value." *Synfuel*, 463

3 │ F.3d at 654.

4 │      The primary problem with coupons is that they "mask[] the relative payment of

5 │ the class counsel as compared to the amount of money actually received by the class

6 │ members." *Inkjet*, 716 F.3d at 1184 (*quoting* Christopher R. Leslie, A Market-Based

7 │ Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation, 49

8 │ UCLA L. Rev. 991, 1049 (2002)). "[C]ourts aim to tether the value of an attorneys' fees

9 │ award to the value of the class recovery . . . Where both the class and its attorneys are

10 │ paid in cash, this task is fairly effortless . . . But where class counsel is paid in cash, and

11 │ the class is paid in some other way, for example, with coupons, comparing the value of

12 │ the fees with the value of the recovery is substantially more difficult." *Inkjet*, 716 F.3d at

13 │ 1187. "If a proposed settlement in a class action provides for a recovery of coupons to a

14 │ class member," then it is governed by CAFA. 28 U.S.C. §1712(a)-(c); accord §1712(e).

15 │ Here the settlement provides for two kinds of coupons: hence Section 1712 applies.

16 │ Where there is "a portion of [the] attorney's fee award . . . that is attributable to the

17 │ award of the coupons, a court must scrutinize that portion of the attorney's fee and base

18 │ it "on the value to class members of the coupons that are redeemed." 28 U.S.C.

19 │ §1712(a). CAFA requires that coupons be valued at "the value to class members of the

20 │ coupons that are redeemed."

### III.   JOINDER IN OTHER OBJECTIONS

22 │      House joins in, adopts and incorporates by reference as though fully stated herein

23 │ each objection by other class members which are not inconsistent with these objections.

### IV.   CONCLUSIONS

25 │      The court should carefully scrutinize this settlement proposal and fee request.

26 │ This is a settlement that shields the Defendant from vast future liabilities while

27 │ conferring little benefit on the class. For the foregoing reasons and all others to be

28 │

14

presented at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

July 28, 2014                               By: _____

                                            Joseph Darrell Palmer
                                            Attorney for Patrick S. Sweeney

15

1

## CERTIFICATE OF SERVICE

2

3       I certify that on July 28, 2014, I mailed the foregoing and the Declaration of

4   Patrick Sweeney to the Clerk of the Court of the United States District Court for the

5   Central District of California and to:

6       Edward A. Wallace
        Wexler Wallace LLP
7       55 West Monroe St., Ste. 3300
        Chicago, Illinois 60603
8

9       Michael T. Williams
        Wheeler Trigg O'Donnell LLP
10      370 Seventeenth Street, Suite 4500
        Denver, Colorado 80202
11

12

13

14

15      July 28, 2014

16                                              Joseph Darrell Palmer

17

18

19

20

21

22

23

24

25

26

27

28