Matthew P. Kanny (SBN 167118)
Email: mkanny@manatt. com
Manatt, Phelps & Phillips, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064
Telephone: (310) 312-4000
Facsimile:   (310) 312-4224

Michael T. Williams (*pro hac vice*)
Email: williams@wtotrial.com
Jessica G. Scott (*pro hac vice*)
Email: scott@wtotrial.com
Kenneth E. Stalzer (*pro hac vice*)
Email: stalzer@wtotrial.com
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Telephone: (303) 244-1800
Facsimile:   (303) 244-1879

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SHAWN ROBERTS, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ELECTROLUX HOME PRODUCTS, INC., <br><br> Defendants. | Master File No. SACV12-1644-CAS(VBKx) <br><br> CLASS ACTION <br><br> **DEFENDANT ELECTROLUX HOME PRODUCTS, INC.'S MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT** <br><br> The Honorable Christina A. Snyder <br><br> Date: August 18, 2014 <br> Time: 10:00 a.m. PDT <br> Courtroom: 5 – Los Angeles – Spring Street |
| This Document Relates To: All Actions. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS ................................................................................... 3

I.     BACKGROUND ..................................................................................... 3

II.    THE COURT'S PRELIMINARY APPROVAL ORDER............................ 3

III.   THE PARTIES' COMPLIED WITH THE COURT'S ORDER ................... 4

ARGUMENT....................................................................................................... 5

I.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ......... 5

       A.    Standards for Final Approval of a Classwide Settlement.................... 5

       A.    The Settlement Is Objectively Fair, Reasonable, and Adequate
             in Light of the Merits of Plaintiffs' Case............................................ 7

       B.    The Amount Offered In Settlement Weighs in Favor of
             Approval........................................................................................... 10

       C.    The Risk, Expense, Complexity, and Likely Duration of Further
             Litigation Weighs in Favor of Final Settlement Approval ................ 12

       D.    The Settlement Has Come After the Completion of Discovery ......... 12

       E.    The Settlement Was Reached Through Good-Faith Bargaining
             Between Experienced Counsel .......................................................... 13

       F.    Plaintiffs Are At Risk of Being Unable to Maintain Class
             Action Status Through Trial .............................................................. 14

II.    THE COURT SHOULD CERTIFY THE NATIONWIDE
       SETTLEMENT CLASS......................................................................... 15

       A.    Rule 23(a)  Is Satisfied for Settlement Purposes .............................. 16

             1.    The Settlement Class Is So Numerous That Joinder of All
                   Members Is Impracticable ......................................................... 16

             2.    There Are Questions of Law or Fact Common to All
                   Class Members for Settlement Purposes ................................... 17

3.    The Typicality Requirement Is Satisfied for Settlement
Purposes .................................................................................. 17

4.    Plaintiffs Will Fairly and Adequately Protect the
Settlement Class's Interests ...................................................... 18

B.    The Class Satisfies Rule 23(b)(3) for Settlement Purposes ................ 18

III.   THE NOTICE AND DISTRIBUTION PLAN ARE REASONABLE......... 21

IV.   THE COURT SHOULD OVERRULE ALL OBJECTIONS ...................... 22

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
 521 U. S. 591 (1997) ......................................................................... 17, 18, 21

*Barnes v. Fleetboston Fin. Corp.*,
 No. CA 01-10395-NG, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) ........ 27

*Churchill Vill., LLC v. Gen. Elec.*,
 361 F.3d 566 (9th Cir. 2004) ....................................................................... 25

*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992) ........................................................................5

*Comcast Corp. v. Behrend*,
 133 S. Ct. 1426 (2013) ................................................................................. 16

*Eisen v. Porsche Cars N. Am., Inc.*,
 No. 2:11-CV-09405-CAS, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014)5, 13, 15

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
 525 F. App'x 94, 102 n.13 (3d Cir. 2013) ..................................................... 23

*Gripenstraw v. Blazin' Wings, Inc.*,
 No. 1:12-CV-00233-AWI, 2013 WL 6798926 (E.D. Cal. Dec. 20,
 2013) ...................................................................................................... 13, 17

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ...................................................... 6, 7, 20, 22

*In re AIG, Inc. Sec. Litig.*,
 689 F.3d 229 (2d Cir. 2012) ................................................................... 17, 21

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
 789 F. Supp. 2d 935 (N.D. Ill. 2011) .......................................................... 22

*In re Deepwater Horizon*,
 739 F.3d 790 (5th Cir. 2014) ....................................................................... 23

*In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*,

No. 2:07-MD-1873, 2012 WL 4513344 (E.D. La. Sept. 27, 2012) .............. 24

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,

851 F. Supp. 2d 1040 (S.D. Tex. 2012) ........................................................ 23

*In re NVIDIA GPU Litig.*,

539 F. App'x 822 (9th Cir. 2013).................................................................. 22

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on April 20,*

*2010*, 910 F. Supp. 2d 891 (E.D. La. 2012) .................................................. 23

*In re Pac. Enters. Sec. Litig.*,

47 F.3d 373 (9th Cir. 1995) ........................................................................... 15

*In re Syncor ERISA Litig.*,

516 F.3d 1095 (9th Cir. 2008) ..........................................................................5

*In re Telectronics Pacing Sys., Inc.*,

137 F. Supp. 2d 985 (S.D. Ohio 2001) .......................................................... 26

*In re UnitedHealth Grp. Inc. PSLRA Litig.*,

643 F. Supp. 2d 1107 (D. Minn. 2009) ......................................................... 27

*In re Warfarin Sodium Antitrust Litig.*,

391 F.3d 516 (3d Cir. 2004) .................................................................... 22, 23

*Lane v. Facebook, Inc.*,

696 F.3d 811 (9th Cir. 2012) ...........................................................................7

*Linney v. Cellular Alaska P'ship*,

151 F.3d 1234 (9th Cir. 1998) ................................................................... 6, 13

*Ma v. Covidien Holdings, Inc.*,

No. SACV-12-02161-DOC (RNBx), 2014 WL 360196.............................. 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,

339 U.S. 306 (1950) ...................................................................................... 25

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... passim

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................. 6, 7, 8, 13

*Phillips Petrol. Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................................... 22

*Ritchie v. Van Ru Credit Corp.*,
    No. CV-12-1714-PHX-SMM, 2014 WL 956131 (D. Ariz. Mar. 12,
    2014) ................................................................................................................. 13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................ 25

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
    No. EDCV 08-482-VAP(OP), 2010 WL 2486346 (C.D. Cal. June 15,
    2010) .................................................................................................................. 7

*Shaffer v. Cont'l Cas. Co.*,
    362 F. App'x 627 (9th Cir. 2010) ................................................................ 11

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ........................................................................ 25

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) .......................................................................... 18

*United States v. State of Or.*,
    913 F.2d 576 (9th Cir. 1990) ........................................................................ 26

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................ 16, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................... 14

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ........................................................................ 27

*Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.*,
    758 F.2d 86 (3d Cir. 1985) ........................................................................... 26

1

**Rules**

2    Federal Rules of Civil Procedure 23 ................................................................ passim

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Electrolux Home Products, Inc. ("Electrolux") submits this memorandum in support of the Joint Motion for Final Approval of Class Settlement ("Joint Motion"). For the reasons stated below, Electrolux requests that the Court enter the parties' proposed Order Granting Final Approval of Class Settlement and Final Judgment that is attached as Exhibit A to the Joint Motion.

## INTRODUCTION

Plaintiffs sued Electrolux in this putative class action alleging that Electrolux-manufactured freestanding "ball-hitch" clothes dryers ("Dryers") are defectively designed because they allow excessive amounts of lint to build up near the Dryer's gas or electric heat source ("Defect Theory"), which can catch fire and spread. Of course, <u>all</u> makes and models of clothes dryers accumulate lint and can catch fire. Further, the overwhelming majority of Dryers do not catch fire: more than 99.997%. Even Plaintiffs themselves concede that more than 99.45% of their proposed class have never experienced, and never will experience, any fire. And, among that minuscule percentage of Dryers that have caught fire, a myriad of potential reasons explain why each Dryer might have caught fire that has nothing to do with the Dryer's design or accumulation of lint.

Against that background, the parties engaged in arms-length settlement discussions in the first and second quarters of this year—including participating in a two-day mediation with nationally-renowned mediator Jonathan Marks—in an attempt to end the litigation. The settlement agreement, which was attached to the Joint Motion for Preliminary Approval as Exhibit A (ECF No. 145-1, and a corrected version filed at ECF No. 147), is the end result of those discussions ("Settlement Agreement"). It provides, among other things, that any "Settlement Class Member" who has experienced, or will experience in the next eight years, a fire in their Dryer, will be reimbursed for their documented, unreimbursed out-of-pocket losses relating to that fire, up to an amount equal to the purchase price paid for the Dryer. Those class members who have experienced, or who will in the

1

future experience, a dryer fire that caused property damage in an amount in excess of the purchase price paid for the Dryer retain their right to pursue a property damage claim directly against Electrolux outside of the class settlement. The Settlement Agreement also provides a free Dryer cleaning service to any Settlement Class Member who has experienced a qualifying performance problem (for example, overheating, burning, or scorching of laundry loads, longer than normal cycle times, or observed smoke or burning odor) within five years of purchasing his Dryer. Class Members and other consumers will receive, or be able to access on Electrolux and Frigidaire websites, dryer-cleaning advisories on how to properly clean and maintain a dryer. Class Members also are eligible for rebates on new dryers or select other Electrolux-manufactured appliances. The parties now jointly move for final approval of their proposed settlement and entry of final judgment.

The Court may approve a class settlement if it is "fair, reasonable, and adequate," and not the product of collusion. Fed. R. Civ. P. 23(e). Several factors guide this inquiry, but the fairness of each proposed class settlement turns, in large part, on weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. As discussed below, it is likely that Electrolux would prevail on the merits if this case were litigated through trial. The proposed settlement represents a significant portion (if not more) of what Plaintiffs could hope to receive if they prevailed on the merits of a class trial, and Plaintiffs' decision to settle their claims on the terms memorialized by the Settlement Agreement represents a reasoned assessment of the risk and expense of continued litigation. The proposed settlement was negotiated between informed counsel with the assistance of an exceptionally able and experienced mediator. All factors support final approval of the settlement.

**STATEMENT OF FACTS**

## I.    BACKGROUND

Electrolux incorporates by reference the Background section in Plaintiffs' memorandum in support of the parties' joint motion for preliminary approval of class settlement. (ECF No. 146 at 1-8.)

## II.    THE COURT'S PRELIMINARY APPROVAL ORDER

The Court entered its Preliminary Approval Order on May 5, 2014 (ECF No. 150), which, among other things,

- conditionally certified for settlement purposes a nationwide class of all residents of the United States who purchased or currently own, primarily for personal or household purposes, a Dryer; and conditionally certified past and future dryer fire subclasses (Prelim. Approval Order at 4-5, ¶ 3);

- preliminarily appointed named Plaintiffs Shannon Carty, Matthew Downs, Stephen Gavic, Michelle McGowan, and Tammie Humphrey as representatives of the Settlement Class and Subclasses (*id.* at 5, ¶ 4);

- appointed the law firms Wexler Wallace LLP, Hansen Reynolds Dickinson Crueger, LLC, and Greg Coleman Law, P.C., as Class Counsel for the Settlement Class (*id.* at 5-6, ¶ 5);

- preliminarily approved the substantive terms of the Settlement Agreement (*id.* at 6, ¶¶ 6-8);

- approved the parties' proposed notice plan (*id.* at 7, ¶ 10), forms of notice and Claim Form (*id.* at 7-8, ¶¶ 11-12), as well as the proposed methods and timing for dissemination of the notices by mail, email, and publication (*id.* ¶ 12);

- appointed Kurtzman Carson Consultants ("KCC") to serve as Settlement Administrator (*id.* at 7, ¶ 9);

3

- ordered Electrolux to file, within 45 days after the entry of the Preliminary Approval Order, a declaration evincing its compliance with the Preliminary Approval Order's notice requirements (*id.* at 7-8, ¶ 12; Settlement Agreement (ECF No. 147) at 39-40, ¶ V.J.);

- ordered members of the Settlement Class who wish to be excluded from the settlement to mail their requests for exclusion to the Settlement Administrator, postmarked no later than July 28, 2014 (Prelim. Approval Order at 9, ¶ 15);

- ordered members of the Settlement Class who wish to object to the proposed Settlement, to make any objection in writing, file it with the Court, and mail it to Class Counsel and Electrolux's counsel, no later than July 28, 2014 (*id.* at 8, ¶ 14); and

- scheduled, for August 18, 2014, a Fairness Hearing to determine whether the certification of the Settlement Class, the designation of named Plaintiffs as class representatives, the appointment of Class Counsel, the Settlement Agreement, and the settlement should receive final approval (*id.* ¶ 13).

## III.   THE PARTIES' COMPLIED WITH THE COURT'S ORDER

The parties complied with the Court's Preliminary Approval Order. Electrolux filed the Declaration of Carla Peak (ECF No. 152), a KCC notice expert, on June 19, 2014, which attested to Electrolux's compliance with the proposed settlement notice program. Since that declaration was filed, Electrolux can confirm that the publication notices ran in *People* and *Parade* magazines as planned. (Decl. of Kenneth E. Stalzer ¶ 6 & Ex. C, attached as Ex. 1.)

Due to the notice program, as of August 5, 2014, KCC's website, www.dryersettlement.com, has received 126,758 visits. (Stalzer Decl. ¶ 1.) Approximately 20,368 purported Class Members already had made claims as of that date. (*Id.* ¶ 2.) Class Members have until December 15, 2014, to submit

claims, and it is not unusual to see a spike in the number of claims submitted during the last several weeks leading up to the claims-filing deadline. This almost certainly will occur in this case because Electrolux has agreed to conduct paid advertising of the settlement rebate program in November 2014. (*Id.* ¶ 3.)

As of August 5, 2014, KCC has received 62 timely requests for exclusion from the settlement. (*Id.* ¶ 4.) Pursuant to the Preliminary Approval Order and Settlement Agreement, KCC prepared a list of persons who have opted out of the Settlement Class, which list is attached as Exhibit A to the Stalzer Declaration. (*Id.*, Ex. A.) KCC also prepared a list of Class Members who objected. That list is attached as Exhibit B to the Stalzer Declaration. (*Id.*, Ex. B.)

## ARGUMENT

### I.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

#### A.   Standards for Final Approval of a Classwide Settlement

The Ninth Circuit has a strong policy of promoting and encouraging settlements between litigating parties, and this is especially true for class actions. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992))); *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014 WL 439006, at *3 (C.D. Cal. Jan. 30, 2014) (Snyder, J.) ("'[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.' This general rule applies with special force to class actions." (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004))). A class action, however, may be settled on a class basis only with the Court's approval. *See* Fed. R. Civ. P. 23(e).

The "universally applied standard" in determining whether a court should grant final approval to a class action settlement is whether the settlement is

"fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525. As the Ninth Circuit has explained, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027; *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982))).

In determining whether a proposed class action settlement is fair, reasonable, and adequate, district courts consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026)). Not all of these factors will apply to every settlement, and "[u]nder certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525-26. Further, the "relative degree of importance to be attached to any particular factor will depend on the unique circumstances of each case." *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *5 (C.D. Cal. June 15, 2010) (quoting *Officers for Justice*, 688 F.2d at 625).

Application of the factors and this standard demonstrate that the proposed settlement is fair, reasonable, and adequate and should be finally approved.[1]

### A.   The Settlement Is Objectively Fair, Reasonable, and Adequate in Light of the Merits of Plaintiffs' Case

An important consideration in judging the reasonableness of a settlement is to balance "'the strength of the plaintiffs' case on the merits . . . against the amount offered in the settlement.'" *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender 3d. ed.)). This assessment, however, "is not to be turned into a trial or rehearsal for trial on the merits." *Officers for Justice*, 688 F.2d at 625. To the contrary, the court's consideration of the likelihood of success on the merits is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (citation and internal quotation marks omitted).

Here, several key facts cast substantial doubt on whether this action is properly maintainable as a class action for trial purposes and also make it unlikely that Plaintiffs would succeed on the merits of any certified class claim at trial. Those facts include, among other things, the following:

1.   The data examined by the parties' experts tend to show that the overwhelming majority of owners—more than 99.997% according to Electrolux, and more than 99.45% according to Plaintiffs—have not and will not experience any fire or other malfunction related to Plaintiffs' Defect Theory, thereby posing significant challenges to Plaintiffs' theory that the Dryers are substantially certain to catch fire during the product's useful life or establishing injury and damages for the vast majority of the class, including Plaintiff Humphrey.

---

[1] The seventh factor—the presence of a governmental participant—is not applicable here. There has been no government participant in this litigation. The eighth factor, the reaction of class members, is addressed *infra* in section IV.

2.     Electrolux's experts will show that that the probability of a reported fire in an Electrolux-manufactured dryer is nearly <u>six times</u> less likely than the probability a fire would occur in all clothes dryers produced by all manufacturers, which would contradict Plaintiffs' allegation that the Dryers are unreasonably dangerous.

3.     Electrolux also would present evidence to show that, within the tiny minority of Dryers that have caught on fire, the cause of each fire is highly individualized as there are myriad potential causes of dryer fires that have nothing to do with the Dryer's design. For instance, numerous factors related to installation, use, and maintenance effect the accumulation of lint in the Dryer, including how the Dryer is installed, what type of transition ducting is used, the length and number of bends in permanent ducting, whether there is a leak in the Dryer's airflow, whether the owner routinely cleans the lint screen, the material (including the possible presence of accelerants) and amount of a laundry load, the length of the drying cycle, the type of washing machine used, and the environment in which the Dryer sits. In Electrolux's view, Plaintiffs' theory about excessive lint accumulation in the heater pan is perhaps the least likely of all lint-ignition scenarios.

4.     Electrolux would present evidence from Electrolux's laboratory testing, consulting experts' laboratory testing, and consumers' homes that contradicts Plaintiffs' Defect Theory. In fact, Electrolux is undefeated, at 5-0, in individual product liability trials involving plaintiffs who presented substantially the same theory Plaintiffs press here.

5.     If the case does not settle, Electrolux would file motions for summary judgment arguing that Plaintiffs have failed to show that their

8

1   individual Dryer fires are properly explained by their Defect Theory,

2   thereby precluding Plaintiffs from establishing proximate causation

3   required by their claims.

4   6.   Electrolux also would argue that Plaintiffs are unable to prove that

5   Electrolux had a duty to provide any warning other than the several

6   safety warnings Electrolux did provide. For example, Electrolux

7   would argue that Electrolux's rigorous pre-production testing is

8   thoroughly documented and does not show that Electrolux had any

9   actual or constructive knowledge of any defect.

10   7.   Further, Electrolux's evidence would show that it explicitly warned

11   about the potential fire hazard presented by lint buildup and how to

12   reduce the risk of fire. Electrolux's warnings also complied with all

13   applicable voluntary safety standards and with industry custom (*i.e.*,

14   the other appliance manufacturers give the same warnings and

15   instructions).

16   8.   Still further, Electrolux would argue that Plaintiffs have not cited any

17   evidence that Electrolux failed to honor its written warranties, with

18   respect to them or members of the putative class. To the contrary, the

19   evidence tends to show that Plaintiffs and putative class members

20   received free repairs under the terms of their warranties, when they so

21   requested service, and were even provided discounts towards new

22   Dryers when an overheating event occurred outside of the warranty

23   period.

24   9.   If this case were to proceed to trial as a national class action, this

25   Court would be required to instruct the jury on the laws of 50 different

26   states for express and implied warranties, negligence, injunctive relief,

27   and declaratory relief, along with the laws of five states on consumer

28   protection laws, strict products liability, and unjust enrichment,

9

1    thereby resulting in an extremely complex, if not entirely

2    unmanageable, trial.

3        The above facts show that Electrolux has strong defenses to liability and

4    certification of any class for trial. When contrasted with the generous benefits

5    offered under the Settlement Agreement (ECF No. 147, § IV), it becomes clear

6    that the settlement is more than fair and reasonable. *See, e.g.*, *Shaffer v. Cont'l*

7    *Cas. Co*., 362 F. App'x 627, 630 (9th Cir. 2010) (granting settlement approval

8    where, inter alia, the defendant "had a strong defense to liability").

9        **B.    The Amount Offered In Settlement Weighs in Favor of Approval**

10       The Settlement Agreement provides real, meaningful relief to the class.

11   Specifically, it provides immediate compensation to the small minority of buyers

12   who experienced a Dryer fire within the first 10 years after purchase, incurred out-

13   of-pocket losses due to that fire (for instance, by repairing or replacing the Dryer

14   or other property damaged, or by paying an insurance deductible), and have not

15   previously received complete reimbursement for the loss from Electrolux, an

16   insurance company, or another third party.[2] (Settlement Agreement ¶ IV.E.1., ECF

17   No. 147.) In exchange for this cash reimbursement, participating members will

18   release only their claims for economic loss; they may still file a claim (in a court,

19   with Electrolux's risk management department, or with their insurance company)

20   to obtain recovery for any personal injury or damage to property other than the

21   Dryer. (*Id*. ¶¶ IV.E.1-3.) This cash benefit is not limited to those Settlement Class

22   Members who have already experienced a fire; it applies to any Settlement Class

23   Member who experiences a Dryer fire within the next eight years (so long as the

24   fire occurred within the first 10 years after sale). (*Id*. ¶ IV.F.)

25

26

27   _____

     [2] Any compensation previously received from Electrolux will merely reduce the
     amount the Settlement Class Member receives under the settlement. (Settlement

28   Agreement ¶ IV.E.4., ECF No. 147.)

The Settlement Agreement also provides a variety of benefits to Settlement Class Members who have not experienced a Dryer fire, *i.e.*, the vast majority of the class. Any Settlement Class Member who has experienced a qualifying performance problem (*e.g.*, overheating, burning, or scorching of laundry loads; longer than normal cycle times; excessive lint buildup inside the Dryer; sparking of the heating element; burned or scorched lint inside the Dryer; or observed smoke or burning odor) is entitled to a free cleaning service by an authorized service technician. (*Id.* ¶ IV.B.) And all Settlement Class Members—regardless of whether they experienced any performance problem—will be sent a safety notice informing them of the importance of proper installation, use, and care of the Dryer, and are entitled to a rebate toward the purchase of a new Electrolux- or Frigidaire-brand clothes dryer or other home appliance or an online discount code toward the purchase of a variety of other products and accessories. (*Id.* ¶¶ IV.A, C-D.)

In other words, all Settlement Class Members—regardless of whether they ever have experienced or will experience any fire or other problem with their Dryer—will receive benefits under the Settlement, with the benefits being commensurate with the Settlement Class Members' experiences with their Dryers. Settlement Class Members do not have to wait for a lengthy litigation process to receive those benefits and will not incur any costs of administration or attorneys' fees. (*Id.* ¶ VI.)

These terms are especially fair in light of the substantial risks Plaintiffs would face if forced to litigate this class action through trial and the high likelihood that Plaintiffs will be unable to recover on the merits. This factor, accordingly, weighs in favor of final settlement approval.

ELECTROLUX'S MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL
MASTER FILE NO. SACV12-1644-CAS(VBKx)

**C.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation Weighs in Favor of Final Settlement Approval**

The complexity and expense of class-action litigation is well recognized. *See Linney*, 151 F.3d at 1242 ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." (quoting *Officers for Justice*, 688 F.2d at 625) (internal quotation mark omitted)). This case is no exception. Extensive litigation, including a class certification hearing, summary judgment proceedings, trial, and appeal, would expend significant time and resources for each party and the Court.

The settlement will relieve the parties and the Court of the inefficiencies and costs of litigating this putative class action. This factor weighs in favor of final settlement approval. *See, e.g.*, *Eisen*, 2014 WL 439006, at *4 ("Settlement avoids all possible risks of continued litigation, including the possibility that plaintiffs would not succeed at trial. Here, the advantage to the Class of avoiding those risks favor settlement of this action."); *Ritchie v. Van Ru Credit Corp.*, No. CV-12-1714-PHX-SMM, 2014 WL 956131, at *4 (D. Ariz. Mar. 12, 2014) ("Further litigation would not only be contentious, but would likely result in appeals. Settlement curtails further expense, as well as shortens and simplifies the proceedings."); *Gripenstraw v. Blazin' Wings, Inc.*, No. 1:12-CV-00233-AWI, 2013 WL 6798926, at *12 (E.D. Cal. Dec. 20, 2013) ("[M]ultiple issues would likely be hotly contested and would give rise to additional motions work and possibly a lengthy trial. . . . Given the risk of the class not receiving any recovery or receiving delayed recovery, substantially reduced in value by extensive costs and protracted litigation expenses, this factor weighs in favor of . . . approval of the class settlement.").

**D.     The Settlement Has Come After the Completion of Discovery**

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a

12

full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (quoting Moore, *supra*, § 23.85[2][e]) (internal quotation marks omitted). That is because "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Id*.

Here, the parties reached the proposed settlement after the completion of all class discovery and substantially all merits discovery. In class and merits discovery, the parties conducted substantial written discovery, Electrolux produced hundreds of thousands of pages of documents, the parties took 18 depositions, and the parties exchanged 12 expert reports comprising thousands of pages. (*See* Appl. at 4-5, ECF No. 153.) The Settlement Agreement was signed only after Plaintiffs and Electrolux had exhaustively examined the factual and legal bases of Plaintiffs' claims. This factor militates in favor of final approval of the settlement.

## E.     The Settlement Was Reached Through Good-Faith Bargaining Between Experienced Counsel

An important factor relevant to the fairness determination is whether the settlement was reached through good-faith bargaining among experienced counsel. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting that a presumption of fairness, adequacy, and reasonableness may attach to a class settlement "reached in arm's-length negotiations between experienced, capable counsel") (citation and internal quotation mark omitted); *Eisen*, 2014 WL 439006, at *5 ("The Court places a great deal of reliance on the decision by sophisticated parties to agree to settle their dispute.").

In this case, the settlement was reached after substantial good-faith bargaining. Specifically, after nearly four months of negotiations, two days of in-person mediation, numerous follow-up conferences with the mediator, and multiple rounds of party conferences, the parties agreed on the settlement's essential and final terms on April 30, 2014. The agreement also was negotiated between experienced, capable counsel. *See, e. g., In re Pac. Enters. Sec. Litig.*, 47

F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

For instance, Edward Wallace, the lead negotiating attorney for Plaintiffs, focuses his practice on complex multi-party litigation and has been appointed to leadership positions in numerous high-profile cases, including a recent appointment to the plaintiffs' steering committee in each of the consolidated federal court proceedings relating to the implantation of transvaginal surgical mesh devices and as lead counsel in the *Illinois Funeral Directors Association Litigation*, which recently settle for more than $41 million. *See* http://www.wexlerwallace.com/our-firm/our-professionals/edward-a-wallace/. Similarly, lead defense counsel, Michael Williams, focuses his practice on consumer class actions, complex business litigation, mass torts, and product liability litigation. He has represented corporations in more 50 class actions, and his class-action and mass torts expertise has been recognized by multiple independent evaluators. *See* http://wtotrial.com/michael-t-williams-1.

Neither the substantive terms of the Settlement Agreement nor its provisions regarding attorneys' fees and costs indicate that the Settlement Agreement is the product of fraud, collusion, or Plaintiffs' or their attorneys' abandonment of the class's interests. (*See, e.g.*, Appl., Ex. 2, Marks Decl. ¶¶ 23, 25-26, ECF No. 153-4.) Thus, this factor favors final approval. *See, e.g.*, *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528).

## F. Plaintiffs Are At Risk of Being Unable to Maintain Class Action Status Through Trial

As noted above, several key facts cast substantial doubt on whether this action would be properly maintainable as a trial class action for both liability and damages purposes and make it unlikely that Plaintiffs would succeed on the merits of a classwide trial using common, classwide proof. For instance, it is undisputed

14

that the vast majority of Dryer purchasers have never experienced, and will never experience, a fire or other overheating event in their Dryer and that any fire can be caused by a myriad of reasons. Because Rule 23 cannot be used to alter the nature of a plaintiff's claims, at least a significant portion of the class cannot succeed on the merits. Plaintiffs likely would be unable to prove fact of injury, causation, and damages with common, classwide evidence, thus making it unlikely that any class-action trial would be manageable, efficient, and fair, all as required by Rule 23(b)(3). *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Even if certain elements of certain of Plaintiffs' causes of action were certified for trial purposes, a trial following an issues-only certification would not materially advance the interests of the putative class members and leave to another day individualized proceedings.

This factor, accordingly, weighs in favor of settlement. *See, e.g.*, *Gripenstraw*, 2013 WL 6798926, at *12 (noting that "there is a foreseeable risk that as discovery progresses the commonality, predominance and suitability factors of Rule 23(a) and (b)(3) would place the class certification in question," weighing "in favor of . . . approval of the class settlement").

## II.    THE COURT SHOULD CERTIFY THE NATIONWIDE SETTLEMENT CLASS

The Federal Rules of Civil Procedure allow a case to be certified as a class action only if the action satisfies all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the three categories in Rule 23(b). These requirements apply when a class is proposed to be certified for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U. S. 591, 619-22 (1997) (holding that requests for settlement-only class certification are subject to Rule 23's certification requirements). In the context of settlement, "Rules 23(a) and (b) continue to serve the purpose of 'focus[ing] court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by

decisions of class representatives.'" *In re AIG, Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012) (quoting *Amchem*, 521 U. S. at 621).

In *Amchem*, the Supreme Court held that a trial court may consider the settlement in determining whether Rule 23 is satisfied because "[s]ettlement is relevant to class certification." 521 U. S. at 619. A district court "[c]onfronted with a request for settlement-only class certification . . . need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id*. at 620 (citation omitted); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (Scirica, J., concurring) ("A key question in a litigation class action is manageability—how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof. But the settlement class presents no management problems because the case will not be tried."). This action likely could not be properly certified as a national class action for all <u>trial</u> purposes because of the differences in experiences among the class members and the variations among the state laws at issue. But because the parties are requesting certification of a <u>settlement</u> class, the proposed settlement, if approved, means that there would not be a trial and that the many case-management problems that could plague a class trial would not arise. Thus, Electrolux is willing to stipulate, for settlement purposes only, that the proposed Settlement Class complies with Rule 23's certification requirements.

## A.   Rule 23(a)  Is Satisfied for Settlement Purposes

### 1.   The Settlement Class Is So Numerous That Joinder of All Members Is Impracticable

The first prerequisite to class certification is that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1) . "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Ma v. Covidien Holdings, Inc.*, No. SACV-12-

1  02161-DOC (RNBx), 2014 WL 360196, at *2 (citation and internal quotation
2  marks omitted).

3    For purposes of effecting the settlement, Electrolux stipulates that the
4  numerosity requirement is satisfied. Based on the information available to date,
5  Electrolux believes there are more than 6,000,000 Dryer purchasers who would
6  fall within the definition of the Settlement Class.

7    **2.    There Are Questions of Law or Fact Common to All Class**
8    **Members for Settlement Purposes**

9    The second prerequisite to class certification—the commonality
10  requirement—is that there be "questions of law or fact common to the class."
11  Fed. R. Civ. P. 23(a)(2). The commonality requirement is satisfied where the
12  plaintiffs' claims depend on a "common contention" that is "capable of classwide
13  resolution—which means that determination of its truth or falsity will resolve an
14  issue that is central to the validity of each one of the claims in one stroke." *Dukes*,
15  131 S. Ct. at 2551. A single common question is sufficient to establish Rule
16  23(a)(2). *Id*. at 2556.

17    For purposes of effecting the settlement, Electrolux stipulates to the
18  existence of questions of law or fact common to all members of the proposed
19  Settlement Class, including whether the Dryer contains one or more defects that
20  have caused fires in some Dryers.

21    **3.    The Typicality Requirement Is Satisfied for Settlement**
22    **Purposes**

23    The third prerequisite to class certification is that Plaintiffs' claims be
24  typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "Representative claims
25  are 'typical' if they are reasonably co-extensive with those of absent class
26  members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

27    For purposes of effecting the settlement, Electrolux stipulates that Plaintiffs'
28  claims are typical of the claims of the Settlement Class. As owners of Dryers

manufactured after 2002 (Consol. 2d Am. Compl. ¶¶ 13-17, ECF No. 143), Plaintiffs are members of the Settlement Class and allege that they have been damaged by the same conduct that they allege has damaged other members of the Settlement Class. Moreover, the claims of Plaintiffs and Settlement Class Members are based on corresponding theories, such as breach of express and implied warranties, consumer fraud, negligence, and unjust enrichment. For purposes of settlement, Plaintiffs' claims are not in conflict with or antagonistic to the claims of the Settlement Class as a whole.

### 4.    Plaintiffs Will Fairly and Adequately Protect the Settlement Class's Interests

Plaintiffs and their attorneys must be able to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

For purposes of effecting the settlement, Electrolux stipulates that Plaintiffs will fairly, fully, and adequately protect the interests of the Settlement Class. Electrolux is not aware of any interests Plaintiffs or their counsel may have that would conflict with, or be adverse to, those of the class. There also is no dispute that Plaintiffs' counsel is experienced in prosecuting class litigation.

### B.    The Class Satisfies Rule 23(b)(3) for Settlement Purposes

Rule 23(b)(3)  allows a class action to be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) . "The Rule 23(b)(3)  predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Amchem*, 521 U.S. at 623. The predominance and superiority inquiries "will sometimes be easier to satisfy in the settlement context," *AIG Sec. Litig.*, 689 F.3d at 240, because the court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

For purposes of effecting the settlement, Electrolux stipulates to the existence of predominant questions of law and fact common to all members of the proposed Settlement Class based on Electrolux's manufacture of the Dryers between January 1, 2002, and December 31, 2011. Electrolux further stipulates, for the purpose of this settlement, to the superiority of the Settlement Class and the Settlement Agreement over continued litigation. As described above, the settlement will provide multiple benefits to all Settlement Class Members, will reimburse Dryer-fire subclass members for their economic loss, and will provide cleaning services to any class member who has experienced an overheating event with in the first five years of purchase. The settlement also relieves class members from engaging in time consuming, costly litigation. *See, e.g.*, *In re NVIDIA GPU Litig.*, 539 F. App'x 822, 825 (9th Cir. 2013) (certifying class for settlement purposes and finding that the Rule 23(b) predominance requirement is met where "the common question of fact applicable to all class members—whether the computer chip was defective and, if so, whether it caused the problems that some buyers experienced—is the core of the case").

To be sure, Plaintiffs allege various claims that likely would have to be adjudicated under the laws of class members' respective home states. *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (noting that a state must have significant contacts to the claims asserted by each member of the plaintiff class in order to ensure the choice of state law is not arbitrary or unfair). Although adjudication under the laws of up to 50 states would make certification for <u>trial</u> difficult, state-law differences will not defeat a finding of predominance for a nationwide <u>settlement</u> class. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d

19

516, 530 (3d Cir. 2004) (noting the "fact that there may be variations in the rights and remedies available to injured class members under the various laws of the fifty states in this matter does not defeat commonality and predominance"); *Hanlon*, 150 F.3d at 1022 (noting that "[v]ariations in state law do not necessarily preclude a 23(b)(3) action" for settlement); *accord In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 974 (N.D. Ill. 2011); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012). This is because "the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those [state-law] variations are irrelevant to certification of a settlement class." *Warfarin Sodium*, 391 F.3d at 529; *see also Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 102 n.13 (3d Cir. 2013).

Nor does the fact that the individualized questions of injury and damages preclude certification of the proposed Settlement Class. Although the presentation of individualized proofs of injury and damages would make a class trial unmanageable and inefficient, that same concern is not present with settlement classes. *See, e.g.*, *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on April 20, 2010*, 910 F. Supp. 2d 891, 924 (E.D. La. 2012) ("[C]ertain causation issues remain that would have to be decided on an individual basis were the cases not being settled. . . . These limited individualized issues do not defeat predominance in light of the core common issues that are appropriate for classwide treatment."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). To the contrary, the Settlement Agreement directly resolves issues of injury and damages: any class member who has experienced or experiences in the future a Dryer fire within the first 10 years after purchase is entitled to reimbursement for his or her out-of-pocket losses from that fire (and can later seek recovery for any personal injury or other property damage); any class member who has experienced a qualifying performance problem is entitled to a free cleaning service by an

20

authorized service technician; and any class member who has not experienced a fire or other malfunction will receive information on preventing dryer fires and is entitled to a rebate to assist in replacing his or her Dryer. Because this proposed resolution of injury and damages questions will not pose any management concerns to the Settlement Class, common issues predominate in this settlement class. *See, e. g.*, *In re FEMA Trailer Formaldehyde Prod. Liab. Litig*., No. 2:07-MD-1873, 2012 WL 4513344, at *3 (E.D. La. Sept. 27, 2012) (finding predominance where, inter alia, "the Settlement sufficiently addresses issues of product identification, causation, injury and damages, which otherwise would be considered individual in a litigated class").

Accordingly, the Rule 23(a) and (b) requirements for certification of the proposed Settlement Class are satisfied, and that class should be certified here.

## III.    THE NOTICE AND DISTRIBUTION PLAN ARE REASONABLE

Rule 23(c)(2)(B) requires that, "[f]or any class certified under Rule 23(b)(3) , the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (notice of a class action settlement must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *accord Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994). Notice is deemed satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., LLC v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004)) (internal quotation marks omitted).

The parties jointly proposed a settlement notice plan in their joint motion for preliminary approval. (Joint Mot., Ex. B Peak Decl., ECF No. 145-2.) The Court

21

approved this plan in its Preliminary Approval Order and found that it "meets the requirements of due process and Fed. R. Civ. P. 23(c) and (e), is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice." (Prelim. Approval Order at 7,¶ 10, ECF No. 150.) The parties and the settlement administrator have complied with the notice requirements prescribed in the Preliminary Approval Order. (*See* Peak Decl., ECF No. 152.)

Taken together, the notice plan components satisfy the requirement of Rule 23 and the Due Process Clause that the Court provide to the Settlement Class the best notice practicable under the circumstances. *See, e.g.*, *Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause.").

## IV.    THE COURT SHOULD OVERRULE ALL OBJECTIONS

Out of the estimated 6,400,000 Class Members, only 12 individuals objected to the settlement, three of whom are represented by counsel. The small number of Class Members who have objected to the settlement further supports the fairness and reasonableness of the settlement. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1018 (S.D. Ohio 2001) ("Generally, a diminutive amount of objectors may signify that a settlement is fair."). "Indeed, even if a majority of the class is opposed to the settlement," the Court could approve the settlement "as long as [it] determine[s] that the overall settlement is fair, adequate, and reasonable under the circumstances and as a whole." *Id.*  Preliminary approval of a class settlement provides the imprimatur that the settlement is presumptively "valid" and "reasonable" and, therefore, objectors bear a "heavy burden" of demonstrating the settlement is unreasonable. *United States v. State of Or.*, 913 F.2d 576, 581 (9th Cir. 1990) (quoting *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)). The Court should overrule these objections.

Counsel for four objectors appear to be professional objectors. Courts provide additional scrutiny to boilerplate objections to class-action settlements filed by such professional objectors. "[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost." *Barnes v. Fleetboston Fin. Corp.*, No. CA 01-10395-NG, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006); *see also In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1109 (D. Minn. 2009) (noting that objector's counsel's goal "was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement").

None of the objectors is able to bear her "heavy burden" of showing that the settlement is unreasonable. For example, six of the unrepresented objectors have objected based on perceived safety reasons that the settlement does not provide for repair or replacement of their dryers. But, the Dryers are not defective and the fact of the matter is that all dryers pose a risk of catching fire—especially if consumers fail to properly maintain and care for them. Still, Electrolux manufactured ball-hitch dryers are <u>six times</u> less likely to catch fire than all dryers in use. All manufacturers' dryer Use & Care guides prescribe periodic dryer cleanings by an authorized servicer because it is the right way to maintain a dryer as evidenced by Underwriters Laboratory (UL)/American National Standards Institute (ANSI) 2158 Electric Clothes Dryer standard and the CPSC safety alert on dryers that prescribe periodic dryer cleanings by a qualified servicer. These objectors fail to appreciate that consumers must take responsibility for maintaining and caring for their dryers, including having them cleaned of lint. Manufacturers are not responsible for routine maintenance and cleanings. These objectors' misapprehensions about dryer maintenance and care should not block approval of this settlement, which includes a reminder notice about precisely what care and cleaning dryer owners should undertake.

Another unrepresented objector objected based on a confusion:  He thought the rebate applied only to certain dryer models. But that is incorrect: the rebate applies to all Electrolux- and Frigidaire- brand dryers, and other select Electrolux- and Frigidaire- brand appliances. This objector can use the rebate on any Electrolux or Frigidaire dryer.

The objectors represented by counsel object generally to the class benefits. (*See, e.g.*, Hall Objection at 6-9, ECF No. 155; Newman Objection at 2-11, ECF No. 154.) But these objections are meritless and based on misunderstandings of the class benefits and a failure to recognize that the benefits are commensurate with a class member's Dryer experience—the overwhelming majority of whom have experienced <u>no issues</u> with their Dryers.

The 99% of Class Members whose dryers operate normally and who have not suffered any cognizable injury can receive a rebate or discount on an Electrolux or Frigidaire appliance. All Class Members have received or have access to a dryer cleaning advisory that reminds them of the proper way to clean and maintain their Dryers to reduce the risk of fire. Every Class Member's Dryer's Use & Care guide contains these instructions, but the cleaning advisory is a reminder of those same instructions. Those Class Members whose Dryers experienced a particular kind of performance problem that suggests improper installation, maintenance, and cleaning, such as excessively long dry times, scorched laundry, or overheating, may receive a free dryer cleaning. But, as noted above, this cleaning is typically the consumer's responsibility as a part of regular maintenance, and is not due to any alleged defect; this cleaning provides a substantial benefit to eligible class members. Finally, for those class members who have or will experience a dryer fire with in the first 10 years after purchase, they can recover their economic loss for the cost of repairing or replacing the dryer or for other out-of-pocket-unreimbursed expenses caused by the dryer fire. If these Class Members' Dryer fires caused personal injury or property damage other than

24

1   to the Dryers themselves, they can still pursue their claims against Electrolux.

2   Electrolux, in turn, can defend itself based on the individualized circumstances of

3   each Dryer fire.

4          All of these are substantial benefits to the Settlement Class Members and

5   are commensurate with each Class Member's Dryer experience.

6          Even if all of the objecting Class Members' allegations are assumed to be

7   accurate, the objections do not call into question the overall fairness, adequacy, or

8   reasonableness of the settlement. For those objectors who believe that their special

9   circumstances justify some benefit or compensation not afforded to other Class

10  Members, their remedy is to opt out. Opt outs are the mechanism through which

11  class settlements handle such individual circumstances.

12         In short, the settlement and class benefits are fair, reasonable, adequate, and

13  the Court should overrule all objections to the settlement.

14                              **<u>CONCLUSION</u>**

15         For all these reasons, Electrolux respectfully requests that the Court (1)

16  grant final approval of the parties' settlement, (2) overrule all objections to the

17  settlement, and (3) enter final judgment in this case. A proposed form of order is

18  submitted as Exhibit A to the parties' Joint Motion for Final Approval.

19

20  Dated: August 8, 2014                    Respectfully submitted,

21                                           Wheeler Trigg O'Donnell LLP

22

23                                    By: *s/ Michael T. Williams*
24                                           Michael T. Williams
                                             of Wheeler Trigg O'Donnell LLP
25                                           Attorney for Defendant,
26                                           Electrolux Home Products, Inc.

27

28

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on August 8, 2014, I electronically filed the foregoing **DEFENDANT ELECTROLUX HOME PRODUCT INC.'S MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Gretchen M. Nelson [gnelson@kreindler. com]
KREINDLER & KREINDLER LLP

Edward Wallace [eaw@wexlerwallace. com]
Amy Keller [aek@wexlerwallace. com]
Dawn Goullet [dmg@wexlerwallace. com]
WEXLER WALLACE LLP

Erin Dickinson [edickinson@hrdclaw. com]
Charles Crueger [ccrueger@hrdclaw. com]
HANSEN REYNOLDS DICKINSON CRUEGER LLC

Gregory Coleman [greg@gregcolemanlaw. com]
Mark Silvey [mark@gregcolemanlaw. com]
GREG COLEMAN LAW PC

Attorneys for Plaintiffs

*s/ Michael T. Williams*
Michael T. Williams

ELECTROLUX'S MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL
MASTER FILE NO. SACV12-1644-CAS(VBKx)