EDWARD A. WALLACE (*pro hac vice*)
AMY E. KELLER (*pro hac vice*)
DAWN M. GOULET (*pro hac vice*)
**WEXLER WALLACE LLP**
eaw@wexlerwallace.com
aek@wexlerwallace.com
dmg@wexlerwallace.com
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

(*Additional Counsel Appear on Signature Page*)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SHAWN ROBERTS, et al.;<br><br>Plaintiffs,<br><br>vs.<br><br>ELECTROLUX HOME PRODUCTS, INC.,<br><br>Defendants. | Master File No. SACV12-1644-CAS(VBKx)<br><br>CLASS ACTION<br><br>**PLAINTIFFS'AND CLASS COUNSEL'S RESPONSE TO KRISTINA K. NEWMAN & JOYCE MILLER'S OBJECTIONS TO THE CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING**<br><br>Action Filed: September 27, 2012<br><br>The Honorable Christina A. Snyder<br><br>Date: August 18, 2014<br>Time: 10:00 a.m.<br>Courtroom: 5—2nd Floor |
| This Document Relates To: All Actions. | |

## I. INTRODUCTION

"[B]e wary of self-interested professional objectors who often present rote objections to class counsel's fee requests and add little or nothing to the fee proceedings." Rothstein, Barbara J. & Willging, Thomas E. (Federal Judicial Center, 2012), *Managing Class Action Litigation: A Pocket Guide for Judges*, at 24. That sage advice is applicable here. The objections filed by Kristina K. Newman and Joyce Miller ("Objectors"), through their counsel Steve A. Miller, John C. Kress, and Jonathan E. Fortman, are lawyer-driven objections by professional objectors. The objection is really a fallacious polemic as it is based on sweeping inaccuracies or purposeful misrepresentations that assume the only reasonable settlement is a recall of the Dryers and cash paid to class members – which is not a settlement at all and is potentially more than the class could attain if it obtained class certification, won at trial, and then prevailed on appeal.

Plaintiffs and Class Counsel request that Court sanction these professional objectors under 28 U.S.C. § 1927, which authorizes the Court to sanction attorneys who unreasonably and vexatiously multiplies the proceedings before it by, for example, bringing frivolous objections. In the context of § 1927, frivolousness is understood as "referring to legal or factual contentions so weak as to constitute objective evidence of improper purpose." *In re Girardi,* 611 F.3d 1027, 1062 (9th Cir.2010). Here, the objections are clearly made—per these attorneys' well-documented *modus operandi*—for no other apparent purpose than threaten delay in order to extort an undeserved fee. As such, Plaintiffs request that their objections be stricken or denied and that the Court order these professional objectors "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

2

PLAINTIFFSAND CLASS COUNSEL'S RESPONSE TO KRISTINA K. NEWMAN & JOYCE MILLER'S OBJECTIONS TO THE CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING
MASTER FILE NO. SACV12-1644-CAS(VBKx

## II. ARGUMENT

### A. These are Lawyer-Driven Objections by Professional Objectors with a Documented History of Vexatious Litigation Tactics.

The Objectors' counsel have the distinction of being well-known and recognized by Courts for routinely filing baseless objections to class action settlements. *See*, *e.g.*, *In re Groupon, Inc., Marketing and Sales Practices Litig.*, No. 11-2238 (S.D. Cal.) (attorney Maureen Connors and her relative Aileen Connors served as objectors; Kessinger, Miller, Fortman, and Kress served as counsel); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal.) (objector Kelly Kress represented by attorneys Miller, Fortman, and John Kress); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, MDL No. 1532, 2011 U.S. Dist. LEXIS 40843, *29-30 n.22 (D. Me. Apr. 13, 2011) (arguments raised by Mr. Miller rejected as "specious"); *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-08141-DAB, 2012 U.S. Dist. LEXIS 13784, *9-10 (Mr. Miller's objection that the requirements for filing a claim were too complicated rejected as "speculative"); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997 (E.D. Wis. 2010) (overruling objections by Mr. Kress and Mr. Fortman); *In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig.*, MDL No. 2086, 2010 U.S. Dist. LEXIS 106888 (W.D. Mo. Oct. 4, 2010) (overruling objections by Mr. Fortman on behalf of objector John Kress). Mr. Miller often files objections in different cases on behalf of the same clients, calling into the question the legitimacy of those objections. *See, e.g.*, *Blessing v. Sirius XM Radio Inc.*, No. 09-cv-10035, ECF No. 167 (S.D.N.Y. Sept. 14, 2011) (on behalf of Jeannine Miller); *In re Lawnmower Engine Horsepower Marketing & Sales Practices Litig.*, MDL No. 1999, ECF No. 272 (E.D. Wis. June 22, 2010) (same); *Nakash v. nVidia Corp.*, No. 08-cv-04312-JW, ECF No. 325 (N.D. Cal. Jan. 14, 2011) (same); *In re*

3

PLAINTIFFS AND CLASS COUNSEL'S RESPONSE TO KRISTINA K. NEWMAN & JOYCE MILLER'S OBJECTIONS TO THE CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING
MASTER FILE NO. SACV12-1644-CAS(VBKx)

*Mattel, Inc. Toy Lead Paint Prods. Liab. Litig*, MDL No. 1897, ECF No. 194 (C.D. Cal. Feb. 19, 2010) (same); *CLRB Hanson Inds., LLC v. Google, Inc.*, No. C 05-03649 JW PVT, ECF No. 326 (N.D. Cal. July 10, 2009) (same).

In sum, these lawyers routinely file frivolous objections the purpose of which is to delay the approval of class action settlements, and thus delay the benefits owed to the class under the settlement, to extract fees from plaintiffs' counsel. As one judge observed in connection with another objection filed by this counsel: "The attorney's lack of concern for factual accuracy or supportable legal position is of great concern to the court. . . . The court does not intend to allow this class action litigation which affects the rights of over 14,000 class members, to be derailed by uninformed or careless counsel…" *Fielder v. Credit Acceptance Corp.*, No. CV96-24285-01 at 5 (Mo. Cir. Ct., Sept. 6, 2007). As another federal judge all-too familiar with this group noted: "Professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing. . . ." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011). This case is but another example.

**B.     The Objections Lack Evidentiary Support.**

In its Order preliminarily approving the Settlement the Court found that the Settlement was presumptively valid and reasonable and, therefore, the Objectors must satisfy a "heavy burden" to demonstrate that it is, in fact, unreasonable. *United States v. State of Or.*, 913 F.2d 576, 581 (9th Cir. 1990) (quotations omitted). The Objectors make no effort to even try to meet this burden; they attach no evidence or expert testimony to support their arguments and their submission lacks legal authority supporting their positions. *In re Toyota*

4

*Unintended Acceleration*, No. 10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, *310-311 (C.D. Cal. July 24, 2013). Their entire objection is just speculative attorney argument, and it is long-established that "attorney arguments cannot be offered as evidence in any proceeding…." *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1062 (S.D. Cal. 2007).

### C. The Objectors' Fundamental Premise Lacks Merit.

The Objectors simply assume that the Dryers are defective and a fire hazard and, therefore, anything short of an order removing them from the consumers' homes (or cash payments) is unreasonable and provides no relief. The Objectors state (at 3 and without citation to a single fact) that "the facts produced indicate that the product is inherently dangerous to the consumer due to the continued risk of combustion," and "people with common sense and those who value their homes and families reduce fire hazards by eliminating dangerous products- not cleaning the product." They also state (at 4, and again without any factual support) that "the parties appear to agree that all such dryers will catch fire, and it is only a matter of time as to when such tragedy occurs." There are several obvious problems with the Objectors positions.

First, Electrolux in no way agrees that Dryers are defective or inherently dangerous and a fire hazard. Electrolux could not have been clearer on this point in the Notice the parties filed with Court: "Electrolux denies that there is any defect in its Dryers or that the Dryers pose any unreasonable fire hazard to consumers. Electrolux also denies that it violated any law or engaged in any wrongdoing." (Dkt. 145-1 at 14.) Plaintiff also made this point clear in its memorandum supporting the joint motion for preliminary approval: "Electrolux continues to vigorously deny Plaintiffs' defect allegations, denies any liability for any claims that have or could have been raised regarding the Dryers in this lawsuit, maintains

5

that its dryers are not defective, asserts numerous defenses to Plaintiffs' claims, and intends to continue to vigorously defend and litigate the insurance companies', subrogrees', and individual Dryer owners' Dryer fire claims for alleged property damage and personal injury…." (Dkt. 146 at 8.)

Second, the professional objectors clearly assume that any Dryer that requires regular cleaning is defective and should be removed from the consumer's home. They cite no evidence or expert evidence to support this contention and obviously made no investigation into whether their contentions either have or would likely have evidentiary support. Indeed, a rudimentary internet search would have shown that even the U.S. Consumer Protection Safety Commission recommends that consumers "[h]ave a qualified service person clean the interior of the dryer chassis periodically to minimize the amount of lint accumulation."[1]

Indeed, what the Objectors disregard in arguing that nothing short of a recall and full refund represents an adequate settlement is the standard for a fair, reasonable and adequate settlement has never required Plaintiffs achieve total victory on disputed claims. "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027; *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." (emphasis in original) As the court in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Products Liability Litig.* stated:

---

[1] CPSC Safety Alert: Overheated Clothes Dryers Can Cause Fires, available at http://www.cpsc.gov/PageFiles/118931/5022.pdf (last visited on August 11, 2014).

6

> Settlement is born of compromise, and settling plaintiffs trade the risk of recovering nothing for a reward that is necessarily less than their full *potential* recovery. When a particular tradeoff between the risk and the potential for reward is rationally made, and when the resulting settlement is a fair, adequate, and reasonable result for the class, that settlement is entitled to approval. This is true even when the class must be content with a less than full recovery of their actual damages.

No. 8:10 ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, *270 (C.D. Cal. July 24, 2013).

In fact, notably absent from the Objectors' brief is any mention, let alone a discussion, or the factors courts consider when evaluating whether a proposed class action settlement is fair, reasonable, and adequate, namely (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026)). An important consideration in judging the reasonableness of a settlement is to balance "'the strength of the plaintiffs' case on the merits . . . against the amount offered in the settlement.'" *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender 3d. ed.)). This assessment, however, "is not to be turned into a trial or rehearsal for trial on the merits." *Officers for Justice*, 688 F.2d at 625. To the contrary, the court's consideration of the likelihood of success on the merits is "nothing more than an amalgam of delicate balancing, gross

1 approximations and rough justice." *Id.* (citation and internal quotation marks
2 omitted).

3   This case has been a three-year, contentious battle with extensive fact and
4 expert discovery regarding technical allegations that are disputed among the
5 parties to this day. The hard-fought settlement was negotiated where both the
6 mediator presiding over the negotiations and the Court in its Preliminary Approval
7 Order found there was no collusion, that the settlement was negotiated in good
8 faith and provided real benefit to the Class. Declaration of Jonathan Marks, ECF
9 No. 153, Ex. 2 ("Marks Decl.") at ¶¶8-26. Class Counsel set forth in great detail
10 the safety as well as monetary benefits of the Settlement in their Application for
11 Attorneys' Fees and Expenses, ECF No. 153 at 9-13. Counsel provided expert
12 testimony supporting these benefits by Mr. Frank Bernatowicz and Dr. Marthinus
13 Van Schoor. Declaration of Edward A. Wallace, ECF No. 153, Ex. 1 ("Wallace
14 Decl."), at Ex. D. Indeed, the Objectors blithely disregard how the Settlement is a
15 reasonable compromise of contested positions that seeks to advance public safety
16 goals by preventing fires and provide monetary relief to those who have had or
17 will have a fire.

18   In the end, the Objectors' position is that a settlement aimed at avoiding
19 fires and reducing the risk of personal injury or death provides no benefit to the
20 class. In fact, they actually write (at 10) that reducing fires by the cleaning and
21 safety notice and educating technicians to clean lint from behind the drum "serves
22 only the interests of the Defendant in reducing future claims for damages by class
23 members for dryer fires," and (at 11) "no value is added to the settlement." Such
24 crass attorney argument only underscores how the professional objector's end-
25 game of delay diverges sharply with the best interests of the Class.

To claim, as Objectors do here, that anything short of a recall is a presumptively "inadequate" settlement and indicates nefarious motives of counsel or that counsel has "abandoned" their clients so clearly misstates the law and facts as to constitute objective evidence of improper purpose under 28 U.S.C. § 1927. The Objectors' objection should be stricken or denied and their professional-objector counsel sanctioned for unnecessarily multiplying these proceedings.

### D. The Settlement is Not a "Coupon" Settlement

Also without merit is the Objectors' characterization of the Settlement throughout their brief as solely "a coupon settlement." As the professional-objectors are undoubtedly aware, "[a] coupon settlement is one 'that provides benefits to class members in the form of a discount towards the future purchase of a product or service offered by the defendant.'" *Kearney v. Hyundai Motor Co.*, No. SACV 09–1298–JST (MLGx), 2013 WL 3287996, *7 n. 5 (C.D. Cal. June 28, 2013). *See also True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) ("a coupon settlement is one where the relief constitutes 'a discount on another product or service offered by the defendant in the lawsuit'") (quoted case omitted). The plain language of the Settlement makes clear that this is not the case.

The dryer cleaning is clearly not "a coupon settlement," as the class member receives the cleaning for free. Settlement Agreement IV.B.7. Yet the Objectors (at 5) argue that "[t]his 'cleaning service' is nothing more than a coupon offered as a discount for service from a 'trained technician' who will then invoice the class member for the balance of the cleaning time, repairs made, and parts replaced." The statement that class members will be billed "for the balance of the cleaning time" is simply false and the settlement is clear that class members will pay nothing for the cleanings, even if they take 12 hours, as such costs are borne by the service technicians pursuant to their agreements with Electrolux, not by class

9

members. *See* Settlement Agreement at IV.B.7.   Just because a free cleaning service is not also a free repair service in the event a class members' dryer is broken does not turn the free cleaning service into a coupon settlement.

Likewise, the uncapped fund to provide monetary compensation for past and future dryer fires is not "a coupon settlement." Yet the professional objectors just ignore that aspect of the settlement and call the entire Settlement "a coupon settlement" anyway.

In fact, the Objectors baseless characterization of the Settlement as "a coupon settlement" also ignores how the Settlement's plain terms provide numerous other real, tangible and valuable benefits to the Settlement Class aimed at the safety, including training and guidance to authorized service technicians instructing them how to properly clean the Dryers so as to avoid fires from lint accumulating behind the Dryer drum (removing the Dryer drum and cleaning the lint near the heat source), a Customer Instruct Safety Notice (separate from the Settlement Notice) warning all Dryer owners that that lint may accumulate behind the drums of these Dryers, that fires could occur as a result, and provide specific cleaning instructions to avoid this fire hazard.

Simply put, the Objectors and their attorneys lack any good faith basis to characterize the entire settlement as a "coupon" settlement. Their legal or factual arguments that this is a coupon settlement is "so weak as to constitute objective evidence of improper purpose" that is sanctionable under § 1927. *In re Girardi*, 611 F.3d at 1062.

**E.     The Settlement Provides Real Benefits to Class Members.**

Class Counsel set forth in great detail the value of the safety, monetary, and non-monetary benefits provided to Class Members under the Settlement in their Application for Attorneys' Fees and Expenses, ECF No. 153 at 9-13.   For

10

PLAINTIFFSAND CLASS COUNSEL'S RESPONSE TO KRISTINA K. NEWMAN & JOYCE MILLER'S OBJECTIONS TO THE CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING
MASTER FILE NO. SACV12-1644-CAS(VBKx)

reference, the component values are as follows:

| Benefit Provided | Type of Relief | Projected Utilization Value |
|---|---|---|
| Compensation for Past and Future Dryer Fires | Monetary | $7.8 million |
| Safety-Related Service Program | Injunctive | $11.9 million |
| Safety Notice | Injunctive | $15.7 million |
| Total | | $35.4 million[2] |

These valuations are supported by the detailed expert opinions of Mr. Frank Bernatowicz who, assisted by Dr. Marthinus van Schoor, performed his analysis in accordance with accepted accounting practices similar to the methodology used to estimate warranty reserves and/or financial statement losses. *Id.* at 8. *See also* Declaration of Frank Bernatowicz, ECF Nos. 153-1, 153-2 and 153-3.

The Objectors point to no countervailing evidence of their own and advance only speculative arguments and conclusory statements that the Settlement has "zero value." *See In re Toyota Unintended Acceleration*, 2013 U.S. Dist. LEXIS 123298, *310-311 (rejecting unsupported objections to a proposed fee award where the objectors presented no expert declaration or other evidence undermining the Court's conclusions). Indeed, the Objectors incredible claim that the Settlement confers ***not a penny of value*** belies their frivolous position.

Objectors argue, for example, that dryer cleanings that cost Electrolux $100 but are provided at no cost to the consumer are "worthless." They claim (at 8) that the only way to confer $100 of value is to "establish a fund under which class

---

[2] The values here are calculated using Mr. Bernatowicz's "utilization rates," and not the total potential valuation if the entire Class participated (which would be close to $155 million). Wallace Decl., Ex. D.

11

PLAINTIFFS AND CLASS COUNSEL'S RESPONSE TO KRISTINA K. NEWMAN & JOYCE MILLER'S OBJECTIONS TO THE CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING
MASTER FILE NO. SACV12-1644-CAS(VBKx)

members could receive checks for $100.00." This argument is nonsensical and ignores the significant safety benefit of a dryer cleaning.

Objectors go on to contend that members of the Dryer Fire Subclasses are provided "no meaningful relief" because they are required to submit proof that they owned one of the subject Dryers or that it caught fire. *Id.* at 9-10. The Objectors actually contend (at 10) that instead Electrolux should be made to "[s]imply send a check for $1,300 to 25,655 class members who have experienced a past conflagration or are destined to experience one in the future," a ridiculous position that begs the question of how is Electrolux to identify those who experienced a fire in the past or will have a fire in the future. The answer, of course, is by having the Class member who had or will have a fire make a claim. This is not, however, an unreasonable or onerous condition. The objectors' meritless contentions otherwise pay no heed to common-sense or to how courts routinely find that requiring consumers to provide the serial number for their products "is a reasonable measure to avoid fraud" in class action settlements. *See, e.g.*, *In re Apple iPhone 4 Prods. Liab. Litig.*, No. 5:10-md-2188 RMW, 2012 U.S. Dist. LEXIS 113876, *11 (N.D. Cal. Aug. 10, 2012). Indeed, a homeowner who experiences an appliance fire in the home often calls the manufacturer, the seller, or their insurer to complain, documents the fire through photographs or is able to obtain information sufficient to identify the product from investigations performed by the local fire department or the homeowners' insurance carrier. Under the Settlement, a number of reasonable forms of documentation are accepted and, contrary to Objectors unsupported statements, it is not possible for Electrolux to determine solely from its records the identity of each member of the Dryer Fire Subclasses, their purchase price, and whether they have already been fully compensated by a retailer or through insurance coverage.

Finally, the Objectors argue that the Safety Notice is "valueless" on the grounds that it is purportedly something Electrolux was required to do anyway. Objectors cite to no requirement obligating Electrolux to send each of its customers a safety notice—because none exists as it was a bargained for term of the Settlement—and Electrolux certainly has never sent such a notice prior to this Settlement. Their argument that a safety notice aimed at preventing fires has "no value" simply defies logic. *See*, *e.g*., FEMA Report, "Clothes Dryer Fires in Residential Buildings (2008-2010) ("FEMA Report") (clothes dryer fires cause an average of 5 deaths, 100 injuries and $35 million of property loss per year).[3]

The Objectors "not a penny of value" argument is false hyperbole unsupported by any evidence or expert opinion; it is frivolous as it is "so weak as to constitute objective evidence of improper purpose," *In re Girardi,* 611 F.3d at 1062, namely to delay this case and for their own self-interest and personal gain.

### F. The Requested Attorneys' Fees are Appropriate.

Objectors additionally argue (at 14) that the Court must closely scrutinize Class Counsel's request for attorneys' fees because the Settlement Agreement contains a so-called "clear sailing provision," pursuant to which Electrolux agrees not to challenge a Court-awarded fee so long as it did not exceed $8 million. Such provisions are common, however, and do not necessarily demonstrate that a Settlement is the product of collusion between the parties. Indeed, approvals of settlements containing such provisions frequently withstand even heightened scrutiny where, as here, the fee amount is justified by the benefits realized by the class and is the result of repeated negotiations before a well-respected neutral. *See*, *e.g.*, *Hohenberg v. Drey (In Ferrero Litig.)*, No. 12-56469, 2014 U.S. App.

---

[3] *available at* http://www.usfa.fema.gov/downloads/pdf/statistics/v13i7.pdf.

LEXIS 13780, *6 (9th Cir. July 16, 2014); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, *26-27 (N.D. Cal. July 11, 2014). This Court has held that such provisions are "appropriate" where fees are negotiated separately and "do[] not impact the substantive benefits offered to the class." *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 U.S. Dist. LEXIS 14301, *28 (C.D. Cal. Jan. 30, 2014) (citing *Shames v. Hertz Corp.*, No. 07-cv-2174-MMA(WMC), 2012 U.S. Dist. LEXIS 158577, at *43-45 (S.D. Cal. Nov. 5, 2012)).

Here, the parties participated in two full mediation sessions before Jonathan B. Marks, a well-respected mediator who submitted a declaration stating that the parties reached an understanding regarding the benefits to be provided to class members under a proposed nationwide class settlement before ever addressing the subject of Class Counsel's fees. *See* Marks Decl. at ¶17. As Class Counsel has moreover made clear in numerous filings, the benefits available to class members under the Settlement are not capped and will not be reduced in any way by payment of the requested attorneys' fees. *See, e.g.*, Pls.' Mem. of Law in Support of Preliminary Approval, ECF No.146, at 7, 12, 14.

**G.    The Class Representatives Have no Conflicting Interests.**

Finally, Objectors argue (at 15-19) that three of the five appointed Class Representatives suffer from a conflict of interest preventing them from fairly and adequately protecting the interests of the Class because they have entered into separate settlements with Electrolux for their individual, non-class property damage claims. Objectors argue that this is improper because the three Class Representatives are not required to submit claim forms in connection with the settlement of their individual claims and "are receiving compensation which is not available to any other member of the class." *Id.* This fundamentally misstates the

14

terms of the Settlement, which specifically carves out claims for property damage. As such, compensation for such claims is *by definition* still available to all members of the Class possessing such claims who wish to pursue them (either informally, through Electrolux's internal claims procedures, or formally through litigation).

The three Class Representatives who have such claims happen to have already engaged in litigation and subjected themselves to extensive discovery (including day-long depositions) dealing in part with these claims. They should not be forced to forego compensation for these valuable claims or to bring new, duplicative litigation in order to enter into an agreement with Electrolux to resolve them. This would put the Class Representatives at a significant disadvantage compared to other members of the Class and would act as a perverse disincentive to consumers who purchase products that have manifested defects from serving as class representatives.

Pointing to cases standing only for the well-known and uncontested general principle that adequate class representatives and class counsel must not have interests that conflict with those of the class, Objectors fail to cite a single case in which a class representative was found to be inadequate for settling his or her individual, non-class claims. Objection at 15-19. Indeed, in the only case that even touches on the issue, the Ninth Circuit held that the district court properly inquired into whether impermissible conflicts were present, found the settlement was reached during arm's length negotiations, and did not abuse its discretion in finding that the class was adequately represented. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Other cases Objectors rely on for the proposition that the settlement of a class representative's individual, non-class claims amounts to an ethical violation

15

PLAINTIFFS AND CLASS COUNSEL'S RESPONSE TO KRISTINA K. NEWMAN & JOYCE MILLER'S OBJECTIONS TO THE CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING
MASTER FILE NO. SACV12-1644-CAS(VBKx)

by class counsel likewise share absolutely nothing in common with the facts of this case. *See*, *e.g.*, *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) (undisclosed incentive payments to class representatives were secretly agreed to as part of their up-front retainer agreements with class counsel); *Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1358 (9th Cir. 1998) (plaintiff's counsel in antitrust litigation simultaneously represented a division of the defendant's company in other matters).

Cases actually dealing with the issue demonstrate that there is nothing inherently improper about the settlement of a class representative's individual, non-class claims. *See*, *e.g.*, *Hillgamyer v. Reliastar Life Ins. Co.*, No. 11-cv-729-wmc, 2013 U.S. Dist. LEXIS 147457, *2 (W.D. Wis. Oct. 4, 2013) ("pursuit and settlement of [a class representative's] individual claim is in and of itself not incompatible with her serving as the class representative"). Indeed, courts only take issue with such settlements where the scope of the class release broadly sweeps up similar claims held by class members without providing them with corresponding compensation (*Hillgamyer*, 2013 U.S. Dist. LEXIS 147457 at *2), or where compensation for the individual claims reduces the size of the overall settlement fund (*Sandoval v. Roadlink USA Pac., Inc.*, No. EDCV 10-00973 (VAP) (DTBx), 2011 U.S. Dist. LEXIS 130378, *16 (C.D. Cal. Oct. 9, 2011)).[4] Neither situation is present here.

---

[4] *See also* William Rubenstein, Alba Conte & Herber B. Newburg, Newburg on Class Actions (4th ed. 2002 & Summer 2014 Supp.) § 15:27 ("Normally, unless a class representative has unique claims apart from those common with the class, the named plaintiff may not obtain a disproportionate or preferential allocation from a lump sum class recovery.") Here, the three Class Representatives at issue *do* have unique non-class claims and *do not* seek payment from a fixed, lump sum settlement fund.

16

PLAINTIFFS AND CLASS COUNSEL'S RESPONSE TO KRISTINA K. NEWMAN & JOYCE MILLER'S OBJECTIONS TO THE CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING
MASTER FILE NO. SACV12-1644-CAS(VBKx)

### III. CONCLUSION

The brief the Objectors submitted makes plain that it is not a good-faith objection by those looking to protect the class but a baseless submission by known professional objectors filed for no other apparent purpose than threaten delay in order to extort an undeserved fee. Not only should the Court either strike or deny these meritless objections, but Plaintiff requests that the Court order these professional objectors "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Date: August 11, 2014

Respectfully submitted by: /s/ Amy E. Keller

**WEXLER WALLACE LLP**
EDWARD A. WALLACE
AMY E. KELLER
DAWN M. GOULET
eaw@wexlerwallace.com
aek@wexlerwallace.com
dmg@wexlerwallace.com
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

**KREINDLER & KREINDLER LLP**
GRETCHEN M. NELSON
gnelsen@kreindler.com
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

PLAINTIFFS AND CLASS COUNSEL'S RESPONSE TO KRISTINA K. NEWMAN & JOYCE MILLER'S OBJECTIONS TO THE CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING
MASTER FILE NO. SACV12-1644-CAS(VBKx)

**HANSEN REYNOLDS DICKINSON CRUEGER LLC**
ERIN DICKINSON
CHARLES CRUEGER
edickinson@hrdclaw.com
ccrueger@hrdclaw.com
316 North Milwaukee Street, Suite 200
Milwaukee, Wisconsin 53202
Telephone: (414) 455-7676
Facsimile: (414) 273-8476

**GREG COLEMAN LAW PC**
GREGORY F. COLEMAN
greg@gregcolemanlaw.com
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, Tennessee 37902
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

*Attorneys for the Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on August 11, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Amy E. Keller
Amy E. Keller
