EDWARD A. WALLACE (*pro hac vice*)
AMY E. KELLER (*pro hac vice*)
DAWN M. GOULET (*pro hac vice*)
**WEXLER  WALLACE LLP**
eaw@wexlerwallace.com
aek@wexlerwallace.com
dmg@wexlerwallace.com
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

(*Additional Counsel Appear
on Signature Page*)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SHAWN ROBERTS, et al.;<br><br>                    Plaintiffs,<br><br>         vs.<br><br>ELECTROLUX HOME PRODUCTS, INC.,<br><br>                    Defendants. | Master File No. SACV12-1644-CAS(VBKx)<br><br>CLASS ACTION<br><br>**PLAINTIFFS' AND CLASS COUNSEL'S RESPONSE TO PATRICK SWEENEY'S OBJECTIONS TO THE CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING AND MOTION FOR SANCTIONS**<br><br>Action Filed: September 27, 2012<br><br>The Honorable Christina A. Snyder<br><br>Date: August 18, 2014<br>Time: 10:00 a.m.<br>Courtroom: 5—2nd Floor |
| This Document Relates To: All Actions. | |

## I.   <u>INTRODUCTION</u>

For years, both Attorneys Patrick Sweeney and Darrell Palmer have made a living objecting to class action settlements.  These attorneys have a pattern of asserting baseless objections "on behalf of their clients" for the sole purpose of hijacking legitimate settlements, hoping that the attorneys advocating a particular settlement will pay a premium to avoid the objections or the delay an appeal process can trigger.  Indeed, both Sweeney and Palmer often act as cohorts,[1] lodging objections to settlements ranging from "absurd" to "false."  *See, e.g., City of Roseville Empls. Ret. Sys. v. Orloff*, No. 11-35455, 2012 U.S. App. LEXIS 11512, **7-8 (9th Cir. June 7, 2012) (Mr. Palmer's appeal of an award of attorneys' fees found to be "meritless" and based upon misapprehensions of the law); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, **22-24 (N.D. Cal. July 11, 2014) (overruling objections and recognizing that "[l]ike Darrell Palmer, attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings"); *In re Dell Sec. Litig.*, No. A-06-CV-726-SS, ECF No. 342 (W.D. Tex. Jan. 11, 2011) (Palmer's objection showed "little respect for the intelligence of this Court."); *In re BP Oil Spill*, No. 13-30095 (5th Cir.)(Palmer and co-counsel Theodore Harold Frank "made inaccurate representations" to a district court and failed to "apprise [their clients] of multiple factual inaccuracies contained in written and verbal submissions of counsel,")(filings attached as Composite Exhibit B.)[2]

---

[1] *See, e.g., In re Magsafe Apple Power Adapter Litig.*, No. 09-cv-1911-JW (N.D. Cal.) (Mr. Palmer, representing Kerry Ann Sweeney); *Arthur v. Salle Mae, Inc.*, No. 10-cv-00198-JLR (W.D. Wa.) (Mr. Palmer, among others, representing Patrick Sweeney).

[2] Mr. Palmer has also been disbarred from a period of time from the State Bars of California, Arizona, and Colorado, and has been reprimanded by several courts for intentionally failing to mention such facts in *pro hac vice* applications.  *See Arthur v. Sallie Mae, Inc.*, No. C10-0198JLR, Tr. of Hrg. at 7:7-10:22 (W.D. Wash. Sept.

1   Now Sweeney and Palmer have teamed up yet again, this time with Palmer

2   representing Sweeney as *the client* who purportedly has "objection" to this

3   settlement.   Palmer and Sweeney know the game, and throw out terms like

4   "illusory," "arbitrary" and "valueless" to describe the Settlement, and falsely call

5   the Settlement nothing but a "coupon settlement" designed solely to benefit Class

6   Counsel at the expense of the Class.  To support this fallacy, they summarily

7   dismiss every aspect of this multi-faceted Settlement as conferring "no benefit" to

8   the Class, even going so far as to argue that preventing dryer fires has "no benefit"

9   to Dryer owners.  Of course, their allegations of "valuelessness" are unsupported

10  by any attempt to value the Settlement on their part—such as via a retained

11  expert—and are demonstrably false.  As the evidence plainly shows—preventing

12  dryer fires would have a benefit to the Settlement Class.  *See*, *e.g*., FEMA Report,

13  "Clothes Dryer Fires in Residential Buildings (2008-2010) ("FEMA Report")

14  (clothes dryer fires cause an average of 5 deaths, 100 injuries and $35 million of

15  property loss per year).[3]

16  When the rhetoric is peeled back, Sweeney and Palmer's "objection" is

17  nothing more than baseless mudslinging and their position that a settlement

18  representing  anything less than total victory (a recall of all Dryers and a return of

19

20  14, 2012) (attached hereto as Exhibit A, granting plaintiffs' motion for revocation
    of Mr. Palmer's *pro hac vice* application because of his fraud on the court); *Herfert*

21  *v. Crayola, LLC*, No. C11-1301-JCC, ECF No. 74 (W.D. Wash. Aug. 17, 2012)
    (denying Mr. Palmer's *pro hac vice* application).

22
    And as recently as July 11, 2014, the State Bar of California recommended that

23  Mr. Palmer be suspended for 90 days with two years' stayed suspension and two
    years' probation.  *See In the Matter of Joseph Darrell Palmer*, 12-O-16924-LMA

24  (attached hereto as Exhibit C) (detailing Mr. Palmer's criminal convictions and
    misconduct).

25
    [3] Available at http://www.usfa.fema.gov/downloads/pdf/statistics/v13i7.pdf.

26

27                                          3

1  the purchase price to all Dryer owners) is somehow "inadequate, unreasonable or

2  unfair," is meritless.  Their objection is not aimed at ensuring an adequate

3  Settlement, but is plainly brought for the improper purpose of holding hostage for

4  personal gain a settlement aimed at safety for consumers and the public.   As such,

5  the objection is lodged for an improper purpose and violates both Federal Rule of

6  Civil Procedure 11 and 28 U.S.C. § 1927.  As such, these objections should be

7  stricken or denied and fees awarded for having to respond to Sweeney and

8  Palmer's submission.  *Id.*.

9  **II.**   **ARGUMENT**

10         **A.**      **Contrary to the Objectors' Unsupported and Conclusory**

11                      **Statements, the Settlement Provides Real Benefits to Class**

12                      **Members.**

13         Sweeney and Palmer claim to want to protect the Class when they claim that

14  the Settlement does not achieve enough, but at the same time argue that Class

15  Members should go without its safety benefits and hold out for total victory (a

16  total product recall and full monetary compensation for Class Members). They

17  even incredibly argue that preventing dryer fires has "no benefit" to the Class.

18  ECF No. 160 at 9, 12-13 ("Avoiding fires is not a benefit.").  In their request that

19  the Court deny approval, Messrs. Sweeney and Palmer equate anything short of

20  total victory with unfairness, inadequacy and unreasonableness.

21         The standard for a fair, reasonable and adequate settlement, however, has

22  never been total victory on disputed claims.  As the Ninth Circuit has explained,

23  "[s]ettlement is the offspring of compromise; the question we address is not

24  whether the final product could be prettier, smarter or snazzier, but whether it is

25  fair, adequate and free from collusion." *Hanlon*, 150 F.3d 1011, 1027 (9th Cir.

26  1998); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.

27

28

1998) ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." (emphasis in original).  As the court in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Products Liability Litig.* stated:

> Settlement is born of compromise, and settling plaintiffs trade the risk of recovering nothing for a reward that is necessarily less than their full *potential* recovery.  When a particular tradeoff between the risk and the potential for reward is rationally made, and when the resulting settlement is a fair, adequate, and reasonable result for the class, that settlement is entitled to approval.  This is true even when the class must be content with a less than full recovery of their actual damages.

No. 8:10 ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, *270 (C.D. Cal. July 24, 2013).

In determining whether a proposed class action settlement is fair, reasonable, and adequate, district courts consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026)).  An important consideration in judging the reasonableness of a settlement is to balance "'the strength of the plaintiffs' case on the merits . . . against the amount offered in the settlement.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 5 Moore Federal Practice, § 23.85[2][b]

(Matthew Bender 3d. ed.)). This assessment, however, "is not to be turned into a trial or rehearsal for trial on the merits." *Officers for Justice*, 688 F.2d at 625. To the contrary, the court's consideration of the likelihood of success on the merits is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (citation and internal quotation marks omitted).

This case has been a three-year battle with allegations that are disputed among the parties to this day. *See* ECF No. 162 at 7-8 (discussing the merits of Plaintiffs' claims, and the defenses and arguments Electrolux will raise against class certification and at summary judgment). A class has not yet been certified and Electrolux still maintains it is doubtful whether one could have been certified for trial purposes.[4] *Id.* at 7-10. A hard-fought settlement was negotiated where both the mediator presiding over the negotiations and the Court in its Preliminary Approval Order found there was no collusion, that the settlement was negotiated in good faith and provided real benefit to the Class. Declaration of Jonathan Marks, ECF No. 154-5 at ¶¶6-26. Class Counsel set forth in great detail the safety as well as monetary benefits of the Settlement in their Application for Attorneys' Fees and Expenses (ECF No. 153 at 9-13). Counsel also provided expert testimony supporting these benefits by Mr. Frank Bernatowicz and Marthinus van Schoor, Ph.D. Declaration of Edward A. Wallace, ECF Nos. 153, Ex. D. Indeed, the Settlement is aimed preventing fires, educating consumers about dryer fires and safety measures regarding prevention, cleaning measures designed to prevent fires,

---

[4] Interestingly, Sweeney and Palmer argue that the case is not appropriate for Class Certification (ECF No. 161 at 5 (stating that "Class certification may not be appropriate")), while at the same time arguing that Plaintiffs should settle for nothing less than total victory. That somehow Plaintiffs would achieve a complete victory while at the same time being unable to certify the Class is a logical disconnect.

as well as cash payments to individuals who suffered fires.  In short it seeks to address the most common cause of fires in the Dryers, educate consumers and the public, and prevent the injuries, death and property damage that result from dryer fires every year.  FEMA Report at 4-5.

In objecting that these safety benefits are "valueless" and advocating that the Court deny a Settlement conferring these safety benefits, Mssrs. Sweeney and Palmer of course cite no authority or expert testimony.  These unsupported allegations cannot provide the basis to torpedo a fairly-negotiated compromise that confers great safety benefits to Class Members. *See In re Toyota Unintended Acceleration*, 2013 U.S. Dist. LEXIS 123298, *310-311 (rejecting unsupported objections to a proposed fee award where the objectors presented no expert declaration or other evidence undermining the Court's conclusions).  Nor should this Court put the Class and the public at risk by failing to approve a Settlement designed to provide  significant safety  benefits to the Class and the public.

### 1.     The Cash Rebate Is Only One Component Of Settlement And Is Not Inadequate

Sweeney and Palmer continually disparage the cash rebates Electrolux has agreed to pay to dryer owners as "coupons,"; they falsely label the Settlement as simply a "coupon settlement."  As set forth above, the cash rebates Electrolux will pay under the Settlement are only one portion of the Settlement (one that Plaintiffs have not even included in providing a monetary valuation of the settlement).  When Sweeney and Palmer allege this is simply a "coupon settlement" they are blatantly ignoring the terms of the Settlement.

Sweeney and Palmer's real argument regarding the cash rebate portion of the Settlement appears to be that these cash rebates to customers *aren't large enough*.  They acknowledge that these rebates can provide over a $300 cash value

to consumers, but their complaint appears to be that Electrolux is not providing cash back from the *entire* purchase price.  This argument not only ignores the realities of a negotiated settlement, it ignores Electrolux's position throughout the litigation Class Members have had use of their Electrolux Dryers for years without a fire (somewhere between 2 and 12 years depending on the date of purchase).  A cash rebate up to the $350 per Dryer (or other appliance, if a consumer did not want to purchase a new Dryer) was the negotiated compromise of those positions and is fair, adequate and reasonable given the risk of litigation.  *See* ECF No. 158 at 13-16.  It is certainly not inadequate, provides a cash benefit to Dryer owners and given that Plaintiffs have not included its value in their value cross check of the Settlement, can provide no basis for denying approval or attorneys' fees.

## 2.    Dryer Cleanings Offer A Significant Benefit

Belying the falsity of their argument that the Settlement is nothing more than a "coupon" settlement, Palmer and Sweeney next complain about the Dryer cleaning program, which of course offers no "coupon" whatsoever.  However, to stick to the rhetoric, they now assert that the Settlement is nothing but a "coupon settlement" because the cleanings Electrolux offers provides "no benefit" to the Class and, therefore, cannot be counted.  They even falsely imply that consumers will have to pay for a portion of this cleaning by calling it a "one hour cleaning."

The settlement's terms, however, provide that Electrolux will pay a service technician to come to their home, remove their Dryer drum and clean lint from the area behind the drum where it can start fire *at no charge to the customer*.  Settlement Agreement IV.B.7. ("The Settlement Class Member shall receive the cleaning services described in this [section] *free of charge*.").  The customer will

not be charged for this service visit whether it takes 12 hours or 1 hour.[5]
Electrolux pays for this service charge out of pocket (approximately $100 per service call), and the claim that it is "valueless" defies logic.[6]

Claiming there is "no benefit" in cleaning lint from near the heat source has no basis in fact or common sense.  Indeed, in a recent report on Clothes Dryer Fires in Residential Buildings, FEMA found that "failure to clean (34% percent) was the leading factor contributing to ignition of clothes dryers" and that dust, fiber and lint were "by far the leading items first ignited in clothes dryer fires." FEMA Report at 5.  Whether or not Plaintiffs prove the Electrolux design is defective, cleaning a fuel (lint) from near a heat source unquestionably provides a safety benefit to consumers.  Sweeney and Palmer's argument that preventing fires "has no benefit" is simply meritless and the kind of frivolous argument that should be sanctioned.  ECF No. 160 at 13.[7]

Finally, without basis, Palmer and Sweeney argue that *any* condition placed on the ability to receive a cleaning makes the program "inadequate."  They make this argument without making any apparent effort to understand the arguments and or facts of this litigation.  If Palmer and Sweeney had bothered to inquire or review

---

[5] The one-hour time frame discussed in the FAQ on the Settlement Website is merely illustrative of the average time it takes to clean a Dryer.  FAQ 10.

[6] Sweeney and Palmer also claim that the Court must seek discovery from Electrolux as to what the cost of the service visits will be and argues the $100 per visit number is made up by Plaintiffs' expert.  This is simply baseless as the $100 represents Electrolux's estimated average cost per cleaning.  ECF No. 153-3, Ex. D.

[7] In calling the cleaning program "valueless," Palmer and Sweeney also ignore that the Settlement has created major safety changes in the way the Electrolux Dryers are cleaned, as well as educating the public about the necessity of cleaning their Dryers.  *See* ECF No. 153 at 10-12 (describing injunctive relief and safety-related cleaning service program, and how Electrolux will now provide training documentation to authorized service technicians on *how* to clean the Dryers).

the history of the case (they did not respond to phone calls placed by Class Counsel attempting to further explain the Settlement and they apparently have not reviewed the parties pleadings in this matter), they would have found that any "limitation" placed on the cleaning is related to the facts and allegations of the case.  For example, Sweeney and Palmer cite to the availability of dryer cleaning only to people who own Dryers manufactured in 2002 or later as evidence that the Settlement is unreasonably limited and Electrolux's liability prematurely cut off.  However, this argument ignores that the useful life of the Dryer is somewhere between 10 and 13 years and, therefore the date restriction poses no real "limitation."[8]  They argue that the requirement that consumers have experienced a qualifying performance problem indicative of lint build up sometime in the first five years of the Dryer's life is somehow unfairly restrictive.  ECF No. 160 at 4-5.  This argument ignores the evidence developed in this case, including evidence that the risk of fire increases throughout the first five years of the Dryer's life and then decreases.[9]  Far from being an arbitrary limitation, the five-year requirement is a reasonable, negotiated compromise that tracks evidence and is designed to protect the Class.  Further, the qualifying performance indicators are designed to ensure that consumers that were actually experiencing a problem with lint build up near the heat source (problems that result from the Defect and cause fires) received the cleaning.  Sweeney and Palmer disregard the history of the case and simply trumpet their unfounded assertions that cleaning lint behind the Dryer drum and

---

[8] March 14, 2013 Dep. Tr. of Brian D. Ripley at 53:1-15; 168:10-14.

[9] *See* ECF No. 146 at 21. Class Counsel discussed the findings of Jack Sanderson, The Wright Group, and Dr. van Schoor concerning when the Dryer fires are most likely to happen at the Preliminary Approval Hearing on May 5, 2014.

even preventing fires "have no benefit to the Class." This Court should strike or overrule their spurious objections.

**3.** **The Argument That Cash Payments to Class Members Who Have Suffered A Fire Is Of "No Benefit" Is Frivolous.**

Incredibly, Sweeney and Palmer argue that a cash payment designed to compensate Fire Subclass Members for the entire purchase price of their Dryer is "of little benefit." They mention, without support, that a $1,300 limit will somehow constrain Class Members in receiving full compensation for their Dryers. They cite no information supporting their claim that $1,300 would be insufficient to refund the purchase price to Class Members' for Dryers purchased between 2002 and 2012. In fact, the $1,300 number was selected so as to fully compensate those who suffered Dryer fires for the entire purchase price of the Dryers (Electrolux represented that the highest price points for the years 2002-2012 were approximately $1,300). Sweeney and Palmer's argument that a cash payment for the purchase price of Class Members' Dryers is an "illusory" or "nonexistent" benefit simply defies logic and does not comply with their duty of candor to this Court. If, by their assertion, they mean to create a false impression that the $1,300 is a cap on any other fire damage other than the purchase price of the Dryer, then they are deliberately misstating the Settlement which specifically provides that Class Members do not release claims for property damage or personal injury as a result of a fire. *See* Settlement Agreement I.FF. (property damage claims in excess of $1,300 and personal injury claims not released). This frivolous objection should be stricken or overruled.

**B.** **Sweeney and Palmer's Assertions about Commonality and Adequacy Are Ambiguous, Unsupported and Meritless**

Sweeney and Palmer's argument that "class certification *may* not be

11

appropriate," while ambiguous and confusing, makes one thing clear: their motivation is not to help the Class achieve a fair Settlement, but to either to ensure there is no Settlement at all or to tie up this case on appeal if their frivolous "objections" are denied.  By arguing that a class should not be certified, Sweeney and Palmer would deny Class Members the immediate safety benefits of the Settlement and would place the Class into additional years of contested litigation where the outcome may be that the Class Members never receive the benefits— including safety benefits—included in the Settlement.  In short, Sweeney and Palmer's objection is for an improper motive and puts the Class at risk.

That Sweeney and Palmer hedge their arguments that "class certification *may* not be appropriate" is telling and reveals its lack of merit.

Sweeney and Palmer claim that commonality "may" not exist because argument that "every fire is different." This argument makes no sense given members of the Fire Subclass receive identical benefits under the Settlement and Class Members' property damage or personal injury claims are not released under the Settlement: they (or their insurers) are still able to pursue those claims.

Sweeney and Palmer's argument that the class should not be certified because of "comparative negligence issues" is equally without merit.  There is no comparative negligence defense to Plaintiffs' claims for breach of implied warranties (occurred at sale) and violations of state consumer protection laws.

Finally, Sweeney and Palmer make the unsupported allegation, *contradicted by both the mediator's affidavit and this Court's Order Granting Preliminary Approval*, that Class Counsel are somehow inadequate because they are "putting their own interests ahead of the class."  Sweeney and Palmer never explain their basis for this inaccurate and conclusory statement.  As thoroughly briefed in the Fee Petition as well as Motion for Final Approval and supported by Mediator

Jonathan Marks' affidavit and the Preliminary Approval Order in this case, Plaintiffs' Counsel have not put their interests ahead of the Class and are adequate to represent the class.  Sweeney's objection on this basis must be denied.

## C.     The Court-Approved Notice Plan Is Adequate

### 1.     The Notice Has Been Held By this Court to Be Adequate

Sweeney and Palmer's argument that the Notice in this matter is "wholly inadequate" purposefully ignores the fact that this Court has already reviewed the Notice, the notice plan, and the contents of the Settlement website and found that it "***is the best notice practicable under the circumstances, and constitutes sufficient notice***" as well as that "the Notice itself is appropriate, and complies with Rules 23(b)(3), 23(c)(2)(B) and 23 (e)."  ECF No. 150 at 9 (emphasis added).  Indeed, their incredible and unsupported assertion the Notice in this case "is different than every other settlement website" is demonstrably false.  The Notice and supporting documents contained on the settlement website approved by this Court is ***exactly*** the type of notice that have been approved and used over and over by Courts in this Circuit.  *See*, *e.g.*, *Schulken v. Wash. Mut. Bank*, No. 09-CV-02708-LHK, 2013 U.S. Dist. LEXIS 442, *5-6 (N.D. Cal. 2013) (finding "no legal basis for [an objector]'s suggestion that the mailing of a short-form notice with information about viewing a long-form notice on the internet [wa]s per  se constitutionally deficient," as "settlement websites have become a widely accepted feature of successful class action settlements"); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, *245-46, 308 (C.D. Cal. July 24, 2013); *Vandervort v. Balboa Capital Corp.*, 2014 U.S. Dist. LEXIS 46174 (C.D. Cal. Mar. 27, 2014); *In re Apple iPhone/iPod Warranty Litig.*, No. CV-10-01610, 2014 U.S. Dist. LEXIS 64573 (N.D. Cal. May 8, 2014); *Chesbro v.*

13

1   *Best Buy Stores, L.P.*, No. C10-774RAJ, 2014 U.S. Dist. LEXIS 64088, *25 (W.D.

2   Wash. May 7, 2014); *Petersen v. Lowe's Hiw, Inc.*, No. C 11-01996, 2012 U.S.

3   Dist. LEXIS 123018, *5-6 n.1 (N.D. Cal. Aug. 24, 2012).[10] Sweeney and Palmer's

4   "objection" to the Notice is demonstrably frivolous and should be overruled.

5                    **2.        The Fee Petition Was Submitted In Accordance With the**

6                               **Court-Ordered Deadlines and Is Timely**

7           In arguing that the Class was given insufficient time to review and object to

8   the Petition for Final Approval as well as Plaintiffs' Attorneys' Fee Petition,

9   Objectors ignore that the arguments for approval and the Plaintiffs intent to seek

10  attorneys' fees have been in the record of this case since April, 2014. Their

11  argument also purposefully ignores in its accusations of impropriety that the Final

12  Approval brief was submitted within the deadline set by this Court.

13          Plaintiffs' request for Preliminary Approval filed on April 30, 2014, listed

14  the basis for approval, the terms of the Settlement, attached the Notices and

15  outlined the amount of fees attorneys were seeking.  Objectors fail to explain how

16  these filings provide insufficient notice regarding the terms of the Settlement and

17  the amount of fees Class Counsel is seeking (indeed, the terms are identical).

18  Moreover, Plaintiffs' Petition for Final Approval for Fees and Expenses was filed

19  *prior* to the deadline to submit objections rendering the authority Objectors cite

20  inapposite.  *See In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988

21

22  [10] Objectors also take issue with the fact that the Complaint in this matter (a
    publically available document) is not linked on the settlement website but cite no

23  authority requiring the Class be provided a copy of Complaint on such a website
    and no explanation for why the summaries of the allegations of the case contained

24  in the documents on the website are inadequate to provide notice to the Class as to
    the substance of the case.  Plaintiffs' allegations are clearly described in multiple

25  documents available to the Class, including the Notice, the FAQ Form, the Claim
    Form, the Settlement Agreement, the Preliminary Approval Order and Class

26  Counsel's Application for Fees and Expenses.  *See* www.dryersettlement.com.

27                                                14

28

(9th Cir. 2010) fee petition was not filed before the deadline for objections).

Moreover, this Court recently distinguished *Mercury Interactive* from settlements like this one that do not involve a common fund apportioned between relief and fees. *See Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 U.S. Dist. LEXIS 14301, *29-30 (C.D. Cal. Jan. 30, 2014) (holding that, although the motion for fees was not filed until after the deadline for objections had passed, that did not preclude approval of the settlement).  Where, as here, the requested attorneys' fees will not come from a common fund and will not affect class members' rights, courts have held that the due process concerns highlighted by the court in *Mercury Interactive* are obviated because there is no adversarial relationship requiring the court to assume the role of fiduciary for the class.  *See id.*; *Calloway v. Cash Am. Net of California LLC*, No. 09-CV-04858 RS, 2011 U.S. Dist. LEXIS 41098, *3-5 (N.D. Cal. Apr. 12, 2011); *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, No. 08-1977-MHM, 2010 U.S. Dist. LEXIS 102612, *31-32 (D. Ariz. Aug. 31, 2010).  As evidenced by their extensive objections, Sweeney and Palmer appear to have had ample opportunity to review and critique Class Counsel's fee petition.

## B.   The Safety Notice Confers a Significant Safety Benefit

Sweeney and Palmer incredibly claim that sending all Dryer owners a separate safety notice warning them that that lint may accumulate inside their Dryers and that fires could occur as a result, and provide specific cleaning and installation instructions to avoid the fires that result is somehow "dangerous" and "unsafe."  This claim is not only unfounded and unsupported by expert testimony regarding consumer warnings, but defies logic.  The Notice negotiated in the Settlement goes directly to preventing fires and improving safety.  The Notice addresses the problems Plaintiffs' experts identified with Electrolux's "warnings,"

15

which were nonspecific and buried in a User's Manual.  ECF No. 153 at 10-11. For example, while Electrolux provided cleaning instructions in the past in its Use and Care Guides for the Dryers, the cleaning instructions were never specific to cleaning lint from behind the drum of the Dryer and never advised consumers that fires can occur from unseen lint accumulation.  *Id.*  To remedy this problem, the Settlement requires Electrolux to issue a specific, stand-alone warning notice that lint may accumulate behind the drum of these Dryers and start on fire and specific cleaning and installation instructions to prevent this hazard from occurring.[11]  The importance of such a safety notice to Class Members is demonstrated by the recent FEMA study that faulted both cleaning and installation for causing dryer fires. FEMA Report at 4, 7-8.  Its importance is also demonstrated by a survey studied by Class Counsel's expert Carol Pollack-Nelson that revealed that many of Electrolux's customers did not review their Dryer's Use and Care Guides (where similar "cleaning" instructions were located), and were inadequate because the Use and Care Guide for the Dryers did not contain *specific* instructions to clean behind the drums of the Dryers—where Plaintiffs alleged that lint could accumulate next to the heat source and catch fire.  ECF No. 153-1, Declaration of Edward A. Wallace ("Wallace Decl.") ¶ 33.

The safety notice provided for in the Settlement remedied these inadequacies: Dryer owners are informed of the specific safety hazard alleged in

---

[11] Objectors also imply the Safety Notice is insufficient because it does not address Plaintiffs' allegations that fires can spread outside the dryer because of the plastics used in the Electrolux Dryer.  The Safety Notice, however, is aimed at preventing the start of fires. Consumers cannot take action to replace the materials used in component parts of the Dryer and therefore, the notice does not attempt to affect consumer behavior regarding this second defect.  However, what Objectors leave out of their argument, is the simple fact that if fire prevention is successful, fire containment becomes moot, i.e. if the fire never starts, it does not have an opportunity to spread outside the Dryer.

this case: that the Dryers may accumulate lint next to the Dryers' heat sources, and instructed that this lint needs to be removed by an authorized service professional to reduce the risk of fire.  Plaintiffs' experts believe that this stand-alone safety warning will have a significant impact on consumer behavior and substantially reduce the risk of fire in the Dryers.  ECF No. 153 at 10-12.

Messrs. Sweeney and Palmer cite no evidence of their own as to why this specific warning to Dryer owners does not confer a safety benefit and inexplicably argue that it creates "a danger."  He cites no expert in warnings or their adequacy.  This appears to be yet another conclusory and false "no benefit" argument.  While it suits the objector's interests to claim each and every part of this multi-faceted settlement has "no benefit," that claim is simply not grounded in reality and cannot serve as grounds to deny approval.

### C.    Class Counsel's Fee Request Is Reasonable and Should Be Approved.

#### 1.    The Lodestar Method Is The Correct Measure For Fees And Demonstrates Plaintiffs' Requested Fees Are Reasonable

As Plaintiffs stated in their fee application, the Settlement resolves Plaintiffs' allegations that Electrolux violated various state consumer protection statutes and the Magnuson-Moss Warranty Improvement Act, all of which provide for attorneys' fees to a successful plaintiff.  ECF No. 153 at 2, 14-15.  In fee-shifting cases such as this, the lodestar-multiplier method is the appropriate method for calculating the attorneys' fees.  *Id.* at 14-17; collecting cases. Sweeney and Palmer contend, however, that Plaintiffs' position that the lodestar method is applicable was rejected and is contrary to CAFA as well as *In re HP Inkjet Printer*

*Litig.*, 716 F.3d 1173 (9th Cir. 2013), *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th
Cir. 2012), and *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab.
Litig.*, 55 F.3d 768, 822 (3d Cir. 1995). The argument is spurious.

The *Dennis v. Kellogg Co.*, 697 F.3d 858, 867-68 (9th Cir. 2012) case does
not address whether the lodestar method is appropriate in statutory fee shifting
cases; indeed, the *Dennis* case is about *cy pres* awards. The court in *In re Gen.
Motors Corp.* affirmed that "[c]ourts generally regard the lodestar method, which
uses the number of hours reasonably expended as its starting point, as the
appropriate method in statutory fee shifting cases," but found that "[i]n this case,
the fee clearly was not made pursuant to a statute; therefore no legislatively
endorsed policy favors assuring counsel an adequate fee." *In re Gen. Motors
Corp.,* 55 F.3d at 821-22. Even then, the court held that "court should probably use
the percentage-of-recovery rather than the lodestar method as the primary
determinant, although the ultimate choice of methodology will rest within the
district court's sound discretion." *Id.* at 821. In the *In re HP* case the court held
that the district court erred when it awarded fees that were expressly "attributable
to" the coupon relief without first calculating the redemption value of those
coupons. *In re HP Inkjet Printer Litig.*, 716 F.3d at 1176. The court made clear,
however, that under § 1712(b) of CAFA, which "applies in situations where a
coupon settlement also provides for non-coupon relief, such as equitable or
injunctive relief," "if class counsel wants to be paid 'any' fees, and the 'recovery
of the coupons is not used to determine' those fees, the entirety of the payment
'shall be' calculated 'based upon the amount of time class counsel reasonably
expended working on the action,' *i.e.,* using the lodestar method." *Id.* at 1183. "A
court may, in its discretion, apply an appropriate multiplier to any lodestar amount
it awards under subsection (b)(1) for obtaining non-coupon relief." *Id.* Sweeney

18

and Palmer's argument characterizing these cases as undermining Plaintiffs' position that the Court should apply a lodestar method to calculate attorney's fees lacks merit and is rejected by the cases they cite.  Their objection arguing that the lodestar method should be ignored should be overruled.[12]

### 2. The Valuation Cross Check Supports Plaintiffs' Fee Request

Knowing that Plaintiffs' counsel have spent several years and over 12,000 hours on this hotly-contested case and that the modest multiplier of 1.23 is well-below multipliers deemed acceptable in this Circuit, Sweeney and Palmer decide to ignore the test that should be applied and instead snipe at the valuation Plaintiffs' provided to demonstrate the fairness of the Settlement.  These two attorneys and professional objectors take unsupported shots at the valuation of Plaintiffs' expert Mr. Frank Bernatowicz, a well-qualified certified public accountant with a Master's in Business Administration, all the while offering no expert opinion of their own.  As such, this Court should decline to entertain their objection.  *See In re Toyota Unintended Acceleration*, 2013 U.S. Dist. LEXIS 123298, *310-311.

While Sweeney and Palmer assert (at 11, 13) that Mr. Bernatowicz's valuation is "flawed and lacks foundation," and "misleading," it is their criticism that is actually flawed and lacking in foundation. Sweeney and Palmer do not dispute either Mr. Bernatowicz's qualifications or his methodology. Nor could they; Mr. Bernatowicz is doing accounting and his opinions are well within the

---

[12] Further, as here, where the attorneys' fees are based upon significant injunctive relief providing a safety benefit and relief like a repair or monetary relief available to remedy a safety defect, the lodestar method is appropriate for determining Class Counsel's fees.  ECF No. 153 at 16-17.

PLAINTIFFS AND CLASS COUNSEL'S RESPONSE TO PATRICK SWEENEY'S OBJECTIONS TO THE CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING AND MOTION FOR SANCTIONS
MASTER FILE NO. SACV12-1644-CAS(VBKx)

competence of a C.P.A and adhere to financial accounting standards.

Sweeney and Palmer instead claim (at 12) that the "assumptions used in determining the value of this settlement. . . are without foundation." This conclusory statement lacks merit. Mr. Bernatowicz makes it crystal clear that his opinions are grounded in hard data, such as Electrolux's warranty claim data, data collected by the government regarding dryer fires, survey results, expert reports, and published literature. Declaration of Frank A. Bernatowicz ("Bernatowicz Decl.") (attached to Wallace Decl. at ECF No. 153) at 4 & Ex. A (listing Electrolux source documents). When Sweeney and Palmer claim (at 11) that "there's no foundation" for "an estimated 791,413 class members eligible for a Dryer Cleaning," they disregard how that estimate is the product of an analysis of Electrolux's database "to determine an experience rate of service calls within one year from the date of purchase that met one or more of the [qualifying] performance problems" that provided an estimate of the total number of potential class members who would be eligible for a free cleaning. Bernatowicz Decl. at 6.

This pattern of criticizing the assumptions as pure speculation when the evidence is clearly otherwise runs throughout Sweeney and Palmer's objections. For example, Sweeney and Palmer paint the estimated value of the safety notices as "misleading" (at 13) and "without foundation" (at 12). No evidence supports these conclusory attacks. The record is Mr. Bernatowicz estimated the reduction in future fires incidents by the strong safety notice campaign by "dividing the number of months benefit from a one-time cleaning [18 months based on Electrolux information] by the remaining life of the dryers in service [based on Electrolux data]." *Id*. at 11-12. His property damage estimates are based on dryer fire data collected by FEMA. *Id*. His estimate of the number of number of eligible class members who will follow the safety notice cleaning recommendation is based on

actual experience published by the Consumer Protection Safety Commission, the FDA, the National Transportation and Safety Association as well as other sources, with a focus on those matters whose compliance characteristics were similar to the subject matter, including: (1) product price; (2) age of product; (3) involved a safety issue; (4) scope or pervasiveness of the issue; and (5) ease of claim forms and efficiency of claims management. *Id.* at 12.

Mr. Bernatowicz's estimated value of the safety notice is the product of an accepted methodology based on data. Sweeney and Palmer's characterization of it as "without foundation" and "misleading" lacks merit. While Sweeney and Palmer state (at 13) that "the only value" of the safety notice "is the cost of the notice," they offer no expert testimony explaining how that could possibly be correct. Instead, Sweeney and Palmer (at 13) ask the Court to adopt this shocking assumption: "Avoiding fires is not a benefit."

Apart from establishing their blithe indifference to the best interests of the class, Sweeney and Palmer's crass argument is flatly contradicted by the publically available FEMA's dryer fire data cited by Mr. Bernatowicz. *Id.* at 4. The FEMA data reports that based on a three-year average the average dollar loss per fire is $9,610 (in 2010 dollars) and there are 2 fatalities and 31 injuries per one-thousand dryer fires. FEMA Report at 2. Without question, a settlement aimed at reducing the number of future fires so as to not just avoid future property losses but also likely prevent future deaths and injuries confers significant benefits not just on the Class but society in general. Mr. Bernatowicz's estimated values of these significant safety benefits *are based on data, not speculation,* which adhere to standard accounting practices.

Sweeney and Palmer's unsupported conclusions as to "value" should be disregarding and their objection overruled.

21

III.  **CONCLUSION**

Based upon the foregoing—and for all of the reasons set forth in Plaintiffs Memorandum of Law in Support of the Parties Joint Motion for Final Approval (ECF No. 158) and Class Counsel's Application for Attorneys' Fees and Expenses and for Service Awards (ECF No. 153)—Plaintiffs and Class Counsel respectfully request that this Court overrule these Objections and enter a Final Approval Order (1) granting final approval of the Settlement, (2) granting final certification of the Settlement Class, (3) awarding Class Counsel the requested fees and expenses, (4) approving the requested incentive awards to the Class Representatives, and (5) entering final judgment.

Date: August 11, 2014

Respectfully submitted by:  /s/ Amy E. Keller

**WEXLER  WALLACE LLP**
EDWARD A. WALLACE
AMY E. KELLER
DAWN M. GOULET
eaw@wexlerwallace.com
aek@wexlerwallace.com
dmg@wexlerwallace.com
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

**KREINDLER & KREINDLER LLP**
GRETCHEN M. NELSON
gnelsen@kreindler.com
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HANSEN REYNOLDS DICKINSON CRUEGER LLC**
ERIN DICKINSON
CHARLES CRUEGER
edickinson@hrdclaw.com
ccrueger@hrdclaw.com
316 North Milwaukee Street, Suite 200
Milwaukee, Wisconsin 53202
Telephone: (414) 455-7676
Facsimile: (414) 273-8476

**GREG COLEMAN LAW PC**
GREGORY F. COLEMAN
MARK E. SILVEY
greg@gregcolemanlaw.com
mark@gregcolemanlaw.com
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, Tennessee 37902
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

*Attorneys for the Plaintiffs and the Putative Classes*

PLAINTIFFS AND CLASS COUNSEL'S RESPONSE TO PATRICK SWEENEY'S OBJECTIONS TO THE
CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, AND NOTICE OF INTENTION TO APPEAR AT
THE FAIRNESS HEARING AND MOTION FOR SANCTIONS
MASTER FILE NO. SACV12-1644-CAS(VBKx)

## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on August 11, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Amy E. Keller
Amy E. Keller

PLAINTIFFS AND CLASS COUNSEL'S RESPONSE TO PATRICK SWEENEY'S OBJECTIONS TO THE CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING AND MOTION FOR SANCTIONS
MASTER FILE NO. SACV12-1644-CAS(VBKx)