# Exhibit A

*Roberts, et al. v. Electrolux Home Products, Inc.*

No. SACV12-1644-CAS(VBKx)

PLAINTIFFS' AND CLASS COUNSEL'S RESPONSE TO DANIEL HALL'S OBJECTION TO PROPOSED SETTLEMENT AND MOTION TO STRIKE OBJECTION AND FOR COSTS AND FEES

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HYDROXYCUT MARKETING AND SALES PRACTICES LITIGATION | CASE NO. 09md2087 BTM (KSC) |
| ——————————————— | CASE NO. 09cv1088 BTM (KSC) |
| ANDREW DREMAK, on Behalf of Himself, All Others Similarly Situated and the General Public, | **ORDER STRIKING OBJECTIONS DUE TO OBJECTORS' LACK OF STANDING** |
| Plaintiff, | |
| v. | |
| IOVATE HEALTH SCIENCES GROUP, INC., et al., | |
| Defendants. | |

On March 22, 2013, Sasha McBean and Tim Blanchard ("Objectors") filed objections to the proposed Class Action Settlement. For the reasons discussed below, the Court finds that the Objectors lack standing to raise objections to the proposed settlement and therefore **STRIKES** the objections.

## I. BACKGROUND

On March 8, 2013, Co-Lead Class Counsel ("Class Counsel") filed a Motion for Final Approval of Class Action Settlement.

On March 22, 2013, Joseph Darrell Palmer, on behalf of Objectors Tim Blanchard and Sasha McBean, filed Objections to Proposed Settlement. In a

broad-brush fashion, the objections generally challenged various aspects of the proposed settlement, including the claims deadline, the claims process, cy pres distribution, a confidentiality provision, failure to satisfy Rule 23 class requirements, lack of individualized notice, and attorneys' fees and expenses.

On April 8, 2013, Objectors and Mr. Palmer filed a motion to quash deposition subpoenas served on them by Co-Lead Class Counsel. On April 23, 2013, the Court entertained oral argument on the motion to quash. In an order filed on April 29, 2013, the Court granted in part and denied in part the motion to quash. The Court quashed the subpoena directed to attorney Mr. Palmer. However, the Court determined that limited discovery of the Objectors was warranted.

Given Mr. Palmer's frequent representation of objectors, the fact that Ms. McBean and Mr. Blanchard had filed objections in other cases, and uncertainty regarding whether Ms. McBean resided at the address listed on her claim form, the Court found that Class Counsel's concern regarding the standing of the Objectors was justified. Accordingly, the Court ordered the Objectors to appear at an evidentiary hearing on May 29, 2013. The Court explained that at the hearing, Class Counsel could ask the Objectors questions regarding standing (e.g., questions regarding the alleged purchase of Hydroxycut products) as well as questions regarding objections made by the Objectors in other cases within the past five years, rulings made regarding the objections, and any monetary compensation received by the Objectors in connection with the objections. The Court also ordered Objectors to produce on or before May 22, 2013:

> 1. All documents evidencing a purchase of a Hydroxycut Product [1] between May 9, 2006 and May 1, 2009.

---

[1] The term "Hydroxcut Products" is defined by the Stipulation of Settlement (Doc. 1607) as the fourteen Hydroxycut-branded products identified in paragraph 23 of the Stipulation.

2. All documents relating to any objection filed by Ms. McBean or Mr. Blanchard in any class action proceeding within the last five years.

3. All documents relating to monetary compensation received by Ms. McBean or Mr. Blanchard in connection with any objection filed within the past five years.

On May 29, 2013, the day of the scheduled evidentiary hearing, Mr. Palmer filed a motion to withdraw as attorney for Mr. Blanchard and Ms. McBean. According to Mr. Palmer, Mr. Blanchard and Ms. McBean had terminated his employment as their attorney and planned to retain new counsel. Mr. Blanchard and Ms. McBean themselves did not appear at the evidentiary hearing. In an order filed on May 30, 2013, the Court granted Mr. Palmer's motion to withdraw and continued the evidentiary hearing to June 13, 2013.

On June 13, 2013, Ms. McBean appeared at the evidentiary hearing with a new attorney, Kendrick Jan, and testified. Mr. Blanchard did not appear or file any request to continue the hearing. At the evidentiary hearing, David Reid, an attorney with Newport Trial Group, also testified. Mr. Reid's testimony continued on June 20 and July 16, when the evidentiary hearing concluded.

## II. DISCUSSION

Under Fed. R. Civ. P. 23(e)(5), any *class member* may object to a proposed class settlement. Thus, "non-class members have no standing to object." Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir. 1989). The party seeking to invoke the Court's jurisdiction – in this case, the Objectors – has the burden of establishing standing. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103-04 (1998). For the reasons discussed below, the Court finds that neither Mr. Blanchard nor Ms. McBean have satisfied their burden of establishing that they are class members and therefore have standing to object to the proposed class settlement.

A. <u>Tim Blanchard</u>

According to Mr. Palmer, Tim Blanchard, a resident of Corpus Christi, Texas, was referred to him by Christopher Bandas, a Corpus Christi attorney who frequently represents objectors challenging class action settlements. When the Court granted Mr. Palmer's motion to withdraw as attorney for the Objectors and continued the evidentiary hearing to June 13, 2013, the Court ordered that Mr. Palmer serve a copy of the Court's order on the Objectors. Mr. Palmer filed a Proof of Service that the Objectors were served with the Court's order by U.S. mail on June 3, 2013. (09cv1088 - Doc. No. 226.) Mr. Blanchard did not appear at the evidentiary hearing on June 13, 2013, nor did he file any request to continue the evidentiary hearing. In fact, since Mr. Palmer's withdrawal, the Court has not heard anything from Mr. Blanchard or anyone representing Mr. Blanchard. It appears that Mr. Blanchard has abandoned his Objection. Therefore, because he has not established that he in fact purchased a Hydroxycut Product, he has not carried his burden of proving standing as a class member, and the Court **STRIKES** Mr. Blanchard's Objection.

B. <u>Sasha McBean</u>

Ms. McBean testified at the evidentiary hearing on June 13, 2013. Although Ms. McBean testified that she took a Hydroxycut Product during the Class Period, the Court does not find her credible for the reasons detailed below.

Ms. McBean testified that she regularly used "Hydroxycut" between 2005 and 2008. The proposed Settlement Class includes persons who purchased any of the specified Hydroxycut Products between May 9, 2006 and May 1, 2009. (Stipulation of Settlement (Doc. 1607) ¶ 46.) Ms. McBean testified that she used the product daily but did not know the exact name of the product. (Tr. of June 13, 2013 Hearing ("6/13/13 Hr'g"), 22:14-22.) She thought that the product could have been "Hydroxycut Gold" and that the product had "guarana" in it. (<u>Id.</u> at

22:8-11.) She said it was the "main" Hydroxycut product that you would get if you went into GNC and asked for Hydroxycut. (Id. at 47:6-9.) She could not describe the packaging with any specificity, testifying that it was a bottle with a label that said "Hydroxycut" and had some warnings on it. (Id. at 22:24-23:1.) She testified that she received notice of the proposed settlement through a postcard in the mail that said, "Class action regarding Hydroxycut." (Id. at 25:8-16.)

The Court finds it incredible that Ms. McBean, an obviously intelligent woman, could take Hydroxycut multiple times a day for three years and not know the name of the product or be able to describe the packaging. Hydroxycut "Gold" is not one of the listed Hydroxycut Products. (Stip. of Settlement ¶ 23.) The best-selling Hydroxycut Product was a rapid release caplet that did not contain "guarana." (Doc. 1609-5, p. 21.) Furthermore, although Ms. McBean was ordered to produce "[a]ll documents evidencing a purchase of a Hydroxycut product between May 9, 2006 and May 1, 2009," Ms. McBean did not produce any documents and did not bring any documents to Court. Given her years of alleged Hydroxycut use, it is surprising that she could not produce a single receipt, credit card statement, product carton, or other documentation showing that she purchased a Hydroxycut product. It is also telling that Ms. McBean said that she received notice of the proposed settlement by way of a postcard. However, the notice program in this case did not involve direct mailings.

Ms. McBean's credibility is further undermined by her relationship with Mr. Palmer and her peculiar involvement in litigation regarding objections to class action settlements. According to Ms. McBean, Mr. Palmer has been a friend of hers for four or five years. (Tr. of 6/13/13 Hr'g, 9:13-19.) She used to help Mr. Palmer with office errands in her free time, although she was never an employee of his. (Id. at 10:22-23.) Mr. Palmer previously represented Ms. McBean in objecting to a proposed class action settlement in Arthur v. Sallie Mae, Inc., No. 10cv198 (W.D. Wash.) (Ex. N to Opp. to Motion to Quash (Doc. No. 1648).)

Although Ms. McBean seemed to know that she had been an objector in the Sallie Mae case, she did not know any specifics about the objection. (Tr. of 6/13/13 Hr'g, 20:8-25.) She explained that she "referred" the Sallie Mae notice to Mr. Palmer and didn't know what happened in the case after that. (Id. at 20:19-21:9.)

In addition to making her own objections, it appears that Ms. McBean has been involved in trying to recruit other people to be objectors to proposed class action settlements. On April 16, 2012, Ms. McBean posted on her Facebook webpage: "Looking for someone who was (or knows someone) employed by H&R block [sic] June 9, 2006 through May 15, 2011 as a seasonal non-exempt tax professional. There is easy money to be made here in a class action lawsuit if anyone can get me a name!!." (Evidentiary Hr'g Ex. 1.) On March 23, 2012, Ms. McBean posted on her Facebook web page: "[L]ooking for anyone with a Discover card who enrolled in one of four fee based products - Discover payment protection, Identity theft protection, Wallet protection, or Credit score tracker . . . I need a class member for a case, you don't need to do anything, and I can compensate you . . . . generously : )" (Id.) One of Ms. McBean's Facebook friends made the following comment regarding her Discover card post: "[W]hats the compensation? I'll go get a card!!!" (Tr. of 6/13/13 Hr'g, 34:25.) Ms. McBean responded: "Real funny Jerry! . . . I just set myself up for that didn't I.!!!! I'm sure we can work something out . . . On a more serious note, ill [sic] throw down a grand . . . Find someone!!!!" (Id. at 35:4-7.)

Ms. McBean claims that she was just trying to help friends of hers in the legal field (Tr. of 6/13/13 Hearing, 19:11-16) and that the only compensation she was talking about was lift tickets or gift certificates (id. at 18:13-20). She explains that "easy money" referred to compensation any class member would receive from the settlement. (Id. at 19:17-21.) Ms. McBean denies helping Mr. Palmer to locate clients to object in class action lawsuits (id. at 11:6-8) and denies that

she was trying to obtain compensation herself by finding objectors (id. at 19:8-10).

However, Ms. McBean's innocent explanations of her Facebook postings do not ring true. Ms. McBean's post regarding H&R Block was dated April 16, 2012, the last day for objections to be filed in Lemus v. H&R Block Enter., LLC, 09cv3179 SI (N.D. Cal.), and the day when, coincidentally, Mr. Palmer filed an objection on behalf of Jay W. Brandenburg (only one other objection was filed).[2] Similarly, Ms. McBean's post regarding Discover was made on the last day for objections to be made in Walker v. Discover Financial Services, Inc., 10cv6994-JWD (N.D. Ill.). Mr. Palmer did not file any objections in that case. It is apparent that Ms. McBean was not just helping friends find class members who could claim settlement funds; her posts were aimed toward finding *objectors*, whether for Mr. Palmer or another attorney. Although Ms. McBean claims that she was joking when she said that she would "throw down a grand" if her friend found a class member, the Court is not so sure.

Clearly, Ms. McBean works closely with others who seek to represent objectors in class action lawsuits. Her solicitation of objectors for financial compensation in other cases makes the Court question Ms. McBean's motives in objecting in this case. The Court's suspicions are further aroused by Ms. McBean's over-eager desire to appear at the evidentiary hearing. According Ms. McBean, she missed her daughter's seventh grade graduation and attendant activities to come to the hearing (at her own expense), even though she could have asked the Court for a continuance, which the Court certainly would have granted. (Tr. of 6/13/13 Hr'g, 49:6-12.)

---

[2] The Court takes judicial notice of the Order Granting Motion for Preliminary Approval (Doc.120) and the Objections to Proposed Settlement and Notice of Intent to Appear by Jay W. Brandenburg (Doc. 129) filed in the Lemus action.

Further evidence that Ms. McBean's objection was not made in good faith comes from the testimony of Mr. Reid. Mr. Reid testified that his firm was retained by Iovate to approach the Objectors' attorneys, find out what the Objectors' issues were with respect to the settlement, and determine whether any kind of resolution could be reached. (Tr. of Hearing on July 16, 2013 (7/16/13 Hr'g), 63:15-21.) On April 12, 2013, Mr. Reid spoke with Mr. Palmer on the telephone. Mr. Reid told Mr. Palmer that he was calling to find out what his clients' objections to the class action settlement were and to see if there was a way in which those concerns might be addressed. (Id. at 66:2-9,16-20.) Mr. Palmer told Mr. Reid that Mr. Reid would have to speak with Mr. Bandas regarding the substance of the objections filed by Ms. McBean and Mr. Blanchard. (Tr. of Hearing on June 20, 2013 (6/20/13 H'rg), 37:18-24; 38:14-20.) Mr. Palmer indicated that it was Mr. Bandas's "show" and that Mr. Bandas was the person best equipped to answer Mr. Reid's questions. (Id. at 37:10-14.)

Accordingly, Mr. Reid contacted Mr. Bandas and spoke with him on the telephone on or about April 22, 2013. (Tr. of 6/20/13 H'rg, 19:16-18.) Mr. Bandas assured Mr. Reid that he spoke for himself and Mr. Palmer and would make sure that Mr. Palmer would get his cut of any settlement payment. (Id. at 21:9-14.) When Mr. Reid asked Mr. Bandas what his issues were with the proposed settlement, Mr. Bandas said that he didn't care about changing one word of the settlement and that he filed the objections because it was a large settlement and Plaintiff's counsel stood to make millions of dollars. (Id. at 21:21-25.) Mr. Bandas said that he was willing to wager that Mr. Reid's client would gladly pay him somewhere in the neighborhood of $400,000 to make his objection go away - otherwise, he could hold the settlement process up for two to three years through the appeal process. (Id. at 22:1-13.) Mr. Bandas explained that the objections filed in this case were particularly valuable given his success in

Dennis v. Kellogg, 697 F.3d 858 (9th Cir. 2012), which probably made Timothy Blood very angry. (Tr. of 7/16/13 H'rg, 94:4-8.)

On May 28, 2013, the day before the evidentiary hearing was originally scheduled, Mr. Bandas called Mr. Reid because Mr. Bandas had heard that Mr. Reid had been supboenaed to testify. (Tr. of 6/20/13 H'rg, 23:8-11.) Mr. Bandas said several times during that conversation that he wasn't sure whether he was having a "senior moment" or something, but it was very difficult for him to even recall the details of their prior conversation regarding settlement and numbers, and that it was most likely that both of them couldn't remember what they had talked about. (Id. at 23:21-24:4.)

According to Mr. Reid's testimony, which the Court finds credible, Mr. Bandas was attempting to pressure the parties to give him $400,000 as payment to withdraw the objections and go away. Mr. Bandas was using the threat of questionable litigation to tie up the settlement unless the payment was made.[3] Even though Ms. McBean was Mr. Palmer's client, it is clear that Mr. Bandas was authorized to speak for Mr. Palmer on Ms. McBean's behalf.

In light of Mr. Bandas's scheme, the Court finds that Ms. McBean's objections were filed for the improper purpose of obtaining a cash settlement in

---

[3] Unfortunately, this type of abuse of the objection process is not uncommon. As explained in the Manual for Complex Litigation § 21.643 (4th ed.): "Some objections, however, are made for improper purposes, and benefit only the objectors and their attorneys (e.g., by seeking additional compensation to withdraw even ill-founded objections). An objection even of little merit, can be costly and significantly delay implementation of a class settlement." See also In re Checking Account Overdraft Litig., 830 F. Supp. 2d 1330, 1362 n. 30 (S.D. Fla. 2011) ([P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing.") (Internal quotation marks omitted).
Of course, objections can play an important role in the improvement of settlements when raised by actual class members who wish to change the settlement for the benefit of the class. The Court does not suggest that all objectors or objectors' attorneys are engaged in improper conduct.

exchange for withdrawing the objections. Although the bad motive does not necessarily mean that the objections themselves are invalid, the motive does bear upon the credibility of Ms. McBean. The bad motive provides a reason – i.e., financial gain – for Ms. McBean to insert herself into this litigation and lie about her class membership and reinforces the Court's belief that she was not telling the truth when testifying about her purchase and use of Hydroxycut.

Because the Court does not find Ms. McBean's testimony regarding her Hydroxycut use to be credible, Ms. McBean has not established that she is member of the class who has standing to file an objection. Therefore, the Court strikes Ms. McBean's objections as well.

### III.  CONCLUSION

For the reasons discussed above, the Court **STRIKES** the Objections filed by Tim Blanchard and Sasha McBean (09md2087- Doc. 1640).

**IT IS SO ORDERED.**

DATED:  September 17, 2013

BARRY TED MOSKOWITZ, Chief Judge
United States District Court

cc:      Kendrick Jan
         Jan & Jan
         402 West Broadway, 27th Floor
         San Diego, CA  92101