Joseph Darrell Palmer (SBN 125147)
Law Offices of Darrell Palmer
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115
darrell.palmer@palmerlegalteam.com

Attorney for Objector Patrick S. Sweeney

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SHAWN ROBERTS, et al.;<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC.,<br><br>　　　　　Defendants.<br>_____<br><br>This Document Relates To All Actions.<br>_____ | Master File No. 12-CV-1644-CAS (VBKx)<br><br>CLASS ACTION<br><br>**REPLY OF PATRICK S. SWEENEY TO PLAINTIFFS' RESPONSE TO OBJECTIONS**<br><br>Date: August 18, 2014<br>Time: 10:00 a.m.<br>Place: Courtroom 5, 2nd Floor<br>Judge: Hon. Christina A. Snyder |

### A. Introduction/Untimely Motions

According to Class Counsel, each of the objections filed are not just wrong, they are baseless, frivolous, and deserving of sanctions.

- The objection filed by Kristina Newman and Joyce Miller is "a fallacious polemic as it is based on sweeping inaccuracies or purposeful misrepresentations." Response to Newman &Miller Declaration, Dkt. 164, page 2, lines 9-10.

/ / /

0

- Daniel Hall's "rendition of the Settlement Agreement [is] so inaccurate that it violates Rule 11 of the Federal Rules of Civil Procedure." Response to Hall Objection, Dkt. 166, page 4, lines 5-6.

- Sweeney's objection is "nothing more than baseless mudslinging." Dkt. 165, page 3, line 17.

Rather than addressing the issues raised in the objections, Class Counsel ask the court to sanction each objector. Responding to the Newman and Miller objection, Class Counsel ask the court to rely on its authority to impose sanctions under 28 U.S.C. § 1927. Moving on to the Hall Objection, Class counsel add a Motion to Strike (without properly noticing said motion). Responding to Sweeney's Objection, Class Counsel add a Motion for Sanctions (again without properly noticing a motion).

### 1. *These "Motions" violate the local rules.*

Central District of California Local Rule 6-1 establishes the timing rules for motion papers:

> The notice of motion shall be filed with the Clerk not later than twenty-eight (28) days before the date set for hearing, and shall be served on each of the parties electronically or, if excepted from electronic filing, either by deposit in the mail or by personal service. If mailed, the notice of motion shall be served not later than thirty-one (31) days before the Motion Day designated in the notice. If served personally, or electronically, the notice of motion shall be served not later than twenty-eight (28) days before the Motion Day designated in the notice.

Plaintiffs did not observe these timing rules; as such these "motions" should be rejected. Plaintiff's "motions" and requests for sanctions are aimed at intimidating objectors into withdrawing their objections. They are improper and are designed to chill participation by class members in the settlement approval process. These motions are frivolous, lack legal precedent and violate procedural rules. Filed only a week before the

Final Approval Hearing, they inconvenience counsel for objectors and waste the court's time.

**B. Safety: The Court Should Focus on the Safety Concerns Raised by the Objectors**

*1. The Objectors Have Expressed Concerns About the Safety of the Dryers and the Efficacy of the Relief*

The Objectors all complain that the "relief" offered in the proposed Settlement is illusory because it will not remedy the dryer's defects and will instead create a false impression of increased safety. Sweeney's objection raised concerns that the Settlement merely perpetuates the Company's pattern of concealing the seriousness of the defects found in its dryers. Dkt. 160, page 11, lines 25-28.

In their Complaint, Plaintiffs alleged that the dryers are defective, inherently dangerous and pose significant fire risk. Plaintiffs did not fabricate the allegations that point to persuasive evidence establishing the dangers. Plaintiffs allege these dryers have caused thousands of fires; they paint an alarming picture of a Company hiding a defective product for more than a decade.

The fact that Electrolux "denies that there is any defect in its Dryers or that the Dryers pose any unreasonable fire hazard to consumers" at this stage merely suggests this Settlement is premature. There may be a strong public policy in favor of Settlement, but a Settlement that offers a free cleaning and a safety notice describing the need for cleaning – when cleaning does not solve the problem, achieves no public policy objectives.

*2. Objectors question whether the free cleaning will reduce the risk of fires*

The evidence indicates that professional cleaning does not substantially reduce fire risk. The Complaint, para. 103 states:

"warranty data for Electrolux dryers showing that 80% of the fire warranty claims related to lint occurred within the first 18 months of use, demonstrate how *having the Dryer serviced every 18 months does not eliminate or materially reduce the safety risks* or remedy the Defects." (emphasis added)

If this is true, then cleaning the dryers every 18 months will not "materially reduce the safety risks" posed by these dryers.

Class Counsel take Objectors to task for citing no evidence to support our contentions regarding the fire risk.  They are wrong: we cited their Complaint.  The evidence Plaintiffs raise to support their contention that the cleaning will reduce fire risk does not support their claims regarding the value of the Settlement.  They note the U.S. Consumer Protection Safety Commission recommends that consumers "[h]ave a qualified service person clean the interior of the dryer chassis periodically to minimize the amount of lint accumulation." This general information is irrelevant in a case where the evidence shows defects render cleaning ineffectual.  The evidence they cite is general and does not address the defects alleged in Electrolux' products.

### 3. Objectors question whether the Safety Notice will help prevent fires

Sweeney expressed concern that the Safety Notice provided for under the Settlement is just another example of the Company providing false and misleading information regarding the safety of its dryers.  The Safety Notice provides the same misleading advice the Company provided previously.  The Safety Notice includes the statement:

> "At least every 18 months have an authorized service technician clean inside the dryer cabinet, especially between the drum and cabinet, the lint screen housing, and exhaust duct, where lint can build up.  An excessive amount of lint buildup in these areas could result in inefficient drying and possible fire."

The Complaint clarified this is insufficient.  The Complaint shows Electrolux has hidden behind this misleading warning in the past.  See Complaint, para. 103 ("Electrolux inserted a statement in its user guides that 'Every 18 months an authorized servicer should clean the dryer cabinet interior and  exhaust duct.'").  The Complaint pointed out that "Electrolux has been unable in prior depositions to provide any engineering basis for this statement. . ." Para. 103.

To support their assertions regarding the efficacy of the cleaning, Class Counsel cite a FEMA Report entitled, "Clothes Dryer Fires in Residential Buildings (2008-2010), available at http://www.usfa.fema.gov/downloads/pdf/statistics/v13i7.pdf.  This report indicates that the leading cause of residential fires is "operational deficiency", with failure to clean a contributing factor in 72 percent of the fires caused by operational deficiency.  This is interesting information, but consumers cannot clean the lint behind the drum that causes most of the fires, and buildup occurs in less than the 18 month period suggested in the safety notice.

Review of the FEMA report underscores why this Settlement is so problematic.  According to the FEMA report, "An estimated 2,900 clothes dryer fires in residential buildings are reported to U.S. fire departments each year and cause an estimated 5 deaths, 100 injuries, and $35 million in property loss."  FEMA Report, page 1.  Class Counsel cite the statistics regarding the numbers of deaths, injuries and value loss in their response to Sweeney's Objection.  Dkt. 165, Page 3, lines 13-14.  They leave out the important information regarding the number of fires reported each year. The number of dryer fires reported nationwide (2,900) (FEMA Report, page 1), is not that much greater than the number of Electrolux related fires Plaintiff's expert (Frank Bernatowicz) use as a basis for evaluating the value of the Settlement.  Bernatowicz forecasts 11,597 future fires for the period 2014 – 2022.  On average that is 1,933 fires per year – approximately two-thirds of the dryer related fires FEMA indicates are reported nation-wide.  This revelation suggests two questions:  are these defective dryers really responsible for two-thirds of dryer fires nationwide?  Alternatively, are Bernatowicz' numbers wildly inflated?  Although the timing of Class Counsel's latest filing – one week before the fairness hearing – prevents further analysis of this issue, we would merely suggest this information underscores the need for careful scrutiny of the Settlement and the information submitted in support.

## C. Value: Objectors have questioned the value of the Settlement

### *1. This is primarily a coupon settlement*

Class Counsel vehemently protest this is not a "coupon" settlement. Although there are other features to the Settlement, the bulk of consumers will receive coupon relief. Both the cleaning and the product rebates are coupons. *See Synfuel v. DHL Express (USA),* 463 F.3d 646, 654 (7th Cir. 2006) (A "discount on a proposed purchase" is typical coupon relief). The legal effect of proposed relief "is a question of function, not just labeling." *Khatib v. County of Orange,* 639 F.3d 898, 905 (9th Cir. 2011) (interpreting "jail" where RLUIPA was silent.). Myriad courts have correctly rejected the argument that the parties can evade CAFA through semantics and applied CAFA notwithstanding settling parties using a label other than "coupon."

We acknowledge the settlement is structured to provide a variety of benefits, including cash compensation to those who have experienced a dryer fire. (We argued this was insufficient, not nothing.) Our concern is that the features of the Settlement ostensibly aimed at preventing fires will not be effective and instead perpetuate Defendants' efforts to hide the ball.

### *2. The Cleaning is a coupon (a discount for services)*

Class Counsel claim the Objectors erred in interpreting the value of the cleaning benefit. Class Counsel claim Sweeney is wrong to complain that class members will be liable for cleaning costs beyond the one hour, and assert that the customer will <u>not</u> be charged for the cleaning service whether it takes 12 hours or 1 hour. Dkt. 165, page 9, line 1. Class Counsel make the same claim in their response to the Newman/Miller objection. They claim,

> "the settlement is clear that class members will pay nothing for the cleanings, even if they take 12 hours, as such costs are borne by the service technicians pursuant to their agreements with Electrolux." Dkt. 164, pages 9-10, lines 25-1, citing to Settlement Agreement, IV.B.7.

Our review of the Settlement Agreement suggests Class Counsel misrepresent their own Settlement Agreement. The following paragraph of the Settlement Agreement states "Electrolux shall not be responsible for the cost of any replacement service parts, **nor shall Electrolux be responsible for any labor beyond the one hour approved** to clean the interior of the Dryer cabinet." Settlement Agreement, IV.B.8. If there is some other private agreement between Electrolux and its Service Technicians that rebuts this comment that should have been in the Settlement Documents; as it was not we can only assume that the consumers will be liable for the additional labor time. This directly contradicts Plaintiff's assertions.

However, our concern with the cleaning benefit is it is insufficient. The danger of lint buildup in these machines occurs in less than 18 months. If these machines need to be serviced multiple times over their useful life to make them safe, a one-time cleaning benefit accomplishes little. The value of this benefit is extremely limited; this is not a frivolous position, but is based on the assertions regarding the dangers posed by these products.

### D. The Legal Merits of the Objection

Plaintiffs criticize the objectors for not reviewing the factors a court should consider in reviewing the fairness of a settlement. (Citing *Lane v Facebook* and *Hanlon*). They have it backwards "The proponents of a settlement bear the burden of proving its fairness." *True v. American Honda Co.,* 749 F. Supp. 2d 1052, 1080 (C.D. Cal. 2010). Class Counsel must prove the fairness of the settlement.

The objectors raised issues the court should consider in evaluating the Settlement. Each of the objectors take issue with the amount offered in settlement, factor four in the multi-factor test under *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998), as restated in *Lane v. Facebook, Inc.,* 696 F.3d 811, 819 (9th Cir. 2012).

The objections are reactions of class members to the proposed settlement. Factor eight of the *Hanlon* test requires that the court consider the views of the class. As

required by Rule 23, the Notice included an invitation to object to the Settlement. The Notice stated:

> "If you do not exclude yourself from the Settlement, you may object to it. You can give reasons why you think the Court should not approve it. The Court will consider your views before making a decision."

Objectors play an important role in protecting class members in the settlement context. "Objectors can encourage scrutiny of a proposed settlement and identify areas that need improvement. They can provide important information regarding the fairness, adequacy, and reasonableness of the settlement terms." *Pallister v. Blue Cross and Blue Shield of Montana,* 285 P.3d 562, 568 (Mont. 2012). Despite the important role objectors play in the class action process, "[C]lass action lawyers may try to fend off interlopers who oppose a proposed settlement as insufficiently generous to the class; and given the role of such interlopers in preventing cozy deals that favor class lawyers and defendants at the expense of class members, their requests for fees must not be slighted." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (Posner, J.).

Recently, Justice Posner issued another important opinion underscoring the important role played by objectors. In *Eubank v. Pella Corp.,* 13-2091, 2014 WL 2444388 (7th Cir. June 2, 2014), Justice Posner observed:

> In this case, despite the presence of objectors, the district court approved a class action settlement that is inequitable—even scandalous. The case underscores the importance both of objectors (for they are the appellants in this case—without them there would have been no appellate challenge to the settlement) and of intense judicial scrutiny of proposed class action settlements. Eubank, at *3.

In responding to the objections, however, Class Counsel attempt to belittle and dismiss class members' views. They criticize our "blithe indifference to the best interests of the class." Class Counsel ignore the serious concerns expressed in the Objection.

They claim we "apparently have not reviewed the parties pleadings in this matter" (Dkt. 165, page 10, lines 2-3), although we relied heavily on the Complaint in

7

formulating our critique of this Settlement, and cite the Complaint several times in our Objection. The seriousness of the allegations raised demand rejection of this Settlement; Class Counsel should be ashamed they they are fighting so hard to support a Settlement that – based on the allegations of their own complaint – allows the conduct establishing this litigation to continue without interruption.

The issues raised are life threatening. But Class Counsel seem to think they should be rewarded because they fought a good fight. They assert

> "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." Hanlon, 150 F.3d 1011, 1027 (9th Cir. 1998).

An unfortunate editing error resulted in our including the assertion that "Avoiding fires is not a benefit." (Dkt. 160, page 13, line 15). Avoiding fires is a benefit, we just don't see that will happen because of the Settlement. That statement (improperly edited), was in our discussion of the experts' valuation of the Settlement, a section intended to highlight the economic value to the Defendants of avoiding *liability* for fires. But regardless of who is liable for a fire, the devastating effect of a fire is felt only by those who experience one.

Many class members either have in the past or will in the future experience a residential fire because of the Defendants' defective and dangerous products. Any resident of Southern California knows the devastating effects a residential fire can have. If this Settlement truly did substantially reduce the risk of fires we would salute Class Counsel. Our review of the facts and the terms suggest the Settlement will not achieve these lofty goals.

E. **Conclusions**

Although public policy may favor the Settlement, the public's interest is not served by a Settlement that leaves so many unanswered questions about a life threatening defective product.

The public has a right to know.  If the dryers are as dangerous as Plaintiffs say then Electrolux must replace or repair the dryers.  As is, the settlement does little to remedy the dangers of these fire-causing dryers.

Dated: August 16, 2014              By: /s/ Joseph Darrell Palmer_____
                                         Joseph Darrell Palmer
                                         Attorney for Patrick S. Sweeney

## **CERTIFICATE OF SERVICE**

I certify that on August 17, 2014, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of California by using the USDC CM/ECF system.

I certify all participants registered CM/ECF users that service will be accomplished by the USDC CM/ECF system.

                                  ___/s/ Joseph Darrell Palmer____
                                  Joseph Darrell Palmer