1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAWN ROBERTS, et al., | Master File No. SACV12-1644-CAS(VBKx) |
| Plaintiffs, | CLASS ACTION |
| vs. | **[PROPOSED]** **SECOND AMENDED** |
| ELECTROLUX HOME PRODUCTS, INC., | **ORDER** *NUNC PRO TUNC* **GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT** |
| Defendants. | |
| | The Honorable Christina A. Snyder |
| This Document Relates To: All Actions. | |

Plaintiffs Shannon Carty, Matthew Downs, Stephen Gavic, Michelle McGowan and Tammie Humphrey, on behalf of themselves and a nationwide Settlement Class ("Plaintiffs"), and Defendant Electrolux Home Products, Inc. ("Electrolux") (collectively, "the Parties") have entered into a Settlement Agreement ("Settlement Agreement" or "Agreement"). The Parties previously

-1-

submitted the Settlement Agreement to this Court for preliminary approval of the class action settlement provided for therein (the "Settlement").  On May 5, 2014, this Court entered a Class Settlement Preliminary Approval Order ("Preliminary Approval Order"), which included provisional certification of a nationwide class ("Settlement Class").  Now, the matter having come before the Court for hearing on August 18, 2014, having considered the Parties' joint motion for entry of an order granting final approval of the proposed Settlement and for entry of final judgment in this matter; the Parties' memoranda in support; Class Counsel's application for attorneys' fees, expenses, and incentive awards; briefing submitted to the Court on class members' objections; and arguments presented to the Court at the final approval hearing, the Court FINDS, CONCLUDES, ORDERS, AND ADJUDGES as follows:

## I.    JURISDICTION OF THE COURT

The Parties and the members of the nationwide Settlement Class ("Settlement Class Members") have submitted to the jurisdiction of this Court for purposes of the Settlement; the Court has personal jurisdiction over the Parties and the Settlement Class Members; the Court has subject matter jurisdiction to release all claims and causes of action released in the Settlement; and the Court has subject matter jurisdiction to approve the Settlement.

## II.   CLASS CERTIFICATION

In the Preliminary Approval Order, this Court granted conditional class certification to the above-referenced Settlement Class, as well as to the Past Dryer Fire Subclass and Future Dryer Fire Subclass.  The Court ordered that notice of the Settlement be directed by the claims administrator to the Settlement Class and Subclasses, defined as follows:

a.  <u>Settlement Class.</u> All residents of the United States who purchased,

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

primarily for personal or household purposes, a Dryer.  A "Dryer" is defined in the Settlement Agreement as a Frigidaire-, White Westinghouse-, Kelvinator-, Gibson-, Tappan-, Crosley-, or Kenmore- brand ball-hitch freestanding clothing dryer manufactured by Electrolux between January 1, 2002, and December 31, 2011. Excluded from the Settlement Class are (a) officers, directors, and employees of Electrolux and its parents or subsidiaries; (b) insurers of Settlement Class Members; (c) subrogees or entities claiming to be subrogated to the rights of Dryer purchasers, owners, or a Settlement Class Members; and (d) issuers or providers of extended Dryer warranties or service contracts.

b. Past Dryer Fire Subclass. All Settlement Class Members who experienced a Past Dryer Fire Event, defined as a fire in the drum, behind the drum, in the lint screen or adjacent air duct and blower, or base of the Dryer that occurred within 10 years after the purchase date of the Dryer that caused the Settlement Class Member to incur some unreimbursed out-of-pocket expense, including, but not limited to, property damage, insurance deductible, or repair or replacement of their Dryer.

c. Future Dryer Fire Subclass. All Settlement Class Members who experience a Future Dryer Fire Event, defined as after the Final Approval Order has been entered, but within the first 10 years after purchase of the Dryer, a fire occurring in the drum, behind the drum, in the lint screen or adjacent air duct and blower, or base of the Dryer that causes the Settlement Class Member to incur some unreimbursed out-of-pocket expense, including, but not limited to, property

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

damage, insurance deductible, or repair or replacement of their Dryer.

The Court found and concluded that the Settlement Class and the two subclasses satisfied all the requirements of due process and other applicable federal law and made several specific decisions relating to the Settlement Class. First, the Court appointed Edward A. Wallace, Amy E. Keller, and Dawn M. Goulet of Wexler Wallace LLP, Erin Dickinson and Charles Crueger of Hansen Reynolds Dickinson Crueger LLC, and Gregory F. Coleman of Greg Coleman Law PC as Co-Lead Counsel for Plaintiffs and the Settlement Class ("Class Counsel"), with authority to execute any and all pleadings and documents on behalf of the Settlement Class.  Second, the Court appointed Plaintiffs Shannon Carty, Matthew Downs, Stephen Gavic, Michelle McGowan and Tammie Humphrey as class representatives ("Class Representatives").  Third, the Court appointed Kurtzman Carson Consultants ("KCC") as Class Administrator.

Having considered all submissions filed with the Court pursuant to the Preliminary Approval Order, the Court now finds and concludes that those provisional findings and conclusions should be, and hereby are, confirmed in all respects as a final class certification order under Federal Rule of Civil Procedure 23 for the purposes of implementing the nationwide class action Settlement provided for in the Settlement Agreement and entering final judgment in this action.  The Court also overrules any remaining objections, and awards Class Counsel the requested attorneys' fees and costs and Class Representatives' the requested incentive payments.

## III.   NOTICE

The Court considered the Settlement Notice Plan submitted by the parties, and the Declaration of Carla A. Peak of KCC describing the Notice Plan.  The Preliminary Approval Order approved (1) the form and content of a mailed notice

of the Settlement to be provided to identifiable members of the Settlement Class (the "Settlement Notice"); (2) the form and content of a publication notice (the "Publication Notice") to be published in the nationally-circulated magazines *Parade* and *People*, as well as Internet banner notices which ran on websites such as HGTV.com and Facebook.com; (3) the form and content of the Frequently Asked Questions Form (the "FAQ") to be posted on the website created for this Settlement by the Settlement Administrator and mailed to any Settlement Class Member who requests a hard copy; (4) the form and content of the Claim Form; and (5) the plan specified in the Settlement Agreement for distributing and publishing the Settlement Notice, the FAQ, the Publication Notice, and the Claim Form.

The Court finds that the Notice itself is appropriate, and complies with Fed. R. Civ. P. 23(b)(3), 23(c)(2)(B), and 23(e), because the Settlement Notice, FAQ, and Publication Notice fairly, accurately, and reasonably informed members of the Settlement Class, in plain language, of (1) appropriate information about the nature of this litigation and the essential terms of the Settlement Agreement; (2) appropriate information about, and means for obtaining, additional information regarding this litigation and the Settlement Agreement; (3) appropriate information about, and means for obtaining and submitting, a Claim Form; (4) appropriate information about the right of members of the Settlement Class to exclude themselves from the Settlement, object to the terms of the Settlement Agreement, including Class Counsel's request for an award of attorneys' fees and costs, and the procedures to do so; and (5) appropriate information about the consequences of failing to submit a Claim Form or failing to comply with the procedures and the deadline for opting out of, or objecting to, the Settlement.

Additionally, the Notice is appropriate and complies with the applicable

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

rules because it describes in plain language: (1) the nature of the action; (2) the definition of the Settlement Class and Subclasses; (3) the class claims, issues, or defenses; (4) that a Class member could enter an appearance through an attorney if the member so desired; (5) that the Court will exclude from the Class any member who timely requested exclusion; (6) the time and manner for requesting exclusion; (7) the time and manner for objecting to the Settlement; and (8) the binding effect of a judgment on Settlement Class members under Fed. R. Civ. P. 23(c)(3) and the terms of the releases.

On June 19, 2014, Carla A. Peak submitted a declaration informing the Court of the Parties' compliance with the notice procedures.  And on August 8, 2014 (supplemented on September 11, 2014), Kenneth A. Stalzer—counsel for Electrolux—informed the Court that KCC mailed letters, pursuant to 28 U.S.C. § 1715, to the Attorney General of the United States and the attorneys general of each of the 50 states, U.S. territories, and the District of Columbia, and that no objections to the Settlement from any attorney general were received.

The Court finds that the Notice Plan—which includes the direct notice and publication notice as described above, in addition to the creation of a Settlement website (which includes copies of the Notice, Claim Form, FAQ or "long form" notice, and relevant pleadings) and toll-free number that Settlement Class members may call for additional information, meets the requirements of due process and Fed. R. Civ. P. 23(c) and (e), is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice.

Accordingly, the Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and California laws and due process.  The Court finally approves the Notice Plan in all respects.  The

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1    Court also finds that notice to appropriate federal and state officials pursuant to

2    the federal Class Action Fairness Act has been timely sent and that such notice

3    satisfies the requirements of the federal Class Action Fairness Act, 28 U.S.C. §

4    1715.  Any objections to the notice provided to the Class are hereby overruled.

5    **IV.    FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

6            In the Preliminary Approval Order, the Court found that the Settlement

7    Agreement appeared to be fair, reasonable, and adequate.  The Court confirms this

8    finding, holds that the Settlement is fair, reasonable and adequate and grants final

9    approval of the Settlement.

10           **A.    Benefits Available Under the Settlement**

11           Pursuant to the Settlement, Electrolux is required to provide several

12   different benefits to Settlement Class Members: (1) a Customer-Instruct Safety

13   Notice mailed to identifiable Settlement Class Members with the Settlement

14   Notice and posted to Frigidaire and Electrolux's websites (as well as the

15   Settlement website); (2) a free safety cleaning service for Settlement Class

16   Members who experienced a Qualifying Performance Problem (as that term is

17   defined in the Settlement Agreement), and to provide training to its authorized

18   service professionals regarding the proper way to perform this cleaning service

19   pursuant to the Settlement and for Dryers in the future; (3) cash reimbursement to

20   members of the Past Dryer Fire Subclass and the Future Dryer Fire Subclass of

21   out-of-pocket expenses incurred due to a Dryer fire within the first 10 years after

22   purchase; and (4) a cash rebate to any Settlement Class Members for the purchase

23   of a new Frigidaire- or Electrolux-brand dryer or other qualifying home appliance

24   upon the submission of a qualifying claim form, or a discount code to any

25   Settlement Class Member who submits a qualifying claim form to be used in

26   purchasing   new   products   from   Electrolux's   direct-to-consumer   website,

27

28

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

www.ElectroluxAppliances.com, in lieu of purchasing a new home appliance. The Settlement does not require consumers to release any personal injury or property damage claims—save for the economic loss to the Dryers, themselves.

Plaintiffs' counsel retained Frank Bernatowicz to perform a valuation of the various benefits under this Settlement.  Mr. Bernatowicz has a Bachelor of Science in Electrical Engineering and a Master of Business Administration degree (along with a concentration in Accounting).  He is also a Professional Engineer and Certified Public Accountant with lengthy experience as described in his Declaration.  (ECF No. 153-1 at 28-29.)  Mr. Bernatowicz employed methods and analyses of a type reasonably relied upon by experts in his field forming opinions or inferences on valuation.  In connection with his valuation, Mr. Bernatowicz also relied upon the Settlement Agreement, reports of two of Plaintiffs' other experts (Marthinus van Schoor, Ph.D. and Carol Pollack-Nelson, Ph.D.), a report authored by the Federal Emergency Management Agency ("FEMA") concerning dryer fires which utilized conservative, voluntarily-reported data from the National Fire Incident Reporting System ("NFIRS") where the fire department was called, and a review and summary of literature on consumer motivation and behavior concerning recall effectiveness authored by the United States Consumer Product Safety Commission ("CPSC").  The Court has reviewed Mr. Bernatowicz's valuation, along with the Parties' submissions and the record, and makes the following findings concerning the Settlement's benefits.

### 1.    Customer-Instruct Safety Notice

The Court finds that the Customer-Instruct Safety Notice confers significant benefits to Class Members, informing them that lint can build up inside of their Dryers—more specifically, behind the drums of the Dryers—and should be cleaned by an authorized service professional at least every 18 months.  The Court

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1    notes that, in addition to being disseminated to identifiable class members by U.S.

2    Mail and electronic mail, the notice is also posted to Electrolux and Frigidaire's

3    websites and the Settlement website.

4         This Customer-Instruct Safety Notice was negotiated and developed by the

5    Parties to address the allegations in Plaintiffs' Second Amended Consolidated

6    Class Action Complaint ("Complaint"), as well as certain findings by their expert

7    witnesses.  Electrolux's cleaning instructions and warning in its Use and Care

8    Guides contained no specific instructions that consumers needed to clean and

9    remove lint *behind* the drums of these Dryers—where lint could accumulate next

10   to the Dryers' heat source.  Notably, Plaintiffs' expert Carol Pollack Nelson, a

11   human factors psychologist specializing in consumer product safety (and who

12   formerly worked for the United States Consumer Product Safety Commission),

13   found—based upon research and a survey of Electrolux dryer owners—that

14   consumers were not likely to follow safety and cleaning instructions when they are

15   buried within the materials consumers receive when purchasing a Dryer.  A stand-

16   alone instruction is more likely to be read and understood by consumers and,

17   according to Plaintiffs' expert Frank Bernatowicz, will "have a significant impact

18   on the number of future fire incidents that will occur related to the subject

19   Electrolux dryers," because it will influence consumer behavior.  Mr. Bernatowicz

20   estimates, utilizing data from Dr. van Schoor concerning future fires, that the

21   benefits to the Class from the Customer-Instruct Safety Notice are valued at

22   approximately $15.8 million.[1]

23

24   _____

25   [1] Mr. Bernatowicz provides "full utilization" values and "projected utilization"
     values.  The Court discusses Mr. Bernatowicz's "projected utilization" values,
26   here, but notes that Mr. Bernatowicz provides a range of values as well as
     Electrolux's overall total potential liability as part of Class Counsel's Application

27                                                    *(Footnote cont'd on next page.)*

                                          9
28   ───────────────────────────────────────────────

The Court finds that this portion of the Settlement provides a substantial benefit to the Class and addresses the defects alleged in Plaintiffs' Complaint.

### 2.    Safety Cleaning Service, Free-of-Charge to Class Members

Class members who experienced a Qualifying Service Problem with their Dryers—such as overheating, burning, or scorching of laundry loads—within the first five years of the purchase of the subject Dryers (and if the Dryers are less than ten years old—the "useful life" of these Dryers), are eligible for one free cleaning of the Dryer by an Electrolux-authorized service representative.  Eligible Class members may schedule this cleaning any time within the next two years, and will be reminded 30 days before the end of that period to schedule the service. The cost of this service, which takes about an hour to perform, is estimated to be approximately $100 and there is no evidence in the record to rebut this estimate. Further, under the terms of the Settlement, should the cleaning be more than $100 or take more than one hour, Class members will *not* be charged for this service. As described in the Settlement Agreement and represented by the Parties to this Court—this service will occur free-of-charge to qualifying Class members.

Another component to this Settlement benefit requires Electrolux to provide training materials to its authorized service technicians concerning how to properly clean the subject Dryers.   Plaintiffs' counsel notes that, through testimony provided to the Court from Electrolux's witnesses, in order to clean these Dryers, the drums of the Dryers must be removed and lint cleaned from the heater pan. These witnesses also testified that Electrolux previously provided no training or

---

*(Footnote cont'd from previous page.)*

for Attorneys' Fees and Expenses and for Service Awards.  (ECF No. 153.)  No one has presented any evidence rebutting Mr. Bernatowicz's valuations.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

instructions to its authorized service technicians to clean the Dryers.  So, in some instances, if Class members previously requested and paid for a cleaning, there would be no guarantee that their Dryers would be properly cleaned, and that lint would be removed from behind the drums and in the heater pans.

Mr. Bernatowicz examined this and other data provided by Plaintiffs' expert Dr. van Schoor.  Dr. van Schoor's report included findings that the number of Dryer fires increases up to year five, and then significantly declines immediately thereafter.  Further, individuals who experience the "Qualifying Service Problems" discussed in the Settlement Agreement may have Dryer conditions that are more likely to result in a fire.  Dr. Bernatowicz determined that the benefit to the Class members under this portion of the Settlement is approximately $11.9 million.

The Court finds, based upon a review of the record, that this portion of the Settlement also provides a tangible benefit and a service to the Class members— free of charge—that is not a coupon.

### 3.    Monetary Benefits for Dryer Fire Subclass Members

Class members who experience a Dryer fire within the first ten years after the Dryer's purchase (which is, again, the useful life of the Dryers) will be eligible to receive up to $1,300 for unreimbursed expenses incurred in repairing or replacing their Dryers or for property damage.  This benefit is available for individuals who experienced a Dryer fire in the past or may experience one in the future for the entire prospective useful life of the last models of these Dryers sold—or until December 31, 2022.  Again, like the other benefits available to the Class members, individuals who make claims under this portion of the Settlement will not be releasing any personal injury or property damage claims—except for economic loss claims regarding damage to the Dryers themselves.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

Utilizing data from Plaintiffs' experts, the estimated value of this portion of the Settlement is $7.8 million based upon expected utilization rates. This portion of the Settlement provides real, tangible benefits in the form of monetary relief to the Fire Subclass members.

### 4. Cash Rebates and Online Vouchers to Purchase New Products

Finally, the Settlement provides up to $350 off the purchase price of a replacement Electrolux- or Frigidaire-brand clothes Dryer or an online code that can be used to purchase a number of Electrolux products at up to a 20% discount online. Customers will have up to two years to use the cash rebate benefit or online voucher code, and will be reminded to do so 30 days prior to its expiration. Additionally, the rebates and vouchers are fully transferrable—Settlement Class members may sell or give these benefits away to non-Class members.

The parties presented evidence and argument to the Court that Electrolux ceased producing these Dryers in 2011. Therefore, individuals who purchase new Electrolux products using the benefits provided under the Settlement will *not* be purchasing one of the allegedly-defective Dryers.

Mr. Bernatowicz did not assign a value to this portion of the Settlement, but the Court finds that it provides additional benefits to the Settlement Class members above and beyond the benefits already discussed.

### B. Additional Fairness Considerations

The Court finds that the benefits offered to the Settlement Class members are substantial. Taking other factors into account as required for final approval, the Court finds that the Settlement was negotiated with the assistance of nationally-renowned mediator Jonathan Marks, who submitted a declaration that the Settlement was reached after arms' length negotiations without any evidence

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1    of fraud or collusion in the negotiation process.

2         The Settlement was reached notwithstanding that on the merits Plaintiffs

3    faced a number of obstacles on the merits, including that Electrolux has won every

4    case it has tried regarding the alleged defects found in these Dryers, and that

5    Electrolux takes the position that over 99 percent of Dryer owners will never

6    experience a fire.  In addition to issues presented on the merits proving design

7    defects and causation, Plaintiffs faced obstacles regarding the economic loss rule

8    and manifestation of injury defenses under state law.   Plaintiffs also faced

9    obstacles related to the certification of a nation-wide or several state-wide classes

10   and maintaining certification through trial.

11        Having considered (1) the benefits offered to Settlement Class Members;

12   (2) the strength of Plaintiffs' case on the merits, and the defenses that may be

13   asserted by Electrolux; (3) the risks to members of the Settlement Class that

14   Electrolux would successfully defend some or all of the claims asserted by

15   Plaintiffs, whether litigated on a classwide basis or by members of the Settlement

16   Class themselves; (4) the expense and complexity of continued litigation; (5) the

17   length of time that would be required for members of the Settlement Class, or any

18   group thereof, to obtain a final judgment through one or more trials and appeals;

19   (6) the experience and views of Co-Lead Counsel and Electrolux's counsel; and

20   (7) the small number of members of the Settlement Class who have elected to be

21   excluded from the Settlement or who have objected to the Settlement, the Court

22   finds the Settlement to be fair, reasonable, and adequate.  Moreover, the Court

23   finds that the Settlement is the result of extended, arm's length negotiations

24   among experienced counsel, before an experienced mediator, and is non-collusive.

25        In consideration of the foregoing, the Court grants final approval of the

26   Settlement Agreement and enters this Final Order and Judgment implementing its

27

28

terms, including but not limited to the releases in the Settlement Agreement as to Settlement Class members except those who timely sought exclusion.    All objections filed by members of the Settlement Class have been considered by the Court and are hereby overruled, as explained further herein.  The Court finds that the Settlement Agreement is in all respects fair, reasonable, adequate, and in the best interest of the Settlement Class and hereby adopts and incorporates the terms of the Settlement Agreement for purposes of this Final Order and Judgment, including the definitions set forth in the Agreement.  The Parties are directed to consummate the Settlement Agreement in accordance with its terms.

## V.    FEES, COSTS, AND INCENTIVE AWARDS

The Court recognizes that Mr. Marks's declaration also stated that attorneys' fees were negotiated separately and apart from the Settlement.  The Court finds that certain provisions of this Settlement will require additional work by Class Counsel, and that they have incurred, and will continue to incur, additional fees and expenses for which they will not seek reimbursement, including potential follow-on enforcement actions and monitoring of the Settlement.    Class Counsel must monitor the Fire Subclass portion of this Settlement until at least December 31, 2022, as the Settlement provides for a meet and confer process regarding any denied claims.

The Court finds that the lodestar method is the appropriate approach for the calculation of attorneys' fees in this case.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *In re Ferrero Litig.*, No. 11-cv-00205-KSC, 2012 U.S. Dist. LEXIS 94900, *10 (S.D. Cal. July 9, 2014), *aff'd*, No. 12-56469, 2014 U.S. App. LEXIS 13573 (9th Cir. July 16, 2014) (in class action settlement providing for injunctive relief, "[t]he Court concludes that Plaintiffs are prevailing parties as the term is used in the fee-shifting provision of

the Consumer Legal Remedies Act, and Class Counsel are thus entitled to a reasonable fee and expense award for their work.").  This litigation asserted claims under fee-shifting statutes including state consumer protection statutes (Cal. Civ. Code § 1750, *et seq.*, Ark. Code Ann. § 4-88-107, *et seq.*, N.Y. G.B.L. § 349, *et seq.*), and the Magnuson-Moss Warranty Improvement Act (15 U.S.C. § 2301, *et. seq.*)), each of which provides for attorneys' fees to a successful plaintiff (15 U.S.C. § 2310(d); Cal. Civ. Code. § 1780(e); Ark. Code Ann § 4-88-113; N.Y. G.B.L. § 349(h)) as well as significant injunctive relief and safety benefits.  Under these circumstances the lodestar method of calculating fees is the appropriate method by which to measure attorneys' fees in this matter.

The Court hereby awards Class Counsel $8,000,000 for their incurred expenses and costs, as well as for attorneys' fees.  As the record reflects, all of the attorneys appointed Class Counsel—in addition to local counsel in each of the consolidated actions—have prosecuted this action, with no guarantee of recovery, and have advanced all costs to date.  The Court notes that Class Counsel has incurred over $627,000 in costs.  As of July 22, 2014, this $8,000,000 request represented only a 1.23x multiplier on Class Counsel's fees[2]—and this multiplier will likely decrease as the Settlement moves forward and Class Counsel continues to monitor claims and respond to inquiries from the Class members.  The Court finds that this multiplier is appropriate given the extensive amount of time spent by Class Counsel over the course of the two years prosecuting this action, the complexity of the case, the quality of representation, the novelty of issues presented (including the sophisticated engineering concepts involved in this case),

---

[2] The Court finds that Class Counsel's hourly rates are consistent with prevailing market rates.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1   and the risk of nonpayment.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th

2   Cir. 1998) (citations omitted).

3       The Court also notes that a settlement valuation cross-check supports this

4   fee award.  The evidence and expert testimony submitted to the Court supports a

5   valuation of the Settlement benefits totaling a minimum of $35.5 million.  This

6   value is based on expected utilization rates for which no contradictory evidence

7   has been submitted.  According to the evidence submitted, the total potential value

8   of the Settlement is $155 million, however, that number was not used in

9   evaluating the fee request.  The cash rebate portion of the Settlement has not been

10  valued or included in performing a valuation for lodestar cross-check purposes.

11      The requested fees approximate 21% of the value of the Settlement.  This is

12  well within—and even below—the benchmark recognized as appropriate in this

13  Circuit.  *See Hanlon*, 150 F.3d at 1029; *Iorio v. Allianz Life Ins. Co. of N. Am.,*

14  *Inc.*, No. 05-cv-0633-JLS (CAB), 2011 U.S. Dist. LEXIS 21824, **36-37 (S.D.

15  Cal. Mar. 3, 2011) (attorneys' fees represented 16.48% of settlement's "full

16  utilization value," and 29.95% of the settlement's "projected utilization value").

17  The payment of attorneys' fees and costs will not diminish any of the benefits

18  provided to the Settlement Class members.

19      The Court further awards $3,000 as an incentive award to each Class

20  Representative: Shannon Carty, Matthew Downs, Stephen Gavic, Michelle

21  McGowan and Tammie Humphrey, for their time spent prosecuting this action—

22  including sitting for depositions, responding to discovery, and making their homes

23  and Dryers available for inspection.   The Court notes that certain Class

24  Representatives experienced past dryer fires, and will submit claim forms as part

25  of the Past Dryer Fire Subclass, and their claims will be considered and paid

26  pursuant to the terms of the Settlement Agreement.

27

28

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

The Court further finds that the Class Representatives are individually releasing claims for the property damage experienced as a result of their Dryer fires (and none of the absent Settlement Class members are providing these releases).  The Court notes that, as part of their individual settlements, Plaintiffs will receive the following for individual (non-class) property damage claims: $25,000 to Shannon Carty; $7,587.33 to Matthew Downs; and $1,239.65 to Michelle McGowan.  These separate settlement amounts do not render the Class Representatives inadequate or otherwise cause a conflict of interest; rather, the Class Representatives are settling their individual claims and providing releases— above and beyond the Settlement—as part of their own individual property damage claims.  The Court finds that this creates no conflict of interest between the Class Representatives and the Class; nor does it creates a conflict between Class Counsel and the Class.  *See La Fleur v. Medical Mgmt. Int'l*, No. 13-01960-VAP (OPx), 2014 U.S. Dist. LEXIS 90367, *22 (C.D. Cal. June 25, 2014) (incentive payment of $15,000 to each named plaintiff approved because, *inter alia*, the named plaintiffs released *all* claims against the defendant); *Hillgamyer v. Reliastar Life Ins. Co.*, No. 11-cv-729, 2013 U.S. Dist. LEXIS 147457 (W.D. Wis. Oct. 4, 2013) (pursuit and settlement of class representative's individual claim not incompatible with her serving as class representative so long as no class-wide release given).  Finally, the Court awards $839 in litigation costs to Tammie Humphrey for the destructive testing of her Dryer as a necessary cost to pursue this litigation.

These amounts shall be paid by Electrolux consistent with the terms of the Settlement Agreement and will not diminish any of the benefits afforded to the Settlement Class members.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

## VI.    OBJECTIONS TO THE SETTLEMENT

The Court has had an opportunity to review the objections submitted by a small percentage of the Settlement Class Members (10 objections by consumers, and objections from four objectors represented by counsel) and finds that an overwhelming majority of the Settlement Class views the Settlement favorably (there are approximately 6.5 million Class members), and notes that a majority of the consumer objectors have represented to Class Counsel that they will be or have withdrawn their objections.[3]  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to class members.").  *See also Churchill Vill., LLC v. GE*, 361 F.3d 566, 577 (9th Cir. 2003) (settlement approved with 500 opt-outs and 45 objections out of 90,000 class members); *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 29042, *12 (N.D. Cal. Mar. 5, 2010) (response of Class favored settlement where only 12 of 82,000 class members objected).  Of the remaining objections, the Court has carefully considered the letters and briefs submitted on behalf of the objectors and by Class Counsel and overrules the objections on the following bases.

---

[3] All objections received by Class members were attached to the Declaration of Amy E. Keller (ECF No. 163).  The Court has reviewed those objections in connection with issuing this Order, and finds that the objections, if not formally withdrawn, are overruled for the same reasons discussed herein related to the other objections.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

### A.     Consumer Objectors

#### 1.     Objector Jerry Atkins

The Court notes that Mr. Atkins bases his objection on three main points: 1) that Electrolux has failed to inform owners of the cause and remedies considering long-term use of the Dryers; 2) that Electrolux has offered no preventative solutions; and 3) that Electrolux has not identified any design changes in newer models that would eliminate the alleged defect.

The Court finds that Mr. Atkins's objections are actually addressed by the terms of the Settlement: 1) Class members are receiving a Safety Notice that informs them that lint must be cleaned from behind the Dryers' drums to reduce the risk of fire and that this cleaning must be performed every 18 months; 2) Electrolux is cleaning eligible Class members' Dryers at no cost to the Class members; and 3) that newer models of Electrolux dryers do not contain the alleged defect or "ball-hitch" design described in Plaintiffs' Complaint.  Mr. Atkins states that he fears that the "suit will permit escaping responsibilities for defective design," however, that ignores the reality of Electrolux's obligations under the terms of the Settlement as well as the fact that Class members are not, nor will they be required to, release any personal injury or property damage claims for past or future Dryer fires.  Mr. Atkins's objection is hereby overruled.

#### 2.     Objector Ronald Mondary

Mr. Mondary objects to the Settlement for a number of reasons; however, his objections are the result of a misunderstanding of the Settlement Agreement and issues with Electrolux that appear to have nothing to do with the allegations of this case.  Namely, Mr. Mondary argues that he will be charged for the safety cleaning benefit; however, that benefit will be provided to eligible class members free-of-charge.  Concerning Mr. Mondary's other objections (that his refrigerator

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1   is not, as advertised, energy efficient, or that delivery persons who installed his

2   Electrolux machines robbed his home), those claims are not the subject of this

3   lawsuit, and he retains the right to seek relief concerning those other events, as

4   appropriate, pursuant to another lawsuit if he so chooses.   Mr. Mondary's

5   objection is hereby overruled.

6         **B.     Objections by those Represented by Counsel**

7         The Court notes that, initially, three objections were filed by objectors

8   represented by counsel July 28, 2014.   One of those objections, advanced by

9   Daniel Hall, was later withdrawn after Class Counsel submitted a response to his

10  objection on August 11, 2014.[4]  Two objections remain.  Neither counsel for the

11  objectors nor the objectors themselves appeared at the Fairness Hearing on August

12  8, 2014.  The objectors submitted no evidence or expert testimony in support of

13  their objections.

14        As the Ninth Circuit recognized in *Hanlon v. Chrysler Corp.*:

15        Of course it is possible . . . that [a] settlement could have been better.

16        But this possibility does not mean [a] settlement presented [is] not

17        fair,   reasonable   or   adequate.   Settlement   is   the   offspring   of

18

19  _____

20  [4] Despite the withdrawal of this objection, the Court notes that the objection would
    have been overruled in its entirety.  It is unclear whether Mr. Hall even had
21  standing to object to the Settlement.   The rest of Mr. Hall's objections
    misunderstand or misread the Settlement Agreement, or provide no evidence or
22  support (besides attorney argument) to advance his objection.  For example, the
    Court overrules Mr. Hall's characterization of the Settlement as providing only
23  "illusory value" to the Class—as stated herein—the benefits to the Class are
    substantial.  Mr. Hall also misinterprets the Settlement Agreement concerning his
24  objections related to the Fire Subclasses—no Class member is required to release
    his or her personal injury or property damage claims under the Settlement.
25  Finally, no conflicts exist between Class Counsel, the Class Representatives, and
    the Class.   As explained herein, Class Counsel's attorneys' fees request is
26  reasonable and the Class Representatives' settlement of their individual claims
    does not render them inadequate.

27                                          20

28

compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion. In this regard, the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness. There [is] no disparate treatment between class members; all stood to benefit equally, a fact which lessens the likelihood that the named Plaintiff and their attorneys colluded with [the defendant] to increase their own recovery at the expense of the unnamed Plaintiff who Class Counsel had a duty to represent. . . . [Objectors who] . . . thought that [their personal claim was being sacrificed for the greater good] had the right to opt out of the class.

*Hanlon*, 150 F.3d at 1027.

The Court addresses the particular objections of the objectors represented by counsel as follows.

### 1.     Objector Patrick Sweeney

The Court has considered the objections of Mr. Sweeney, overrules them in their entirety, finds that they are not made for the purpose of benefitting the Class), and finds that they are meritless in all respects.  The objections are filed by counsel who routinely files objections to class settlements.  *See, e.g., City of Roseville Empls. Ret. Sys. v. Orloff*, 484 F. App'x 138, 141 (9th Cir. 2012) (Mr. Palmer's appeal of an award of attorneys' fees found to be "meritless" and based upon misapprehensions of the law); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, **22-24, n.4 (N.D. Cal. July 11, 2014) (overruling objections and recognizing that "[l]ike Darrell Palmer, attorney Patrick Sweeney also has a long history of representing objectors in class action

21

1  proceedings"); *In re Dell Sec. Litig.*, No. A-06-CV-726-SS, ECF No. 342 (W.D.

2  Tex. Jan. 11, 2011) (objection showed "little respect for the intelligence of [the]

3  Court.").[5]  Here, as noted in Plaintiffs' response to Mr. Sweeney's objection, the

4  fact that Mr. Palmer's client is also a serial objector in class action matters raises

5  additional issues as to the legitimacy of the objection.

6      Aside from the fact that the Court finds that the objection is lawyer-driven

7  and appears to be brought for an improper motive, and would otherwise delay

8  important safety benefits to the Settlement Class members, the Court also finds

9  that the objection is without merit, without evidentiary support and rests on

10  inaccurate premises and mischaracterizations of the Settlement.

11      This is not a "coupon settlement."  While a portion of the Settlement

12  provides Settlement Class members with cash rebates and vouchers, it provides

13  numerous other benefits to the Settlement Class Members that specifically address

14  the allegations in Plaintiffs' Complaint—such as safety measures including a

15  notice to consumers, training regarding cleaning and a cleaning program designed

16  to prevent fires. Contrary to Objectors' unsupported arguments, the cleaning

17  benefit is a significant and tangible benefit to Dryer owners and is not a "coupon"

18  or a "discount for services."  The cleaning program is neither unreasonably limited

19  nor "valueless" as Mr. Sweeney (and, as discussed below, the other objectors)

20  asserts without support.   Further, the Settlement also includes cash payments to

21

22

23

24

25

26  [5] The Court notes that Mr. Palmer has faced disciplinary actions in a number of courts, and has a pending disciplinary action before the State Bar of California.

27

28  SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

individuals who have suffered a fire and cash payments to those individuals who

buy a new dryer or other product. These actual benefits are not "coupons."[6]

The Court finds that Mr. Sweeney's claims that the Settlement is

"valueless" are without merit and consist of nothing more than unsupported

attorney argument that contradicts the evidence presented to this Court. As

discussed fully herein, the Settlement provides significant safety benefits to the

Class and provides real economic relief to Class Members. The Court finds the

valuation of the Settlement performed by Mr. Bernatowicz to be reliable and

based upon standard accounting practices, and notes that the Mr. Sweeney has

provided no evidence that Mr. Bernatowicz's calculation is "speculative," or

"excessive," as his objection so states.[7] Objectors have not provided their own

valuation of the Settlement and have provided no evidence or expert testimony as

to what they believe its value might be. They conclude without support or

evidence that the Settlement is simply "valueless." These conclusory statements

cannot be weighed against the significant evidence and expert testimony

supporting the value of the Settlement benefits. *See In re Toyota Unintended*

*Acceleration*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298,

**310-311 (C.D. Cal. July 24, 2013) (rejecting unsupported objections to a

---

[6] The cash rebate program has not been used to value the Settlement, but the Court notes that it does provide additional value to the Class, objectors' arguments to the contrary.

[7] Mr. Sweeney also states that the settlement benefit provided to the Fire Subclass members is of "little value" because he misinterprets the Settlement. The Settlement is *not capped*, will be *fully-funded* by Electrolux, and does *not* require any release of personal injury or property damage claims (save for the economic loss to the Dryer, itself). That is, individuals who experience a Dryer fire may recoup dollar for dollar what they paid for their Dryers, and may still pursue their own personal injury or property damage claims.

1    proposed fee award where the objectors presented no expert declaration or other

2    evidence undermining the Court's conclusions).

3           Mr. Sweeney also questions whether the Settlement will reduce the risk of

4    fires, and points to the FEMA Report cited by Mr. Bernatowicz as evidence of the

5    average damage caused by a dryer fire in the United States.   Mr. Sweeney

6    provides no expert testimony to support his speculation based on this FEMA

7    report on dryer fire rates or on the rate of failure of Electrolux's Dryers, and his

8    objection on this point is overruled on that basis alone.   In any event, his

9    assumption that the FEMA report forecasts dryer fires or reflects all dryer fires in

10   the United States is inaccurate. As explained by Class Counsel at the Fairness

11   Hearing, the National Fire Incident Reporting System ("NIFRS") data in the

12   FEMA report does not forecast Dryer failure rates.   This is because the NIFRS

13   data only contains data from *fire departments* who *voluntarily* report information

14   on fires where the fire department was actually called.   Mr. Bernatowicz and Dr.

15   van Schoor used Electrolux's own information to forecast potential Dryer fires

16   using broad search terminology in Electrolux's warranty database, which the

17   Court finds to be reliable for purposes of this settlement.   Mr. Bernatowicz's

18   valuation of the benefit provided by the safety cleaning and notice provisions of

19   the Settlement is accepted as reliable by this Court. Mr. Sweeney has provided no

20   evidence to show that this valuation is speculative or inaccurate.

21          Mr. Sweeney's arguments that commonality "may" not exist are likewise

22   overruled.   His argument that commonality may not exist because "every fire is

23   different" or "issues of comparative negligence" may exist is unexplained and

24   lacks merit, given members of the Fire Subclass receive identical benefits (that is,

25   up to the value they paid for the Dryers for economic loss related to the Dryers)

26   under the Settlement and Class Members' property damage or personal injury

27

28
                                           24

1    claims are *not* released under the Settlement: they (or their insurers) are still able

2    to pursue those claims.  Mr. Sweeney's argument that commonality does not exist

3    among the Class members is also without merit because Plaintiffs' claims arise

4    from breach of warranty and violations of state consumer protection laws—

5    damages from those violations which occur at the *point of sale* of the Dryers—not

6    if and when the Dryers catch fire.

7         Mr. Sweeney's argument that Class Counsel are somehow "inadequate"

8    because they are "putting their own interests ahead of the class" lacks foundation

9    and contradicts the evidence.  Sweeney and Palmer never explain their basis for

10   this conclusory statement.  Jonathan Marks, the mediator overseeing settlement

11   negotiations, found no evidence of collusion or that counsel put their interests

12   ahead of the Class.  Mr. Marks' opinion is compelling and objectors provide no

13   evidence to the contrary.  Mr. Sweeney's objection on this basis is overruled.

14        Mr. Sweeney also takes issue with the requested fee award.  The Court has

15   found that Class Counsel's fee request is reasonable, and the information provided

16   to the Court concerning their lodestar and hourly rates is adequate.  *See* Section V,

17   *supra*. Mr. Sweeney provides no evidence or expert declaration to contradict

18   Plaintiffs' submissions.   As such, his objection to the amount of Plaintiffs'

19   attorneys' fee request is properly overruled.   *See In re Toyota Unintended*

20   *Acceleration*, 2013 U.S. Dist. LEXIS 123298, **310-311 ("All objectors to the

21   proposed fee award contend that it is excessive.  As a preliminary matter, the

22   Court notes that none of the objectors have provided an expert declaration or any

23   other evidence undermining the Court's conclusions herein.").  As described above

24   in this Court's approval of Attorneys' fees, the multiplier requested by Class

25   Counsel is more than appropriate given the complexity of the case, the work

26   required, the discovery performed, and the results obtained for the Class—which

27

28

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1    are substantial and appropriate.

2           Objectors' argument that the fee petition was not timely filed is also

3    overruled.  Plaintiffs intent to seek attorneys' fees and the amount of those fees

4    have been in the record of this case since April 2014, and both the Plaintiffs'

5    motion for Final Approval and Class Counsel's application for Attorneys' Fees

6    were filed within the deadlines set by this Court.   Plaintiffs' request for

7    Preliminary Approval, filed on April 30, 2014, listed the bases for approval, the

8    terms of the Settlement, attached the Notices and outlined the amount of fees

9    attorneys were seeking.   The Notices also provided Class members with

10   information concerning the amount of fees requested.  Objectors fail to explain

11   how these filings provide insufficient notice regarding the terms of the Settlement

12   and the amount of fees Class Counsel is seeking (especially when the terms are

13   identical).  Plaintiffs' application for attorneys' fees and expenses was filed *prior*

14   to the deadline to submit objections.  Further, the Court notes that this Settlement

15   does not involve a common fund apportioned between relief and fees—and the

16   attorneys' fee award will not reduce any benefits received by the Class.  Thus, any

17   objection regarding a so-called "clear sailing" provision is also overruled.  *See*

18   *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 U.S.

19   Dist. LEXIS 14301, **29-30 (C.D. Cal. Jan. 30, 2014) ("The Settlement

20   Agreement merely provides that PCNA will not object to a fee petition by

21   plaintiffs' counsel so long as the requested fees and costs do not exceed $950,000.

22   This type of provision is appropriate when, as here, it does not impact the

23   substantive benefits offered to the class."); *Calloway v. Cash Am. Net of*

24   *California LLC*, No. 09-CV-04858 RS, 2011 U.S. Dist. LEXIS 41098, **3-5

25   (N.D. Cal. Apr. 12, 2011) (where no common fund exists, no adversarial

26   relationship exists between class counsel and the class concerning fees).  As

27

28

26

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

evidenced by their extensive objections, Mr. Sweeney, represented by Mr. Palmer, appear to have had ample opportunity to review and critique Class Counsel's fee petition and their objection based on the timing of the filing of Plaintiffs' Fee Petition therefore lacks merit.

The Court has considered the entirety of Mr. Sweeney's objection and overrules that objection  as lacking merit and foundation.

### 2.    Objectors Kristina Newman and Joyce Miller

The Court has considered the objections of Ms. Newman and Ms. Miller and overrules them in their entirety.

The Court has already held that this is not a "coupon" settlement.  *See* Sections IV.A. and B, V., and VI.B.1., *supra*.   For the same reasons as set forth in the foregoing sections of this Court's Order, Ms. Newman and Ms. Miller's objections on this point are likewise overruled.

The Court also overrules Newman and Miller's objections regarding the purported "lack of benefit" the Settlement provides the Settlement Class for the same reasons contained in Sections IV.A. and B, V., and VI.B.1., *supra*.  As fully set forth therein, the Settlement provides numerous benefits to the Settlement Class Members that specifically address the allegations in Plaintiffs' Complaint— such as safety measures including a notice to consumers, training regarding cleaning, and a cleaning program designed to prevent fires. The Settlement also includes cash payments to individuals who have suffered a fire and cash payments to those individuals who buy a new dryer or other product.  No part of the Settlement requires class members to release personal injury or property damage claims above the economic loss to the Dryers, themselves.

Ms. Newman and Ms. Miller provide no expert testimony or evidentiary support for their objection that the Settlement is "without benefit."   Their

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

objections cannot properly be weighed against the ample evidence and expert testimony before this Court supporting the valuation of the Settlement benefits. *See supra* Section VI.B.1.

The Court also overrules the objection and finds that the claims procedure is reasonable and adequate.  Further, the acceptable documentation to prove that Subclass members experienced a fire suggested in the Settlement papers (such as photographs of the Dryer, fire department reports, or documentation from insurance companies) are more than reasonable, especially considering that Class Counsel may meet-and-confer with Electrolux to resolve any claims that are denied for lack of sufficient documentation.[8]

The objectors also takes issue with the requested attorneys' fees and incentive awards; however, as noted herein, Class Counsel has provided adequate support to justify their reasonable fee request, and the fee request is further supported by the valuation of the Settlement benefits.  *See* discussion *supra* Section VI.B.1.  As described above in this Court's approval of attorneys' fees, the multiplier requested by Class Counsel is more than appropriate given the complexity of the case, the work required, the discovery performed, and the results obtained for the Class.  *See supra* Section V.

Finally, neither Class Counsel nor the Class Representatives placed their interests ahead of the interests of the absent Class members—as the objectors erroneously suggest.  As is shown in the evidence submitted by the mediator, Mr. Marks, there was no collusion in negotiating the attorneys' fees in this matter and

---

[8] One consumer objector (Mr. Olesh) withdrew his objection on this basis after discussing the many different types of supporting documentation he could submit to support his claim as a Subclass member.  *See* Declaration of Amy E. Keller (ECF No. 163).

28

those fees were negotiated *separate and apart* from the Class Settlement.  The Class Representatives' settlement of their own personal property damage claims—separate and apart from the Settlement and without reducing any of the Settlement benefits—does not make them inadequate representatives, nor does it implicate any breach of fiduciary duty to the absent Class members by Class Counsel.  *See supra* Section V.

The Court has considered the objections raised by Ms. Newman and Ms. Miller, and overrules them in their entirety.

## VII.   EXCLUSIONS FROM THE SETTLEMENT CLASS

The Court notes, as it did in its discussion regarding objectors to the Settlement, that the reaction to the Settlement has been overwhelmingly positive.  The Settlement Administrator has received requests for exclusion from 62 members of the Settlement Class, and has provided Class Counsel and Electrolux's counsel copies of those requests.  Class Counsel and Electrolux's counsel have jointly filed with the Court a list of those persons who have timely elected to be excluded.  All persons named in the list on file with the Court as having filed timely exclusions with the Settlement Administrator are hereby excluded from the Settlement Class and will not be bound by the terms of the Settlement.  Each individual or entity who falls within the definition of the Settlement Class shall be bound by the terms of the Settlement.

## VIII.  IMPLEMENTATION OF SETTLEMENT

Consistent with the Settlement Agreement, Electrolux shall make the payments described in the Settlement Agreement, including, without limitation, payment to each Settlement Class Member of the cash rebate amount, free Dryer cleaning service, or cash reimbursement for a dryer fire, pursuant to applicable terms and documentation requirements set forth in the Settlement Agreement. The

1   Parties shall carry out their respective obligations as stated in the Settlement

2   Agreement.

3   **IX.    RELEASE, COVENANT NOT TO SUE, AND EFFECT OF**

4   **SETTLEMENT**

5       **A.    Release**

6           **1.    Settlement Class Members Who Are Not Members of**

7               **the Past or Future Dryer Fire Subclass**

8           In consideration of the terms of the Settlement Agreement, as to Plaintiffs

9   and Settlement Class Members who are not members of the Past Dryer Fire

10  Subclass or currently members of the Future Dryer Fire Subclass, they are hereby

11  found, deemed, and adjudged to have fully, finally, and forever released and

12  discharged all known and unknown claims, actions, and causes of action dealing

13  whatsoever with the Dryers, other than claims for personal injury or property

14  damage.  If any Class member becomes a member of the Future Dryer Fire

15  Subclass in the future, he or she does not waive his or her ability to pursue

16  additional compensation pursuant to this Settlement.  Plaintiffs have expressly,

17  knowingly, and voluntarily waived the provisions of Section 1542 of the

18  California Civil Code, which provides as follows, "A general release does not

19  extend to claims which the creditor does not know or suspect to exist in his favor

20  at the time of executing the release, which if known by him must have materially

21  affected his settlement with the debtor."

22          Plaintiffs have expressly waived and relinquished all rights and benefits that

23  they may have under, or that may be conferred upon them by, the provisions of

24  Section 1542 of the California Civil Code and of all similar laws of other States, to

25  the fullest extent that they may lawfully waive such rights or benefits pertaining to

26  their released claims.

27

28

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

      **2.**      **Members of the Past Dryer Fire Subclass or Future**

              **Dryer Fire Subclass**

In consideration of the terms of the Settlement Agreement, as to members of the Past Dryer Fire Subclass or for those individuals who become members of the Future Dryer Fire Subclass, they are hereby found, and will be found, deemed, and adjudged to have fully, finally, and forever released and discharged all known and unknown claims, actions, and causes of action for economic loss dealing whatsoever with the Dryers, specifically excluding claims for personal injury or damage to property other than the Dryers.  Plaintiffs have expressly, knowingly, and voluntarily waived the provisions of Section 1542 of the California Civil Code, which provides as follows, "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Plaintiffs have expressly waived and relinquished all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code and of all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to their released claims.

The Court shall retain jurisdiction over the Parties and the Agreement with respect to the future performance of the terms of the Agreement, and to assure that all payments and other actions required of any of the Parties by the Settlement are properly made.

**B.**      **Covenant Not to Sue**

In consideration of the terms of the Settlement Agreement, all Settlement Class Members, including Plaintiffs, are hereby found, deemed, and adjudged to

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
                                    MASTER FILE NO. 8:12-cv-01644-CAS-VBK

have (a) covenanted and agreed that neither Plaintiffs nor any of the Settlement Class Members, nor anyone authorized to act on behalf of any of them, will commence, authorize, or accept any benefit from any judicial or administrative action or proceeding, other than as expressly provided for in this Settlement, against Releasees (as defined in the Settlement Agreement), or any of them, in either their personal or corporate capacity, with respect to any claim, matter, or issue that in any way arises from, is based on, or relates to any alleged loss, harm, or damages allegedly caused by Releasees, or any of them, in connection with the Released Claims (as defined in the Settlement Agreement); (b) waive and disclaim any right to any form of recovery, compensation, or other remedy in any such action or proceeding brought by or on behalf of any of them; and (c) agree that the Settlement Agreement shall be a complete bar to any such action.

### C.     Settlement Agreement as Exclusive Remedy for Released Claims

Upon entry of this Order and Judgment, enforcement of the Settlement Agreement shall be the exclusive remedy for all members of the Settlement Class, including Plaintiffs, all of whom are hereby permanently barred and enjoined from instituting, commencing, prosecuting or continuing to prosecute, either directly or indirectly, any claims released under the Settlement Agreement against Electrolux or Releasees, as the release provisions of the Settlement Agreement define these terms.  Settlement Class Members who are prosecuting or asserting any of the released claims are ordered to take whatever measures necessary to effectuate dismissal of their claims.

### D.     Effect of a Final Judicial Determination of Invalidity or Unenforceability

If, after entry of this Final Order and Judgment by the Court, a notice of

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

appeal of this Final Order and Judgment is timely filed by any party, objector, claimant, or other person or entity, and if an appellate court makes a final determination that this Final Order and Judgment is in any respect invalid, contrary to law, or unenforceable (except for such determinations that are limited to the attorneys' fees or incentive awards), this Order shall be automatically vacated, the Settlement Agreement shall be null and void, and Electrolux may fully contest certification of any class as if no Settlement Class or subclasses had been certified.  In addition, the Parties shall return to their respective positions in this lawsuit as they existed immediately before the Parties executed the Settlement Agreement, and nothing stated herein or in the Settlement Agreement shall be deemed an admission or waiver of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in this action or in any other action.

## X.    NO ADMISSION OF LIABILITY

The Parties entered into the Settlement Agreement solely for the purpose of compromising and settling disputed claims.  Nothing contained in the Settlement Agreement, any documents relating to the Settlement, the Preliminary Approval Order, or this Final Order and Judgment shall be construed, deemed, or offered as an admission by any of the Parties or any member of the Settlement Class for any purpose in any judicial or administrative action or proceeding of any kind, whether in law or equity.  In entering this Order with this provision and other limiting provisions, this Court specifically refers to and invokes the Full Faith and Credit Clause of the United States Constitution and the doctrine of comity and requests that any court in any other jurisdiction reviewing, construing, or applying this Order implement and enforce such limiting provision.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

## XI.    ENTRY OF FINAL JUDGMENT

The Court hereby dismisses with prejudice all claims alleged in this action. The Court further orders the entry of, and enters, this Final Order and Judgment on all claims, counts, and causes of action alleged in this action by Plaintiffs, on behalf of themselves, the Settlement Class, or both.  In entering this Final Order and Judgment, this Court specifically refers to and invokes the Full Faith and Credit Clause of the United States Constitution and the doctrine of comity, and requests that any court in any other jurisdiction reviewing, construing, or applying this Judgment implement and enforce its terms in their entirety.

Without affecting the finality of this Final Order and Judgment in any way, this Court hereby reserves jurisdiction over (1) implementation of this Settlement and this action; (2) all matters relating to the administration and consummation of the Settlement; and (3) all Parties to this action for the purpose of implementing, enforcing, and monitoring compliance with, effectuating, administering, and interpreting the provisions of Settlement Agreement and this Final Order and Judgment.

In issuing this Order, the Court grants final approval to the Settlement, awards the requested attorneys' fees and costs, awards the requested incentive payments to the Class Representatives, and overrules the objections as stated herein.

IT IS SO ORDERED.

Dated: September 11, 2014

*Christina A. Snyder*

Honorable Christina A. Snyder
United States District Judge

34